# EXHIBIT G

Dockets.Justia.com

**Page 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JARED WORKMAN AND MARKAND
MONA COHEN, ON BEHALF OF
THEMSELVES AND ALL OTHERS          CIVIL ACTION NUMBER:
SIMILARLY SITUATED,
                                        07-1338 (NLH)
       PLAINTIFFS,

          -vs-

MENU FOODS LIMITED, MENU
FOODS, INC., AND MENU
FOODS MIDWEST CORPORATION,

       DEFENDANTS.

_____

              MOTION TO SHOW CAUSE

              DATE: MAY 18, 2007

    MITCHELL H. COHEN UNITED STATES COURTHOUSE
    ONE JOHN F. GERRY PLAZA,
    CAMDEN, NEW JERSEY. 08608

B E F O R E:

    THE HONORABLE NOEL L. HILLMAN, UNITED STATES
    DISTRICT JUDGE, DISTRICT OF NEW JERSEY, SITTING
    AT CAMDEN, NEW JERSEY.

(APPEARANCES ON PAGE 2)

              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**Page 2**

A P P E A R A N C E S:

TRUJILLO, RODRIGUEZ AND RICHARDS, LLC,
BY: LISA J. RODRIGUEZ, ESQUIRE,
AND
BERGER & MONTAGUE, P.C.,
BY: RUSSELL D. PAUL, ESQUIRE,
ATTORNEYS FOR THE PLAINTIFFS

HILL, WALLACK, LLP
BY: GERARD H. HANSON, ESQUIRE,
AND
PRETZEL & STOUFFER, CHARTERED,
BY: EDWARD B. RUFF, III, ESQUIRE,
AND
MICHAEL P. TURIELLO, ESQUIRE,
ATTORNEY FOR THE DEFENDANTS

ALSO IN ATTENDANCE:

KERSHAW, CUTTER & RAINOFF, LLP,
BY: STUART C. TALLEY, ESQUIRE

KAPLAN, FOX & KILSHEIMER, LLP,
BY: CHRISTINE FOX, ESQUIRE

WEXLER, TORISEVA, WALLACE,
BY: MARK J. TAMBLYN, ESQUIRE

              STEPHEN J. DANER,
    CERTIFIED COURT REPORTER OF NEW JERSEY
    REGISTERED PROFESSIONAL REPORTER
    OFFICIAL COURT REPORTER, U.S. DISTRICT COURT

              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**Page 3**

1    (The following takes place in open court before the
2    Honorable Noel L. Hillman, United States District
3    Court Judge, District of New Jersey, sitting at
4    Camden, New Jersey, on Friday, May 18, 2007)
5         THE COURT:  It's morning, right?
6         Good morning, everyone.
7         Please be seated.
8         Give me a minute to get settled in and then
9    we'll have appearances.
10         MS. RODRIGUEZ:  Lisa Rodriguez, from the
11    firm of Trujillo, Rodriguez and Richards.
12         With me, today is Russell Paul from the
13    firm of Berger and Montague.
14         His motion, pro hac vice motion, has been
15    filed, not ruled on, however, and he will be
16    speaking this morning.
17         THE COURT:  All right.
18         MS. RODRIGUEZ:  If it please Your Honor --
19         THE COURT:  Welcome to both of you.
20         MR. PAUL:  Good morning, Your Honor.
21         THE COURT:  Who else do we have?
22         MR. HANSON:  Sir, Gerard Hanson on behalf of
23    Hill Wallack, counsel for the defendants, Menu Foods
24    Limited, Menu Foods, Inc., and Menu Foods Midwest
25    Corporation.

              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**Page 4**

1         Present at counsel table with me is Edward
2    Ruff, III, of the Chicago firm of Pretzel and
3    Stouffer, as well as Michael Turiello.
4         Mr. Ruff would like to address the Court.
5    Consistent with Mr. Paul, my office has filed a
6    Pro hac vice application which is returnable
7    June 1st.  Certainly we consent to Mr. Paul
8    addressing the Court as pro hac vice.
9         THE COURT:  That's very kind of you.
10         We'll move up those applications and why
11    don't I look at those and consider them now.
12         MR. RUFF:  Good morning, Your Honor.
13         THE COURT:  Welcome to you all.
14         MR. RUFF:  Thank you.
15         THE COURT:  Mr. Paul is here to, from
16    across the river.
17         MR. PAUL:  Yes.
18         THE COURT:  You are in good standing and
19    admitted in various places.  No disciplinary
20    matters, you've associated yourself with a local
21    firm.
22         Do you agree to comply with all the local
23    rules including the all important fee.
24         MR. PAUL:  Yes, Your Honor.
25         THE COURT:  And I take it there's no

              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**5**

1  objections -- I think I just heard from defense
2  counsel for your admission in this case.
3       MR. HANSON: No, sir, we consent to the
4  admission.
5       THE COURT: You are welcome to serve. I'll
6  file whatever order is necessary for this, if I have
7  it. I do. Today is the 18th.
8       Now for the defendant, Mr. Ruff.
9       MR. RUFF: Yes, Your Honor.
10      THE COURT: All the things I have said
11  regarding Mr. Paul appear to apply to you as well,
12  including the all important fee.
13      MR. RUFF: Yes, Your Honor.
14      THE COURT: And we will make this effective
15  today.
16      Mr. Turiello, you are a partner of Mr.
17  Ruff's firm?
18      MR. TURIELLO: Yes, Your Honor.
19      THE COURT: All appears to be in order.
20      All right, we have the line-up card signed
21  and we're ready for the first pitch, which would be
22  yours, sir.
23      MR. PAUL: Yes, sir.
24      Good morning, Your Honor.
25      Thank you for having us before you this

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**6**

1  morning.
2       Your Honor, plaintiffs in the case
3  certainly recognize the right of the defendants to
4  communicate with putative class members prior to
5  class certification.
6       We also recognize their right to attempt to
7  settle claims prior to class certification.
8       However, Your Honor, they cannot do so with
9  communications that are either misleading or
10  coercive.
11      We filed an order to show cause in this
12  action, and in response, defendants filed their
13  brief with an attached communication which was
14  revised from, from their previous communication, and
15  now includes a letter to pet owners.
16      We condone their efforts. We thank them
17  for those efforts, and think the efforts go a long
18  way to satisfy the legal obligations. However, we
19  think the letter falls short.
20      We were under the impression, perhaps
21  mistakenly, that the letter had not been utilized,
22  and not be utilized until this Court heard our
23  arguments. However, we have come to realize the
24  letter has been posted on the website, so we believe
25  this misleading communication is currently out there

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**7**

1  right now.
2       Your Honor, I think that the law is clear
3  that the Courts may, and in fact must step if any
4  communication is in fact undermining of Rule 23,
5  including with respect to misleading communications
6  with class members before a class is certified.
7       Your Honor, pet owners who have tragically
8  lost their pets, or whose pets have been harmed,
9  have several options here. They can, if they so
10  chose settle directly with defendants, or, they can
11  affirmatively contact the lawyer, and defendant's
12  communication does in fact state that they can do
13  so, and supplies a list of lawyers in the class
14  action that they can contact.
15      However, there's one option that's missing,
16  that really needs to be expressly made clear to
17  these recipients of these communications that they
18  can do nothing, they're already a member of the
19  class, and that their rights will be protected as
20  the class cases go forward.
21      We think this is very relevant, and
22  pertinent, and in fact one of their options as a
23  putative class member, that they must be told by
24  defendants.
25      Your Honor, it also appears that by the

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**8**

1  language in their revised communication, that once
2  they sign and fill out this claim form, that they're
3  then stuck settling with defendant.
4       If I could point to the language in the new
5  communication? It say, quote, if you wish to at
6  this time to begin the settlement process directly
7  with Menu Foods, Menu Foods, rather than pursue
8  other available avenues, we ask you complete, sign
9  the returned enclosed claim form subject to any
10  Court order which would prevent Menu Foods from
11  proceeding with the settlement contemplated herein,
12  we will proceed with the settlement process.
13      This is misleading, Your Honor, because it
14  appears that once a recipient of the letter signs,
15  and they are automatically in the process, not
16  knowing exactly what the settlement offer will be,
17  and not being advised of the fact once they get a
18  settlement offer at that point they can go ahead and
19  speak to a lawyer and then decide whether they want
20  to participate in the settlement or do nothing and
21  remain a member of the class.
22      The language we have proposed in our
23  response brief we feel remedies, remedies the
24  misleading nature of the communication, and I would
25  just point to our reply brief, which our reply brief

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

9

1  which sets out those sentences we feel must be
2  added.
3       I would also say, Your Honor, that the list
4  of attorneys that they are including with their
5  communication is incomplete, and we would be happy
6  to supply the Court or the defendants with a very
7  complete list of all the lawyers involved.
8       I would also say, Your Honor, we have
9  attached a red line to our reply brief that attempts
10 to rectify other aspects of the letter that we feel
11 are also misleading.  And I would like to just point
12 out a couple of those, Your Honor, if I might.
13      The letter sets a tone, Your Honor, that we
14 feel casts plaintiff's attorneys and plaintiff's
15 cases in a negative light.  And that can have the
16 effect of motivating people to settle directly with
17 defendants.  It says things like more than 50 class
18 actions have been filed, a number of attorneys, each
19 seek to represent the interests of pet owners, when
20 in fact consumers are the ones bringing the cases
21 and attorneys are doing so on behalf of the
22 consumers.
23      It's minor, not the main thrust of the
24 brief, but we wanted to point at out to you.
25      We also added language about the case being

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

10

1  consolidated.
2       As a letter currently stands, it appears
3  there's numerous class actions all around the
4  country.
5       THE COURT:  He needs you to slow down.
6       MR. PAUL:  Which can be befuddling to pet
7  owners who may not be experienced in these type
8  matters.
9       It is very informative to know that there
10 will in the end one class action that will be a
11 consolidation of all the current class actions out
12 there.
13      Those are the main thrusts of our argument
14 with respect to the letter, Your Honor.
15      We also feel that the revised communication
16 has to be sent, once Your Honor determines what is
17 the appropriate communication to be sent, it has to
18 be sent to everyone who has previously received that
19 communication from the defendants because that
20 communication was in fact in our view misleading,
21 and that would mean sending the letter to everyone
22 who has contacted Menu Foods.
23      We stated in our brief that about -- we
24 don't know exactly how many people contacted Menu
25 Foods, and not actually sent the claim form.  We do

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

11

1  know about 12.1 million people have gone to their
2  website, and that website specifically refers them
3  to an 800 number to call a hotline.  The hotline was
4  manned by Crawford and Company, a settlement claims
5  company hired by defendants, and Crawford and
6  Company then either sent them the claim form which
7  they say is, has been to under 50 people, but also
8  directs ever other caller to a different website, a
9  claim alert website, to download the form.  So we
10 don't know how many people downloaded the form and
11 sent it back in.  But for every person.  A pet owner
12 that defendants can know their address, or calls in
13 the future, we feel they have to resend the
14 appropriate communication.
15      Your Honor, in the new proposed
16 communication there's a declaration proposed at the
17 bottom for any claimant who signs the claim form to
18 sign.  The declaration we feel is highly misleading.
19      I'm just going to turn to the declaration.
20      Which first has them certify under penalty
21 of perjury that the information is correct that
22 they're providing in the claim form.  But then says,
23 that, acknowledge receipt and review the letter from
24 Menu Foods which explains the effects of settling,
25 and lists other available avenues to pursue my

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

12

1  claim, including the pending class actions. Despite
2  these other avenues, I would like to proceed with
3  settling my claim with Menu Foods.
4       Your Honor, that likely effect of this
5  language is to mislead pet owners into believing
6  once they sign and send back this claim form they
7  have officially opted out, and that they are now
8  stuck with proceeding in the settlement claims
9  process.
10      And in addition, defendants might argue in
11 the future that these pet owners who signed the
12 declaration have in fact opted out, when it is not
13 been clear all they are doing so.
14      Lastly, Your Honor, we don't know the
15 extent of information or materials that defendants
16 have received as a result of the prior misleading
17 communication.  The prior claim form asks them to
18 send in all their Vet bills, their receipts, their
19 veterinary records, even food that they still have
20 that was manufactured by defendants.
21      We don't know what they received.  But in
22 essence we don't feel that they should have the
23 benefit of, so to speak, the fruit of the poisonous
24 tree.  They had a misleading communication in our
25 view and received information back.  We believe that

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

13

1  at the very least the information must be
2  disregarded by defendants and not used for any
3  litigation purposes. We also believe it should be
•  shared with plaintiffs at this time.
         THE COURT: Can I ask you just one question
6  about that, because I read that in your initial
7  papers, but I read the Data Collection Form to,
8  direct only to send clean cans and to merely
9  preserve actual food, so I'm curious as to why you
10 take the position that they requested and received
11 actual samples.
12       Do you believe they actually asked for, and
13 received samples of food?
14       MR. PAUL: It says, please send all relevant
15 documents and material, including the following:
16 cans and/or pouches of the pet food in question --
17       THE COURT: Then read on.
18       MR. PAUL: Please insure that they are fully
19 cleaned prior to sending to avoid delays in the post
20 office.
21       THE COURT: Doesn't that mean -- you mean
22 -- you're saying complete cans, unopened cans.
23       MR. PAUL: Yes.
24       THE COURT: They could -- okay.
25       MR. PAUL: Yes.
       U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

14

1        THE COURT: It goes on to say, doesn't it,
2  keep any of the actual food in your freezer, double
3  bag it and put it in the freezer?
4        MR. PAUL: Right. That's true. It would be
5  unopened cans that may have been sent and may have
6  been subject to testing by defendants, and we don't
7  have access to that food or the results of those
8  tests.
9        THE COURT: All right.
10       MR. PAUL: Thank you, Your Honor.
11       THE COURT: I didn't mean to cut you off.
12       Are you done?
13       MR. PAUL: That's our argument, and I would
14 like to reserve some time.
15       Thank you.
16       THE COURT: All right.
17       Well, the, it's interesting to see how the
18 positions change as the briefing occurs and
19 encouraging for someone in my position to see what
20 appears to be some voluntary progress made for
21 narrowing the issues, or working with one another to
22 resolve some of these difficult issues.
23       So I'm curious how the defendants reacts to
24 the proposals made by the plaintiffs to modify the
25 letter that you want to send out as a matter of
       U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

15

1  future communications and the related question of
2  your reaction to the notion that this proposed
3  letter, or some version of it be sent to those where
4  previously communications have been established
5  through the putative class members.
6        MR. RUFF: May I respond, Your Honor?
7        THE COURT: Sure.
8        In other words, are we entering near to
9  reaching an agreement on this, or will I have to
10 start from scratch on the legal issues?
11       MR. RUFF: Your Honor, again Ed Ruff, and I
12 thank you for admitting me pro hac vice, and a
13 pleasure to be before Your Honor and counsel.
14       I have met with Mr. Paul before, and I have
15 met with some of the other counsel. They were
16 actually in my office, and we have been attempting
17 to work out, you know, various things going forward.
18       I should point out that the recent letter
19 and the package that went out was not necessarily
20 prompted -- was not prompted by anything that the
21 plaintiffs had filed. It was actually, if they were
22 going to do this, my client was going to do this,
23 and there's a large pressure that's placed upon him.
24       This is a company that's never been faced
25 with this type of situation before. They aren't a
       U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

16

1  big company. Their Board of Directors and their
2  Chief Officers, and all that probably could fit at
3  this table (indicating). We're not dealing with a
4  Nestle, Purina or anything like that. So they have
5  never been under a situation like this before, and
6  never had a bad product or anything like that
7  before. So when this happened, they were inundated
8  with calls not knowing how to handle this.
9        The first package, just so Your Honor has a
10 clear view in your mind from a date stamp point,
11 they sent this out, the initial claims that the
12 initial Data Collection Forms, I should say,
13 March 22nd. They hadn't been served in the case
14 yet, and I just want to put that in. They were
15 served the next day.
16       THE COURT: All right. I mean, they got
17 the FDA breathing down their neck and press reports,
18 and they hired Crawford. They have to know the
19 suits are coming.
20       MR. RUFF: Absolutely. Absolutely.
21       I just wanted to address your question
22 there is then no settlement until we hear what Your
23 Honor has to say. There's no settlements, and I
24 represented that to counsel when we met with them on
25 April 11th, and we did discuss some of the issues
       U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

17

1  present.
2       Just from the standpoint of -- technical
3  points that I just wanted to raise, there is a stay
4  that's been entered in this particular case, and we
5  are going to the MDL at the end of this month. The
6  hearing is in Lass Vegas.
7       From the standpoint of timing of this
8  particular motion, at least, it has been on the
9  website since the 22nd of March, and there were
10 conversations about this on April 11th. So
11 classifying this as an emergency 3 days after the
12 stay has been entered, we just wanted to raise that
13 particular point.
14      As far as --
15      THE COURT: Let me just address that
16 because I entered the stay at least in my cases.
17 And of course I can only enter them in my cases
18 until the panel rules.
19      Don't misunderstand this, or misinterpret
20 it, but I guess there are two definitions of stay.
21 On stay, the Court would not rule on anything, there
22 wouldn't be any motions made. There wouldn't be any
23 discovery taken, and all of that. But there is a
24 broader interpretation of that, which is, let's all
25 stand down until we know where these cases will be
U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

18

1  venued and what lucky judge gets them.
2       MR. RUFF: Right.
3       THE COURT: And to the extent your client's
4  efforts could be construed as affecting that case,
5  those cases, and could be construed as an effort to
6  affect that litigation, couldn't that be potentially
7  construed as a violation of the stay, itself?
8       MR. RUFF: Your Honor, I'm just raising
9  those technical points. I'm prepared to address the
10 points that you had raised.
11      THE COURT: I know there was a defense
12 motion in several cases, some cases there were
13 consents and some cases there was no particular
14 applications. There was no opposition filed to the
15 stays. I did it sua sponte because I didn't want to
16 act precipitously in cases in which that might not
17 be mine. But I did so under the assumption there
18 would be, in essence, the maintaining the status
19 quo.
20      I'll tell you that my reading of the cases,
21 including Gulf Oil and others, although that was a
22 post certification, or post identification of the
23 class case, I think I do have an obligation to make
24 sure that the putative class members are not subject
25 to misleading statements that their substantive
U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

19

1  rights are protected until these important issues
2  can be resolved later. Balanced against the right
3  of your client to settle things out of court and
4  communicate vital information.
5       I have no doubt that they wanted to
6  maintain good customer relations, and wanted to give
7  information and learn as much as they could,
8  probably to meet the regulatory obligations, and to
9  get a handle on what was going on.
10      But it was not my intent in entering the
11 stay to completely disassociate myself from the
12 case, or to close the courthouse door if it needed
13 to be opened.
14      So it's kind of a technical issue.
15      It seems to me that if relief is
16 appropriate, the stay is lifted. But I would not
17 use the stay to bar or bar relief.
18      MR. RUFF: Understood, Your Honor.
19      As far as an agreement, sir, if I could
20 comment on your question about an agreement?
21      The --I want to point out to you that
22 there was no settlements.
23      THE COURT: That's an important fact, and I
24 think it's a fact beneficial to your client in terms
25 of what their intent was, and what their purpose was
U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

20

1  in these communications. I think it's helpful to
2  all of us that that status quo is maintained.
3       MR. RUFF: Yes, sir.
4       THE COURT: That having been said, I don't
5  want to do anything, or wouldn't do anything here
6  that would stop somebody fully informed from coming
7  in and making some kind of an agreement. I think
8  the law is clear that they have that right, and you
9  have that right. So I don't think, I can't imagine
10 at the end of the day I would preclude any kind of
11 an order, if I decide I should enter some order,
12 that would preclude settlements per se.
13      My view of this, and I haven't let you talk
14 --
15      MR. RUFF: Go ahead.
16      THE COURT: My view of this, unlike Gulf
17 Oil, which was a case in which not enough -- a
18 question of precluding communication in the sense, I
19 read the cases to say that we don't want to have no
20 communication. This is a case where I think we need
21 more communication, so I'm encouraged by the claim
22 procedure and form that the defendants have been
23 moving toward, and encouraged by the plaintiffs'
24 embracement of some of it, embracing some of it.
25      But, address the legal issues you want to
U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

21

1  address. I didn't mean to cut you off.
2         MR. RUFF: No, sir. It helps me to focus on
3  what you are focusing on, so by all means.
4         Your Honor, what we feel is, we did follow
5  Gulf Oil, and in particular followed the Keystone
6  case and the General Motors case. I think what we
7  did in sending out the letter was to try to focus on
8  that particular aspect.
9         And in looking at the letter we take -- I
10  think it will require a decision from Your Honor as
11  far as an agreement because the language that the
12  plaintiffs are requesting to insert transforms what
13  we believe we had made a very good faith effort, and
14  believes in all circumstances complies with Keystone
15  and General Motors, in trying to make the litigation
16  neutral type statement. And what the plaintiffs are
17  suggesting is, is that we would like to insert in
18  here that you can do nothing and become part of the
19  class. That is --
20         THE COURT: Isn't that true?
21         MR. RUFF: That's what the plaintiffs want.
22         THE COURT: Isn't that true.
23         MR. RUFF: No, because --
24         THE COURT: I just got a check for $16 in
25  the mail the other day for something I didn't do
              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

22

1  anything about.
2         MR. RUFF: We are in precertification, sir.
3         It's the defendant's strong contention that
4  this will never be a class action. That's our
5  strong position.
6         By saying that, if you do nothing, you will
7  be part of a class, you are then saying this will be
8  part of a class, and it's the defendant's contention
9  based upon the case law that this will never be a
10  class action.
11         THE COURT: That places us in a difficult
12  procedural posture here because we are not yet
13  there.
14         Let me ask you about that, because my
15  thought on this, and having looked at some of the
16  cases, and Gulf Oil certainly counsels somewhat in
17  my position to be very careful about the scope of
18  any order and the necessity for, for factual
19  findings. And I think the scope of the remedy for
20  the plaintiff if, there's been some misleading
21  statements, the first is dependent upon my full
22  assessment of what my proper jurisdiction is. It
23  seems to me that I might have more leeway and more
24  -- in the same time more of an obligation if you
25  were heading towards class certification than I
              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

23

1  might if we're not.
2         My thought was I might have to have a
3  functional equivalent of a preliminary injunction to
4  see how likely class certification is down the road
5  before I leap to utilizing those cases that are at
6  class certification or heading that way as precedent
7  in determining the scope of any relief that I might
8  enter.
9         So I'm interested in, and why this would
10  not be a class certification. Because class action
11  cases, because, and tell me where I stumble. We
12  would only have to have minimal diversity, correct?
13         MR. RUFF: Yes -- well, would you have to
14  have -- that raises an issue as well as far as
15  diversity because most of the claims, if not all the
16  claims don't meet the minimum jurisdictional
17  requirement.
18         THE COURT: Well, that I was going to get
19  to that, but my recollection of the prerequisites
20  are minimal diversity, certain the number of class
21  members. Is it 100?
22         MR. RUFF: True.
23         THE COURT: And $5 million --
24         MR. RUFF: Right, under CAFA.
25         THE COURT: This Court is bound by that,
              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

24

1  right?
2         MR. RUFF: Yes, your honor.
3         THE COURT: I'm bound to follow that act.
4         MR. RUFF: Yes.
5         THE COURT: This is a massive recall. I
6  realize that people are still trying to determine
7  causation with regard to their particular pet,
8  but -- given this volume of sales, the number of
9  hits on the website, the public statements that have
10  been made by regulators concerning the scope, and
11  even if one would limit the damages to the
12  replacement of the lost pet, it's -- I don't want to
13  make myself a witness, but I have been looking for a
14  dog lately and my kids have been giving me a hard
15  time. They're not cheap.
16         MR. RUFF: I have been a dog owner --
17         THE COURT: $500, a $1,000, depending on
18  the various breeds, maybe more. You don't need to
19  have -- I mean at some point putting aside the other
20  claim damages that the law will allow for those,
21  what do you see as the prime obstacle to the
22  plaintiffs having class certification?
23         MR. RUFF: You hit on it. You said it, Your
24  Honor, and that's exactly what's in the case law.
25         When you talk about -- there's no question
              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

25

1  about numerosity, so -- and the question becomes, in
2  commonality. You will deal with different
3  jurisdictions that have different laws on how to
4  compensate. That is one key issue. The individual
5  issues you will have in this particular case will
6  overcome the commonality, and there is case law on
7  point. And when you deal with a situation, of
8  cause, as Your Honor's perception of that being a
9  key factor, is a large factor in this particular
10 case. You're talking about species, type of breed,
11 talking about two different types of animals as
12 well, cats and dogs. I mean specific cases right on
13 point say that those individual issues override the
14 common, and cannot class certify. And chiefly it
15 belongs to species, animal type, size, causation
16 from a medical standpoint, dosage.
17        What we have in this particular case, and
18 if Your Honor has been following the news reports,
19 and I don't know all of the facts that will come in
20 this case because it's very early in this, so a lot
21 of my knowledge comes from the news reports as well,
22 but Your Honor is aware of the how the wheat glutin
23 was tainted.
24        THE COURT: I'm not. I believe I read
25 there was a chemical involved that was made perhaps

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

26

1  to fool people into thinking that protein content
2  was higher than --
3        MR. RUFF: Your Honor is absolutely right.
4        What happened was the wheat glutin was
5  supplied to Menu Foods. We believe it's been traced
6  to Chemnutra. What happened was that wheat glutin
7  which forms a, it's like a stiffer in the gravy that
8  would form the wet kind of product. Your Honor,
9  that wheat glutin was tainted and what it was
10 tainted with, and appears to be an intentional act,
11 as at least from what we are seeing, is that that
12 came from China with an intentional twist to it to
13 dupe the people here that essentially it had a
14 higher level of nitrogen than what it actually had.
15 The test to perform on whether or not there is
16 protein, because the wheat glutin is supposed to
17 have a certain amount of protein, the test on that
18 is to test for the nitrogen. Knowing that the test
19 would be for nitrogen, it appears that what was
20 supplied was a false increase by adding melamine to
21 that wheat glutin to get the nitrogen up, such that
22 you would think, okay, now we have the appropriate
23 protein. If it's straight on both ends where you,
24 what you receive and presume is appropriately
25 protein, then you do the test and you know how much

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

27

1  protein. But if the assumption is there is protein
2  in there and there isn't protein in there but just
3  added melamine to falsely increase the nitrogen,
4  then the amounts of protein isn't there. The
5  specific toxilogical cause as to why the melamine
6  caused the deaths is still under investigation. But
7  that is so Your Honor has a global kind of picture
8  as far as what's going on, that's the view right
9  now.
10        THE COURT: Not having looked at the
11 commonality cases, doesn't that suggest that at
12 least in terms of what caused -- if you can show you
13 bought the product and gave it to your pet and it
14 could be shown that that additive is toxic, doesn't
15 that show commonality in the sense of causation?
16        Now that there may have been a pet may have
17 had a history of kidney problems, or may have
18 consumed other products during the time, but there's
19 commonality in the sense of there appears to be one
20 cause for your client's problems, right?
21        MR. RUFF: Can I point out the difference in
22 the case law because Your Honor is right on. That
23 would be the arguments plaintiffs will make in this
24 case, and what Your Honor is honing right on the
25 issue is a general causation versus specific

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

28

1  causation, which is the, discussed in the case law.
2        And Your Honor has just hit on the points
3  of general causation, but not specific causation,
4  and the specific causation is what overrides and
5  states in reams of case law such that those specific
6  causation factors predominate over the commonality,
7  and those specific individual aspects override class
8  certification.
9        So from a general causation Your Honor is
10 absolutely right, and that's the argument the
11 plaintiffs will make. From a specific causality,
12 and where the case falls on class certification is
13 the specific causation. That's the distinction,
14 Your Honor.
15        THE COURT: But I would think, and I have
16 not looked at these cases, and I can't possibly
17 judge this issue, and I don't want to prejudge it,
18 but isn't every plaintiff unique in some ways? If
19 specific causation, that factor became to important,
20 it seems to me that you could run into a situation
21 where you would never have a class certified.
22        MR. RUFF: Your Honor --
23        THE COURT: Doesn't every -- I think of
24 someone buying and selling stock to have a mixed
25 motives in buying and selling stock. You might need

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

29

1  cash, you might by buying it for a particular
2  reason. I haven't looked at the cases, but do you
3  agree with me that, and I guess you do because you
4  raised the issue of whether or not there is class
5  certification.
6      To what extent does, do you believe it's
7  necessary for me to find it likely that some Judge
8  would certify this as a class before I were to
9  address the legal issues, the relief the plaintiffs
10  seek?
11      MR. RUFF: No, Your Honor. But we are
12  having a nice intellectual discussion about class
13  certification.
14      If you don't mind I could address one of
15  the final points you made about the financial cases
16  versus this type case.
17      THE COURT: Go ahead.
18      MR. RUFF: The difference, in those
19  financial cases versus this type of a case is the
20  mass tort and the Courts are reluctant to grant
21  class certification in the mass tort concept,
22  context for the specific reasons Your Honor just
23  alluded to which relates to specific causation
24  issues. Type, type of species, breed, why in some
25  cases -- dosage amount. How much was eaten, how

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

30

1  much was influenced by other factors.
2      Your Honor, for instance, was there
3  consumption of another product. Those specific
4  causality issues are specifically what precludes a
5  class certification different from a financial
6  situation where the same transaction occurs to many,
7  many individuals who matter for the reason in
8  entering into it.
9      THE COURT: Doesn't that suggest maybe the
10  excessive detail of the Data Collection Form was
11  designed specifically to gather information in order
12  to, discovery, if you will, for opposing the
13  plaintiff's motion for class certification? It asks
14  for all that stuff, who is your Vet --
15      MR. RUFF: That was not the intent.
16      THE COURT: What kind of a cat is it --
17      MR. RUFF: The intent was what Your Honor
18  alluded to in opening comments to me, which was,
19  there were a number of questions that Menu Foods was
20  facing, including a number of regulatory issues,
21  etcetera. I don't know how they could even conceive
22  of going before Congress without answering some of
23  those questions.
24      So was there a duel --could there have been
25  a legitimate business purpose, duel purpose for

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

31

1  that? I believe so. And I don't think there was
2  any ill intent in attempting to gather that
3  information which could only be used -- I mean could
4  be helpful at any stage. And if you are talking
5  about discovery, that kind of information can
6  certainly be exchanged by both sides once we get to
7  a transferee Judge, and that transferee Judge enters
8  a 26F conference, sir.
9      Did you want me to comment --
10      THE COURT: I guess my question is, and the
11  first question is, do you object to the general
12  notion, I supposed the easiest -- I don't want to
13  leave today without addressing the issue with
14  contact of representative persons, frankly, which is
15  something that disturbs me the most of what I have
16  read here, today.
17      I would have hoped that Menu Foods counsel
18  would have spoken to its client and its client's
19  agents, especially if Crawford was retained on the
20  advice of counsel --
21      MR. RUFF: They were not.
22      THE COURT: Were not.
23      MR. RUFF: Were not.
24      THE COURT: Okay.
25      But now that they are, now that they are,

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

32

1  it's an important rule.
2      MR. RUFF: By me, they were not.
3      THE COURT: Okay.
4      If they were retained by some counsel and
5  they have, certainly at the time the website went up
6  there were filed lawsuits, named plaintiffs.
7      MR. RUFF: True.
8      THE COURT: Lawyers attached to them.
9      MR. RUFF: True.
10      THE COURT: And while I haven't looked at
11  the rule in recent times, I know in practice in at
12  least in the criminal arena that even if the contact
13  is initiated by the client, which would be, appear
14  to be the case --
15      MR. RUFF: It is the case.
16      THE COURT: -- I want to be clear that I'm
17  not suggesting that they went out of their way to
18  find people who were represented by counsel and
19  sought to extract information from them, but I
20  believe the burden under the ethical rules is
21  higher, that is if an agent of a lawyer that
22  receives a contact from a represented person, they
23  have an obligation to inform them they cannot speak
24  to them, and that the plaintiff's allegations are
25  true, that query, why someone's client was accessing

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

33

1 the website or sending the information in, but may
2 have been an affirmative obligation on behalf of
3 Menu Foods and its agents, affirmative obligation on
4 the lawyers aware of that conduct to stop that
  communication.
6        So at some point I want to address that and
7 maybe perhaps part of the relief here.
8        But the larger question at this point,
9 since there does seem to be some progress, is, would
10 your client object to at least in terms of new
11 communications and the current state of the website,
12 agree to the general notion of this new letter?
13        MR. RUFF: No. For a number of reasons, if
14 I may?
15        THE COURT: Sure.
16        MR. RUFF: Your Honor, first of all, just
17 address a couple of the concerns that Your Honor had
18 addressed.
19        I mean, I think the plaintiffs recognize as
20 well, and in fact complemented us on the recent
21 notice as well, and really are now from their
22 initial position to now suggesting that all we want
23 to do is revise what is out there. And the way we
24 feel strongly that the revision is taking place, the
25 revision is no longer a litigation neutral, which
          U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

34

1 this was, this note at the time attempted to be.
2 The litigation neutral. We sit -- we state in here
3 I think it's 5 times, Your Honor, that the first
4 paragraph, the last question is, if you have
5 questions relating to a legal issue, please feel
6 free to contact an attorney. The second paragraph,
7 we advise who the attorneys are. Contact an
8 attorney. We are not giving you legal advice. We
9 again say, and this comes from the Keystone case,
10 and this was language that when I was asked to,
11 because my client wanted to get the process going,
12 this was stuff we put in from the, from the Keystone
13 case which says that you're supposed to advise the
14 class action, and in the Keystone case, they
15 actually, the defendant with the class certification
16 issue I think was already granted, gave a memorandum
17 of law, or about to be granted, gave a memorandum of
18 law why it shouldn't -- why class certification was
19 not going to happen. We didn't do that. We just
20 basically said here, we'll make motions. Plaintiffs
21 will make motions for class certification and we
22 will oppose. This is litigation neutral. That's
23 the third point. On the third paragraph, twice in
24 there it says, contact an attorney.
25        Now if they say that the list wasn't a list
          U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

35

1 of attorneys -- so that's 4 and 5 times. When we
2 get to whether or not the list of plaintiff's
3 counsel was sufficient enough, we not only took the
4 MDL list, but we took the list of what were known,
5 so not only the MDL service list, but the list of
6 what was known to be class action counsel in
7 individual States and organized it in that fashion.
8        If somehow that list wants to be updated to
9 include more attorneys, I presume that can be done.
10        And we are going to -- this is a note from
11 Mr. Turiello. He passed it to me. That we are
12 sending this letter to anyone who was previously
13 been contacted. So I mean, if there is anybody --
14 so the Court is aware there won't be any kind of
15 contact without this letter actually going that says
16 exactly what it says in here.
17        I just point out one additional case which
18 is the Cole vs. Marsh case cited in our brief.
19        THE COURT: Yes.
20        MR. RUFF: It comes from the Gulf Oil which
21 Your Honor has spoken about, freedom of the speech
22 and the ability to have parties contract and talk to
23 each other even if there are represented parties. So
24 you can do that. And I think the plaintiffs
25 recognize that as well, which is why their, the
          U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

36

1 brief is now, their reply brief is shaped as
2 recognizes that.
3        The Cole case says that what a Court should
4 do under these circumstances, look at the narrowest
5 possible remedy that's appropriate.
6        I think the narrowest possible remedy
7 that's appropriate is, I think this letter was fully
8 within the intent of being a litigation neutral type
9 of statement as to contact them.
10        If you agree to go, to go to an attorney or
11 whatever, no further contacts with us. That's fine.
12 And in fact, I did receive from my client before
13 walking into here, today, that I will stipulate on
14 the record counsel was concerned that we will
15 consider someone who has signed the declaration to
16 be part of the class -- to opting out of the class
17 action. It's not our intent, and I will state on
18 the record that we will never argue that that's the
19 case. If someone signs the declaration and decides
20 they don't want to do that, we will not consider
21 that an opt out. So there will not a brief filed
22 that says that that is the case. So just because a
23 signing of the declaration, I think that just allows
24 the communication. If there is going to be a
25 settlement, which is allowed to have a settlement,
          U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

37

1  for discussions to occur and be effectuated. We
2  will not argue that because someone has signed the
3  declaration they are in fact opting out. That may
4  eliminate some of the concerns. So from their
5  standpoint, Your Honor, that do I think that we
6  should revise the letter, I think it was done in a
7  litigation neutral standpoint, and I don't think it
8  should be revised and I'll stand on that.
9       Of course, if Your Honor says, you know, we
10  will abide by anything the Court says. If Your
11  Honor says we have to do something, I'll walk out of
12  the Courtroom and tell them -- in fact they're
13  waiting for me to tell them what the Court thinks
14  today. So if Your Honor said I want this word in
15  there or that word in there, you know, we would do
16  it immediately.
17       The point I was going to say, though, is we
18  are dealing with some class lawyers from all over
19  the country here, and that's not all the class
20  lawyers. So they put there $0.02 into this
21  particular letter. But I believe, Mr. Turiello can
22  correct me there over there's 87 --
23       MR. TURIELLO: 90.
24       MR. RUFF: Up to 90 suits filed. This
25  particular group I believe is, represents before

38

1  Your Honor represents about 26. So there is a
2  number throughout the country.
3       Does that mean that I go around the country
4  and I get, you know, 80 or 90 inputs into what this
5  letter should say? I think the letter says what
6  Keystone, which is what we modeled it after. I
7  think it say what General Motors says, and it
8  incorporates exactly what Gulf Oil said.
9       I think the biggest thing to say to Your
10  Honor is that no claims have been settled. I
11  noticed in review, which I did again last night, the
12  cases on this particular issue. There was one case
13  that says you're suppose to give, once you give the
14  notice out, there's supposed to be a 5 day waiting
15  period. That's in one of the cases that talked
16  about that. It wasn't necessary, but, you know,
17  give them 5 days. I can say to Your Honor that the
18  letters have been started, the notices to everyone
19  -- nobody will get, if there was a settlement,
20  nobody will have settled without getting this letter
21  and signing the declaration. That these letters
22  started to go out on Tuesday. So if there was
23  5 days notice, I called because I wanted to be able
24  to report to Your Honor this morning the status of
25  this. I called the Vice-President whose affidavit

39

1  you have in here of Crawford this morning, and he
2  said when do you reasonable think everything in a
3  perfect world was correct, that you could begin
4  settling the first case. He said we could probably
5  come to terms some time Thursday or the Friday of
6  next week in the earliest case. I said, how long
7  would it be until exactly a settlement is actually
8  effectuated because then you have to send out a
9  release, release would have to come back, a check
10  would have to go out. He said at least another
11  two weeks after that. So even if Your Honor says
12  this is fine, I agree they can do this, it follows
13  Gulf Oil, follows Keystone, and supposed to construe
14  it narrowly, and does do what those cases say. And
15  they can go ahead. And what they're doing with the
16  first case, I'm told can be settled would be a
17  verbal kind of contact, would be Thursday or Friday
18  of next week. And then I have been told it would
19  take an additional, at least two weeks for that to
20  be actually reduced to a signed release and a check.
21       The final comment I would to make, sir, is
22  that there was some argument concerning the
23  declaration and should have this word or that word
24  in it. I have addressed that saying it doesn't mean
25  we will declare this as if you sign this now you are

40

1  an opt-out. That addresses some of the problem.
2       If you look at the declaration it's a
3  simple declaration. It wasn't meant to, none of
4  this was meant to coerce, mislead, or anything like
5  that. And I don't think any of the communication
6  misleads, and that's the context of the case law
7  stuck in. None of this has coerced or misleading.
8       I think it's a pretty straight forward
9  declaration. But if the Court wants to add words
10  here or redline here, the same comments I would make
11  to the notice letter would go to the declaration. We
12  could go all around the country and get everybody's
13  comment and by that time probably have a transferee
14  Judge, and probably be know, you know 4 to 6 weeks
15  out and have our first status conference.
16       So it's Menu's desire to try to satisfy the
17  requests of its customers and to try to resolve a
18  very troubling situation, not only for the pot
19  owners and do what they're allowed to do under the
20  law, but also to help Menu start getting back in
21  business.
22       Counsel wanted me to point out that on the
23  discovery issue, Your Honor, I don't think this is
24  discovery. And from the standpoint of entering any
25  kind of turning over of any documents at this stage,

41

1  is quite premature. I think it would be subject to,
2  whatever we would have in a 26A conference, and we
3  would be asking for material from them as well. Who
4  did they contact -- I think all-- who makes up the
5  class or -- we are beyond -- that same information
6  they're requesting from us can be requested from
7  them, and I think it's a discovery request that
8  really doesn't go to want the heart of what we have
9  here.
10      The only purposes I see of requesting that
11  information, certainly it's not going to help them
12  on the numerosity issue, but posturing a position
13  before the MDL, when we get to the MDL at the end of
14  the month, saying we have more people now because we
15  contacted the people that Menu had, but I don't
16  think that advances anything as far as the
17  particular communication here. It would only be
18  discovery that potentially would benefit the
19  plaintiffs in a potential MDL argument or
20  potentially getting, signing up more plaintiffs.
21  From that standpoint, I would object to conducting
22  any type discovery or turning over of any documents
23  at this stage until Your Honor is the -- if you are
24  the transferee Judge, we have the appropriate 26A
25  scheduling order and 26F conference.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

42

1      THE COURT: Thank you.
2      Who is that -- let me see if I can do an
3  inventory for where we are.
4      I take it then that you have already sent
5  out your version of this letter?
6      MR. RUFF: May 15th they started sending out
7  the letter. Yes, Your Honor.
8      To those who have contacted them.
9      THE COURT: And what was the date that I set
10  this down for argument?
11      MR. RUFF: I know you -- where you are
12  going. Agreed.
13      THE COURT: I didn't ask the question.
14      MR. RUFF: I believe I know where you are
15  going, and believe me, I had that discussion.
16      THE COURT: Did you know they were going to
17  send it out?
18      MR. RUFF: Yes, I did.
19      THE COURT: And to whom was it sent?
20      MR. RUFF: To those who have sent
21  information to them, requests in there who have made
22  calls to them.
23      THE COURT: And would those have been
24  included representative, represented persons?
25      MR. RUFF: I don't know. All I'm saying is

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

43

1  that a person received a call from them -- to them.
2  They sent them out.
3      THE COURT: And can you tell me the
4  universe of people?
5      MR. RUFF: I can't.
6      THE COURT: How many letters did they send
7  out?
8      MR. RUFF: I took that information in case
9  Your Honor asked that question. I understand that
10  as of May 15th they sent out, U.S., because there
11  are Canadian interests as well, Canadian interests
12  are much smaller than the U.S. I understand it's 90
13  percent U.S. versus 10 percent in Canada. So I'm
14  representing to the Court, as an officer of the
15  Court there were also notices sent to Canadian
16  residents.
17      In the U.S. on May 15th I was told by Brent
18  Hackett that 4,200, 4,260. On May 16th, there were
19  1,269. On May 17th, there were 2,486. And by the
20  end of today I understand there will be 7,298. I
21  added that up and it's 15,313, unless my
22  calculations --
23      THE COURT: How many --
24      MR. RUFF: I added it up, unless I punched
25  the wrong number, 15,313 by the end of today.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

44

1      MR. RUFF: I understand depending upon the
2  Court's ruling they intend to get up to
3  approximately a number of 19,000. Monday is a
4  holiday in Canada, so I don't know how many they
5  will send out on Monday. They intend to mail these
6  by Tuesday, to get up to approximately 19,000.
7      THE COURT: Okay.
8      Did all of the recipients of this letter --
9  tell me what is in the package.
10      MR. RUFF: I think we attached it, sir, to
11  the, to the motion.
12      THE COURT: It would be the one that says,
13  Dear pet owner, May 14, 2007. The one red lined by
14  the plaintiff?
15      MR. RUFF: Not the plaintiffs.
16      THE COURT: I meant the one that they took
17  in an effort to suggest, making suggestions.
18      MR. RUFF: Yes, sir.
19      THE COURT: So it's the cover letter dated
20  May 14, 2007, following the document 13-5. And then
21  it contains a list of plaintiff's counsel, a list --
22      MR. RUFF: By State.
23      THE COURT: By State.
24      Which is 13 pages long.
25      MR. RUFF: Correct.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

45

1       THE COURT: And then a claim form.
2       MR. RUFF: Correct.
3       THE COURT: A blank page.
4       MR. RUFF: Correct.
5       THE COURT: Identifying information,
6  Product information. List of products. And then
7  the kind of detailed information that was in the
8  Data Collection Form.
9       MR. RUFF: Correct.
10      When they, if they filled it out before,
11 they do not have to do it again.
12      THE COURT: Now -- okay.
13      MR. RUFF: One of the things that were
14 omitted, just so you know, and I don't know if a big
15 point, but one of the questions counsel raised in
16 the initial brief was the social security number of
17 the individuals has been left off.
18      THE COURT: I noticed that. It struck me
19 as an odd thing to ask for.
20      MR. RUFF: It's gone.
21      THE COURT: You can do it from there or come
22 back over there.
23      MR. RUFF: Do you want me still there?
24      THE COURT: I have some more questions.
25      MR. RUFF: Certainly.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

46

1       THE COURT: This is disturbing in light of
2  the pending motion. I understand the restrictions
3  on my power, and I understand as an officer of the
4  Government that I have an obligation to follow and
5  respect the Constitution, and it's not my intent to
6  preclude your client from communicating as it sees
7  fit. And case law is clear that that can be
8  appropriate, and perhaps, indeed encouraged and
9  protected speech.
10      On the other, hand plaintiffs have raised
11 concerns about the substantive rights of those they
12 represent and those that they may come to represent,
13 so I need to make inquiry into who has gotten this
14 letter and I can't speak for them. They're sitting
15 silently here. I don't know if it's news to them or
16 not, but I think it may -- we may have shifted from
17 we think it's great they want to send out a letter,
18 we would like to have it modified, to perhaps some
19 other suggestions. So let me find out more.
20      I assume that some of these people, perhaps
21 many of them, may simply be in a position of saying,
22 now I gave you guys $10 bucks for this bag of dog
23 food I found in my cupboard, and I can't use it, I
24 want my $10 bucks back. I just want -- my pet is
25 fine. And when they fill out the form, that's what

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

47

1  they will get, or something similar to a coupon for
2  next weeks purchase.
3       We don't know, do we, how many of these may
4  have lost a pet or suffering what they would claim
5  now or later as damages?
6       MR. RUFF: I don't know that information.
7       THE COURT: Was there an effort to
8  determine, an effort made to categorize the people
9  who received this letter?
10      MR. RUFF: A claim process to put people
11 into values?
12      THE COURT: Right.
13      MR. RUFF: Not that I know of.
14      THE COURT: If they, if there was a Data
15 Collection Form received or filled out when someone
16 called on a toll free number, that's one set of
17 circumstances. Someone calls and says -- I'm
18 curious how the list was compiled and whether or not
19 --
20      MR. RUFF: The list was compiled, the way I
21 understand it, and I a lot of that I learned this
22 morning, was that apparently Menu Foods received
23 approximately 20,000 calls, I may be off on that
24 somewhat, but it's approximately 20,000 calls that
25 they had verified people who had called them. They

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

48

1  then, when the decision was made to hire Crawford,
2  they turned the 20,000 over to Crawford. And the
3  people that had called them, it was the
4  responsibility I understand from Crawford to return
5  those calls. Out of the 20,000, some were bad
6  numbers. No return --
7       THE COURT: Did they make a conscious
8  effort to -- do they send it to only those who gave
9  up their names and address, or did they make an
10 affirmative effort to identify through caller ID
11 features the name and address, and then send it to
12 someone who merely called?
13      MR. RUFF: I didn't ask that question, but
14 what I understand they tried to verify addresses and
15 obviously they did verify addresses because they're
16 sending it to some people. Even some that they have
17 that they believe are verified addresses may not
18 actually be appropriate addresses. I don't know
19 that.
20      THE COURT: Was there any effort to
21 exclude those who are named plaintiffs in pending
22 cases?
23      MR. RUFF: Whoever called them, they
24 responded. Not knowing initially or over the course
25 of time who are whom. I don't think that level of

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

49

1   detail was known.
2        What I understand is that there's a
3   voicecom message that will accompany this that
4   they're going to receive so they have a number from
5   that, I have told you from Menu. What I understand,
6   Crawford will do is send a computerized statement.
7        THE COURT: By phone?
8        MR. RUFF: By phone. That will go to --
9        THE COURT: Some of the people.
10       Some of these people have lost their pets.
11  You wouldn't terrorize them with telemarketing
12  calls -- it's a joke. You will follow up with a
13  call.
14       MR. RUFF: They will send a voice message
15  that says, if you are -- we are calling on behalf of
16  Menu Foods. Thank you for your continued patience.
17  A claim package is being printed and will be mailed
18  to you in the near future. This package will
19  include a help desk phone number and forms for you
20  to complete and submit, if you chose to do so, and
21  instructions will be included in the package. These
22  refer to the web, to the Menu Foods website, and
23  that gives the website. For further information,
24  including a copy of the claim package.
25       THE COURT: Okay.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

50

1        MR. RUFF: That will be -- I understand has
2   started on Tuesday.
3        THE COURT: The phone calls?
4        MR. RUFF: The phone calls. When the
5   mailing went out this call was computerized and sent
6   out.
7        THE COURT: Have you hired the Goodyear
8   blimp yet? All right.
9        What else do you intend to do for the
10  future?
11       MR. RUFF: That's what I understand is the
12  procedure.
13       THE COURT: Okay.
14       MR. RUFF: I'm not aware of any potential
15  claims of abuse or someone has been contacted that
16  was a named class individual. I don't think that
17  was anybody's intent. There are a number of things
18  the plaintiffs must show that are real or obstructed
19  abuse. This could have been done on day one.
20  There's no showing at all by the plaintiffs that
21  this letter affects the rights of the putative class
22  members, and I don't think they're claiming that,
23  now. They just want to change the language.
24       If the pet owners wish to settle and
25  received money, we have the right to seek and claim

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

51

1   and get information. I think to make it clear, in
2   order to identify who you are going to settle with,
3   these are pretty basic information to in order to
4   make that decision.
5        I don't think that we can take their word for it
6   that in fact this was our product. In fact, there
7   was a consumption of the product or there wasn't,
8   and one of the key questions I think is different
9   from the first claim form to this one is that the,
10  we don't know, and Menu didn't know at the time the
11  wheat glutin potentially affected other
12  manufacturers. So I think one of the questions here
13  from a causation standpoint, was there consumption
14  of another product that was affecting, because there
15  are now a number of manufacturers who have the same
16  problem.
17       THE COURT: Right. Well, don't
18  misunderstand my attempt at levity that I understand
19  and read the cases, and of course will follow those
20  that make clear you have a right to communicate with
21  those who desire to settle. And I think, I think
22  plaintiffs were right in commending your client for
23  doing a better job of communicating with the full
24  scope and breath of this particular recall and the
25  legal ramifications that flow and communicated to

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

52

1   them what their rights and/or might be. Up to
2   including exercising their right to, fully informed
3   to settle independently.
4        But the posture here is different than what
5   I believe it was when I first read the papers. Now
6   that there has been more communication, as helpful
7   as that is, it raises a, continues to raise some of
8   the issues whether or not there is a complete
9   picture and whether an attempt to say one thing
10  intentionally or otherwise created an additional or
11  a new misapprehension.
12       Would your client object to supplying
13  plaintiffs with the list of people who received the
14  letter?
15       MR. RUFF: Yes. Just like I'm sure they
16  would object -- what we're doing, and I would think
17  in that regard would be conducting discovery in this
18  particular case in advance of all the others. Just
19  like, you know, what, who comprises the class. If
20  we look at 26 New Jersey cases, 23 of them, the
21  named plaintiff is not from New Jersey.
22       THE COURT: Right.
23       Let me ask you this, would you object to
24  the plaintiffs preparing a supplemental
25  communication to be delivered blindly to Crawford,

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

53

1  to be delivered blindly as to the plaintiffs to the
2  same recipients of your letter?
3          MR. RUFF: That would appear to be, and
4  that's some of the suggestions made in the case law.
5  I think a threshold ruling, and I see where Your
6  Honor is trying to go as far as accomodation and
7  agreement, but I think where we stand on this is
8  that this is a litigation, again, neutral statement.
9  We don't take any position in here whatsoever than
10 we oppose class certification. Any attempt that is
11 red lined by the plaintiff suggests the opposite,
12 and is a statement that of their belief in the case
13 and stating certain status, which we believe will
14 never occur. So from the standpoint of would we
15 want to send it from Crawford, I think to adequately
16 represent Menu' position, Menu's position, that
17 would not be appropriate.
18         From the standpoint of the Court saying,
19 and Crawford is ready, the insurer is ready, Menu is
20 ready to take whatever the Court says must be done,
21 and as I walk out of this courtroom will be done.
22 So if the Court were to say something had to be
23 done, then it certainly immediately will be done.
24 But from what I see of what they're doing, I don't
25 see anything in what has been proposed as being

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

54

1  necessary according to the narrowest construction
2  that is proper by incorporating that into what Menu
3  must do from plaintiff's view point. I would be not
4  strongly stating Menu's position because I received
5  a clear desire from Menu they want this to occur
6  because they are not only getting pressure from the
7  ultimate consumer, the customers, but also from
8  their customers because there are cases being out
9  there beyond what Menu is doing, and from what I
10 understand that are being settled from the grocers,
11 etcetera.
12         And this group right here doesn't even
13 represent all the New Jersey cases.
14         Again, if these particular plaintiffs were
15 allowed to make that suggestion, then where do we go
16 with the other 90 cases that are pending? Every
17 jurisdiction will ask -- there is one case there has
18 not been, a stay entered in Arkansas. There is
19 requested by the plaintiffs, on the plaintiff's side
20 on the MDL proceeding to go from Washington,
21 California, Arkansas, New Jersey -- probably missing
22 some. There's been requests to go all over. I can
23 anticipate that in the next week or two I will be on
24 a plane a lot.
25         THE COURT: Let me hear from the

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

55

1  plaintiffs.
2          MR. PAUL: Thank you, Your Honor.
3          At the outset, Your Honor, I must say that
4  I'm rather shocked. We had no idea that these
5  communications were being sent out especially in
6  these quantities. We had assumed that since we were
7  coming here today that any decision to send what
8  would be an appropriate communication would be put
9  off until this hearing was had. We had no knowledge
10 of that, I must say.
11         Again, we commend their efforts to change
12 the communication to comply with the legal
13 requirements, but we don't think it goes far enough,
14 and we would say at this point, just having heard
15 this information for the first time, that if Your
16 Honor agrees with us, there's several misleading
17 notions in the communication, that it has to be
18 resent. They should be immediately enjoined from
19 continuing these communications until a correct
20 communication can be fashioned and sent, although an
21 alternative, I believe, I think I heard that you
22 mentioned would be a supplemental communication by
23 plaintiffs, and if we could be allowed to send what
24 Your Honor would look at and agree is a curative
25 communication, we would be amenable to send that

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

56

1  blindly to Crawford to the whole list.
2          I would also add we really do need that
3  list of pet owners with whom Menu Food has
4  communicated because we do believe that list
5  includes several representative parties in this
6  action, and the only way to determine that would be
7  to see the complete list.
8          There are other, a couple other notions
9  that defendants have proffered I would like to
10 respond to.
11         There was a whole conversation on whether
12 or not a class might be certified in this action,
13 and first, I would say that the language that we are
14 proposing does say, quote, you are automatically
15 eligible to receive a portion of any recovery
16 received by the class if the class is certified.
17         That if language is in one of the sentences
18 we are proposing.
19         Secondly, to address the substantively, if
20 Your Honor will allow me, we don't believe there are
21 obstacles to class certification here. Every
22 plaintiff in every class has his or her own
23 idiosyncrasies, we believe, and believe the law is
24 on our side that they are not so great here to
25 defeat class certification.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

57

1    I would also add that the defendant's claim
2    process, the way they are attempting to settle many
3    of the thousands and thousands of cases out there,
4    is akin to a group settlement that basically
5    concedes that settlement on a class basis is
6    something that's manageable here.
7        The defendant's real issue regarding the
8    idiosyncrasies of each plaintiff in this case, is
9    how a claim's administrator will manage the claims,
10   but it really doesn't go to say that a class action
11   is not the most appropriate way do settle all these
12   claims.
13       We, again, believe that it is.
14       I also have to respond to something else
15   they said.
16       Your Honor, we are here today because we
17   saw something happening that we believe had to be
18   rectified.  We felt we had to take action on behalf
19   of the plaintiffs in the class.  We are not
20   purporting to represent every single class action
21   that's currently been filed, although we do believe
22   we represent a majority of the class actions now
23   that have been filed.  We felt the need to take
24   action, and we -- that's what we did.  We didn't let
25   the fact there were other class actions out there

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

58

1    having been filed stop you us from righting a wrong
2    that was occurring.
3        I would also add, Your Honor, I'm not sure
4    how defendants believe we might use the information
5    they are currently gathering in an MDL proceeding.
6    I didn't understand that.  But if they had the
7    information and it's usable in any way, it's usable
8    to them as much as it's usable to us, and if they
9    have the ability to look at this information that
10   was gathered with the misleading claim forms, then
11   we should have the right to look at it as well.
12       The defendants, Your Honor, cited to the
13   Keystone case, and although I do believe they have
14   attempted to comply with the legal requirements, I
15   don't believe they complied in the Keystone.
16       The facts of that case are slightly
17   different.  I believe, I believe it was after a
18   class was certified a settlement was reached and the
19   communication -- I'll just quote it. The Kessler
20   letter, as the Kessler complaint letter advised
21   customers to consult with their own lawyer before
22   deciding to settle the case or sign the releases.
23   And that's a specific omission from the current
24   letter that is out there.  That it doesn't inform
25   them that when they get to that point of settlement,

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

59

1    when they receive a settlement offer and ask to sign
2    a release, at that point they can consult an
3    attorney.  It's like in a gauntlet, once signing,
4    there supposed to get what they get and already
5    decided not to call an attorney.  So they haven't
6    been informed by Menu Foods that they can call one
7    in the future.
8        We added language, in addition, once you
9    receive a settlement offer from Menu Foods you
10   should also free to contact an attorney regarding a
11   settlement offer.  That would comport with the
12   Keystone case, that language.
13       Your Honor, I would also add that if there
14   are pet owners out there who filled out claim forms
15   previously based on what we have termed the
16   misleading prior communications, I think the slate
17   has to be wiped clean and start all over again.
18   They have to receive a new communication meeting
19   whatever Your Honor deems appropriate, fill out the
20   claim form again, and they have to start the process
21   all over because what they filled out before was
22   essentially based on a misleading communication.
23       Finally, I would just add that hearing we
24   weren't privy to all this information about outgoing
25   voice mail messages left on pet owner tapes, and

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

60

1    what I'm taking away is that this is, and they have
2    every right to try the cases -- we're not implying
3    they don't, but essentially a full-fledged direct
4    marketing campaign directed to pet owners getting to
5    settle the cases directly with defendants, and if
6    they're going to resort to these efforts, every
7    piece of information has to be on the table and any
8    good direct marketer will tell you that's what a
9    direct marketing customer will do most easily, is do
10   nothing.  It's very hard to get a direct market
11   customer to fill a form out and to send something in
12   -- actually take action to get up and pick up the
13   phone and call an attorney.  They have to know that
14   one of their options is they can sit back, do
15   nothing, and their rights would be protected as
16   putative members of the class.
17       Thank you, Your Honor.
18       THE COURT:  Thank you.
19       Mr. Ruff, if I were inclined to direct your
20   client to send out another communication -- let me
21   state it differently.  Let's say I were inclined to
22   order another communication to those who have
23   received the communications sent out this week,
24   would you have a preference between you sending out
25   or having Crawford send something prepared by the

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

61

1   plaintiffs and approved by me?
2        MR. RUFF: Your Honor says we do, obviously
3   so whatever you say, we'll do.
4        Let me understand the question again.
5        Do you mind just restating it to me one
6   more time.
7        THE COURT: Would you prefer, if I were
8   inclined to direct a further communication to the
9   recipients of your May 14th letter, and let me tell
10  you why I would do that. Put aside the contacts of
11  represented persons because whatever my powers may
12  be regarding a putative class, and I think you are
13  right to remind me about the multidistrict
14  litigation and the other cases, I would have to
15  tread very carefully and be absolutely sure of my
16  jurisdiction before I did this, this second
17  communication. I want one thing clear. I think
18  it's absolutely incumbent upon me and you and your
19  client to find out if you sent any of these letters
20  to represented persons. I am disturbed that
21  plaintiffs, having raised this issue in its papers
22  about such contacts, that your client, represented
23  by counsel, would not undertake efforts to exclude
24  those people from this mass mailing and not make
25  efforts to exclude those people from subsequent

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

62

1   efforts to contact them.
2        I haven't read the rule lately, but I
3   recall specifically that, especially when counsel
4   for a represented person says, hold on, you need to
5   go through me, that a lawyer who allows such conduct
6   to occur or such contact to occur even through an
7   agent, and even especially through an agent, may be
8   engaging in unethical conduct.
9        Now I don't have the facts before me to
10  make that finding, but I know the issue has been
11  raised. I know that based on your representation
12  there was no effort made to try to identify such
13  persons. I know that a mass mailing was made, and I
14  know there are plans for future communications as
15  early as tomorrow or today, I believe you said. So
16  I -- I want to hear from the plaintiffs again
17  because if they have a good faith belief that their
18  clients are, been the subject of these
19  communications, I'll order you to make a concerted
20  effort to see whether that happened, because it
21  disturbs me.
22        But the question I pose is, now that you've
23  -- and I say you, I doesn't mean necessarily you,
24  but your client has decided, despite the pendency of
25  the motion here, to send out this letter

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

63

1   unilaterally and made judgments as to whether or not
2   I might construe some of it as misleading or not.
3   Now that it has done that, and again I recognize the
4   case law that gives you the right to try to settle
5   these cases, and I'm not faulting the communication,
6   the fact of the communicating so much as I am now
7   that you have made that communication, it raises the
8   potential for that communication being misleading or
9   coercive in some way.
10        Your papers initially start out saying,
11  well, we were just responding to phone calls, and
12  just passively receiving information from people who
13  called us up in a distressed situation and wanted
14  help. That is one context. But --
15        MR. RUFF: I can tell you that when I filed
16  the papers I did not know this would be mailed on
17  Tuesday.
18        THE COURT: Well, I hear you, I hear you
19  saying, look, the corporate equivalent of mom and
20  pop and just trying to do the right thing. But
21  perhaps the lawyers and clients should do a better
22  job of communicating with one another with what they
23  intend to do. It's a completely different set of
24  circumstances where they engage a company like
25  Crawford and reach out, especially to 20,000, 20,000

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

64

1   potential class members and urge them to settle
2   their cases. That's fairly construed as an effort
3   to influence the litigation and to influence the
4   possibility of class certification.
5        I understand you take the position it
6   shouldn't be class certified, but ultimately that
7   might be a question for me. And it just puts us in a
8   very different posture.
9        I think what the supreme Court was
10  concerned about in the Gulf Oil thing is the
11  defendants there, and it's the reverse of this
12  situation, the defendants were able to communicate
13  with folks, and the plaintiffs by virtue of the
14  Court's orders, hands were tied. And that's where
15  we are right now. You're sending out information
16  about the class and about the litigation that could
17  have a potential effect on the pending litigation,
18  and effect on the class, yet the plaintiffs are,
19  don't have the same opportunity to communicate, and
20  to the extent that your information conveyed is
21  incomplete or misleading, it raises all of the
22  concerns that the Supreme Court expressed in the
23  Gulf Oil case.
24        It is correct for your client to settle
25  these cases with plaintiffs who are fully informed

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

65

1  and not mislead. You ought to have that right, and
2  I will do nothing to interfere with that right. But
3  they must be informed, fully informed. That's what
4  drove the decision in the Supreme Court in Gulf Oil
   as I read it.
6          You should be precluded, and in certain
7  procedural contexts from using this communication as
8  both a sword and a shield without providing your
9  adversary with the same opportunity.
10         That doesn't mean they're entitled to
11 everything you have gathered. I think a fully
12 informed customer could say I don't want what I have
13 told the company turned over to anybody else,
14 particularly if it's a social security number. So
15 I'm not -- I would be very reluctant to order you
16 and your client to turn over everything to them that
17 you have gathered. But I would want to be sure that
18 that was a joint decision between those who provided
19 you information and your client.
20         So, to the extent I might want to put the
21 Genie back in the bottle, the bottle is getting
22 bigger, and so is the genie.
23         MR. RUFF: From the standpoint to allay any
24 fears, as I started out, there's been no
25 settlements, and so --
          U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

66

1          THE COURT: But you are heading that way.
2          MR. RUFF: No question.
3          I'm not heading that way, but they are, no
4  question.
5          THE COURT: If you are making up follow-up
6  phone calls, you are not doing that because you're
7  hoping the people will sit passively. There could
8  be a settlement within days, by next week.
9          MR. RUFF: Next week. Which is what the
10 case law says.
11         THE COURT: How do I -- don't I have an
12 obligation if this is heading, if there is some
13 possibility of this becoming a class, maybe I'm back
14 to the question I raised before, perhaps, isn't the
15 case law clear I have an obligation to make sure
16 that those individuals who might have the options of
17 being members of a class are fully informed of their
18 rights?
19         MR. RUFF: Absolutely. And I think they
20 have.
21         Your Honor, what I think the Court and the
22 narrowest construction possible, and now whatever,
23 again, whatever you want to do will be done
24 immediately walking out of this courtroom. They're
25 waiting for what you have to say. But the point is
          U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

67

1  that I think the fundamental question has to look at
2  what the notice letter says, and I don't believe in
3  any respects, in any respects, if you look at the --
4  the only case they cite is the Klinner case that
5  says coercive activity. You know, so far removed
6  from the facts of this case as far as the subversive
7  tactics taken by the defendants.
8          I think what the Court has to do is take a
9  look at the notice letter, and if Your Honor says
10 this word should be changed to that word or
11 whatever, that will be done immediately. But I
12 don't think it is, and I don't think they have the
13 right to say we want to change your free speech. We
14 want to change your communication in some respects.
15 I don't think they have that right. We have the
16 right to communicate freely. If there was any kind
17 of contact with their named plaintiffs -- one of the
18 questions that we have going to the MDL is how many
19 plaintiffs do they actually represent. If we don't
20 have a suggestion that one person of whom they
21 represent has inappropriately received a
22 communication, and whether or not they received that
23 communication, to somebody who is, they contacted,
24 their client has contacted us first and parties can
25 always talk in this context --
          U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

68

1          THE COURT: I don't think that's true.
2          MR. RUFF: Why don't we hear from them --
3  we're supposed to tell them whether or not their
4  clients have been contacted. How about they tell us
5  their clients have been contacted. There is no
6  intent, and specifically said, please have this
7  blast sent out until after we speak to you. You can
8  give advice, but you cannot -- sometimes the client
9  is under enormous pressure, financial pressure.
10 They're not sure they will last. They're not sure
11 that that's what they're telling us. They're not
12 sure they will last. They want to get some kind of
13 positive message out there to the ultimate consumers
14 and their customers. So that's the pressure that is
15 on them. That there was no intent to try to contact
16 or, you know, their clients to try to subvert the
17 class.
18         The numerosity in this case, I don't think
19 there's ever going to be an issue in this case. But
20 if Your Honor says that for some reason this word
21 should be changed to that word -- I think we sent
22 out litigation neutral letters. I looked it over.
23 A lot of people looked it over before it was sent
24 out to make it as litigation neutral as possible.
25         Every suggestion -- they're not really
          U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

69

1  criticized them, but a red line here, the same red
2  lines we've been going through for the past few
3  weeks.
4        What they're suggesting is putting in
5  language that helps them state their position in the
6  case. We haven't stated our position. In Keystone,
7  which counsel cited, there's no case that supports
8  their position. But in Keystone, the case that was
9  cited, one of the things that were sent out says --
10  this is on page 5 of the, of WestLaw. It says, an
11  offer to settle was made. But there was actually a
12  memorandum of law given. We don't do any of that
13  here. We just basically said 5 times, contact an
14  attorney, contact an attorney. There's a list,
15  there's a class action pending. They're moving for
16  a class. We oppose it. That's all we said. .
17        THE COURT: I'm not suggesting there was
18  coercion, but --
19        MR. RUFF: Can I make one final suggestion
20  and then I'll sit down?
21        THE COURT: Let me finish the thought.
22        But not being fully informed about your
23  rights, what was misleading about your rights,
24  isn't it an equally important principle to be
25  vindicated on in the issue of communications with

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

70

1  putative class members? I'm not -- there are cases
2  about, that you are suing yourself and this will
3  cost money to you and all that. I'm not suggesting
4  that's what the company did here. But there does
5  seem to be a concerted effort to effect the class,
6  and a concerted effort to convey certain information
7  about the litigation.
8        If I were to find that that information
9  about the litigation, including things like opting
10  out and your other litigation options, then I think
11  the case law would, would allow me to order a
12  supplemental communication of some kind.
13        You said and I said I don't want to do
14  anything to interfere with your communications.
15  When you said it a minute ago I took it this is a
16  question I posed to you before we got off track on,
17  but you would probably prefer, although you said
18  we'll do anything you say, would you prefer -- if I
19  ordered you to change your letter and send another
20  letter out, am I interfering with your
21  communication? Would you refer that -- or prefer
22  let the plaintiff with your opportunity to object to
23  the contents and my ruling on it, prepare something
24  that would be sent out to this, class, I'll call
25  them, for lack of a better term.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

71

1        MR. RUFF: I'll answer the question by
2  stating that Mr. Turiello mentioned a number of
3  points he wants me to point out, but I have a
4  thought, and I don't want to lose this though. And
5  the thought is, Your Honor, in having this
6  discussion with you, I think it really comes down to
7  Your Honor's thoughts on what the, the content of
8  that letter. And keeping in mind the First
9  Amendment freedom of speech and ability to contacts,
10  and all of those types of constraints, that's within
11  the Constitution that Your Honor has to work with.
12  So I think in looking at this particular letter, is
13  this letter appropriate. That's what it comes down
14  to. And I don't think there is a word in there
15  that's misleading, and it certainly isn't -- it
16  isn't coercive in light of the long list of cases
17  where the defendants have done some dastardly things
18  to convince people to opt out of the class, and
19  specifically I would not have allowed it to happen,
20  and I said don't -- this will be as litigation
21  neutral as possible. You inform them of the rights.
22  You give them the list, and we do it 5 times.
23        So I think anything that they have
24  suggested, and I started off my conversation with
25  you two hours ago, that essentially we disagree to

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

72

1  anything that they say.
2        So if you are asking how would I prefer it
3  to happen, I would prefer it to happen from the
4  Court saying that particular communication is not
5  appropriate and here's what needs to be done.
6        THE COURT: What's the form of it. Is it
7  going to be a new letter from you?
8        MR. RUFF: I suggest the present letter is
9  fine.
10        THE COURT: Supposed I say it's -- decide
11  it's misleading, would you prefer I direct you to
12  send a new letter through Crawford from you as a
13  matter of an order entered by a Court, injunction,
14  if you will, ordering you to send out a new letter
15  or would you prefer Crawford send out something
16  approved by me for you to have an opportunity to
17  object, or prepared by the plaintiffs?
18        MR. RUFF: I had -- I'm reporting to a lot
19  of masters.
20        THE COURT: You can say I would like to
21  answer that later. That would be a fine answer.
22        MR. RUFF: Then Your Honor is correctly
23  stated what my answer would be.
24        I just, because so I don't get a kick when
25  I get back to the table, if I could point out some

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

73

1  of the things Mrs. Turiello suggesting I point out,
2  and I think their good points.
3          We cannot go too far in advising of rights.
4  Because then we're starting to state positions and
5  all that other stuff. The fact of opt out. I
6  wanted to make it as simple as possible regarding
7  they say class action and we will oppose. That's
8  it. We start getting into the fact of this -- I
9  stated on the record if the declaration was to be
10  viewed as a specific opt-out, we are not going to
11  argue that. So I think that elevates any of those
12  problems. We can't give legal advise to people, to
13  anyone that this has been submitted to. We don't
14  give legal advise and we said to the contrary, we
15  can't give you legal advice, and if you need legal
16  advice, contact your counsel.
17          If that were sent to a named plaintiff, the
18  first thing we say is contact these people. So we
19  put them in there. Contact these people. It's the
20  first thing we say.
21          So if Your Honor thought that perhaps that
22  was, you know, an improper communication, the first
23  thing you say is contact an attorney, and I think
24  it's repeated three or four times in there.
25          We stated it neutrally, the lay of the

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

74

1  land. We told them five times to contact the
2  attorney. If they decide to contact an attorney,
3  that's where they get there legal advice.
4          Crawford, my understanding, and
5  instructions, they're not to give any legal advice.
6  If they get a question about, in the process of
7  potentially discussing settlement, what is it the
8  effect on this, contact an attorney, discuss this.
9  Done. If you want to contact an attorney, that's
10  fine. That's where it is.
11          I think what has to be done in some
12  respects is come back to that notice letter, call it
13  whatever you want, that letter I think is litigation
14  neutral. Whatever Your Honor says is fine, and we
15  will go out and send out another letter. But I
16  think it was stated in that fashion. Anything to
17  the contrary would be to misstate an opinion.
18          THE COURT: I think the recipients know a
19  lot more than they did before, and I think that's a
20  good thing. The question is whether it's complete
21  enough.
22          Let me hear from the plaintiffs, if I
23  could.
24          Mr. Paul, on this issue of contacts with
25  represented persons, do you continue to share that

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

75

1  concern?
2          MR. PAUL: Your Honor, we believe it's a
3  concern. It's easily rectified and happy to give
4  them, or comport their own list of named
5  representatives and exclude them through some kind
6  of electronic tool from the database of listed
7  names.
8          THE COURT: I would like you and any
9  representative of the plaintiff to immediately
10  inform the Court if any represented persons receives
11  communications from the defendants.
12          MR. PAUL: Yes, Your Honor.
13          THE COURT: I don't consider this a
14  disciplinary board and I'm not going to litigate
15  your case for you, but -- would you -- you've made a
16  suggestion. It's your suggestion that the plaintiffs
17  search the list of --
18          MR. PAUL: The defendants search their list.
19          THE COURT: The defendants search their
20  list to see whether it matches any of the named
21  plaintiffs --
22          MR. PAUL: And exclude those names.
23          THE COURT: -- from the list.
24          MR. PAUL: Yes. We don't believe there was
25  any malice intended here, just something they should

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

76

1  do going forward.
2          THE COURT: So we can resolve that. We
3  spent time on that.
4          Do you have any objection to searching that
5  list?
6          MR. RUFF: No, sir.
7          THE COURT: Not communicating with anyone
8  who is a named plaintiff from this day forward?
9          MR. RUFF: Absolutely.
10          THE COURT: Orally or in writing.
11          MR. RUFF: Absolutely.
12          THE COURT: I appreciate that.
13          I think that that is an appropriate thing
14  to do here. I would ask you to submit a consent
15  order on that issue.
16          Now I asked Mr. Ruff, and let me ask you,
17  Mr. Paul, if I were to find, and I haven't found
18  yet, that the communication that's already gone out
19  is, needs to be supplemented, we wouldn't
20  characterize it. It needs to be supplemented, do
21  you have a preference whether it's a communication
22  from you or from them?
23          MR. PAUL: Your Honor, if I had my druthers,
24  I would suggest it come from plaintiffs only because
25  they're getting so many communications from the

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

77

1  defendants, it might become very confusing after a
2  while, and a communication from a different party
3  might be a lot clearer for them.
4        THE COURT: Okay.
5        The reason, just so we are clear, the
6  reason I asked this, I don't want to appear
7  indecisive or not able to enter an order or
8  injunction, but my sense of this is that I need to
9  be very careful about what I order in terms of
10 communication because there are, they are important
11 First Amendment principles here and the more we can
12 agree, the more I can do it in a way that respects
13 your right to communicate with putative class
14 members and their right, the more I want to do that.
15 That's why I asked you.
16       You stand by your red lined version?
17       MR. PAUL: Yes, Your Honor. We'll stand by
18 it. We do believe every single word smithing that
19 we have done is extremely pertinent. We believe the
20 two sentences we have added in the text of the reply
21 brief itself are the most important, but that there
22 are others important issues that are red lined in
23 that draft.
24       THE COURT: If you were to prepare a
25 communication that I would direct be sent to the

78

1  putative class members, could it be drafted into
2  such a way as to say you have received
3  communications from Menu Foods. We wish to bring to
4  your attention additional information so that you
5  may make an informed decision about whatever claims
6  or rights you may have. You were informed x. You
7  may also know Y. You have been informed x1. You
8  may want to be aware of y1.
9        Is that something you would be prepared to
10 propose?
11       MR. PAUL: Yes, Your Honor. I think that
12 that communication would make all of the
13 communications combined, sum total litigation
14 neutral, and without that present they're not
15 litigation neutral.
16       THE COURT: Anything more?
17       MR. PAUL: That's it, Your Honor.
18       THE COURT: All right.
19       Anything else from the defense?
20       MR. RUFF: I would have to take direction
21 from the Court concerning how the, you know, the
22 timing, etcetera.
23       THE COURT: Right.
24       MR. RUFF: Because if we are going to come
25 to some -- they're going to submit something and

79

1  I'll submit something and the Court will rule, what
2  does the Court want me to do in the mean time to
3  tell Crawford about stuff that's potentially still
4  going out today and the rest of the, next week?
5        THE COURT: Well -- let me go back and read
6  a couple of cases. I would like the plaintiffs to
7  submit, to prepare and submit as soon as possible
8  what they would view as a proper curative
9  communication.
10       MR. PAUL: Yes, Your Honor.
11       THE COURT: And I would like you to give it
12 to the Court and serve it on your adversary as soon
13 as possible so they would have an opportunity to
14 review it.
15       Mr. Ruff, would you agree to maintain the
16 status quo regarding settlements -- you proffered in
17 your initial papers there has been no settlements.
18 You reiterated that fact here, today. I have a
19 limited window next week you said. Would you agree
20 to forbear from consummating any settlements before
21 I had an opportunity to review the plaintiff's
22 proposed communication and your objections and to
23 make a ruling on that communication?
24       MR. RUFF: Absolutely, Your Honor.
25       THE COURT: If I were to order a

80

1  communication, and if received, that the recipients
2  would have full opportunity to review that
3  communication before entering into a settlement with
4  your client.
5        MR. RUFF: Absolutely, Your Honor. Can I
6  make one suggestion?
7        THE COURT: Sure.
8        MR. RUFF: If Your Honor would put that, or
9  I guess it would be in the record of today such that
10 the defendant is to know the exact language you
11 would suggest, but should not make any settlements
12 until the Court has ruled on that, that is something
13 I can definitely live with.
14       THE COURT: Okay. I'm not -- I may or may
15 not order it. I'm asking if you would consent to
16 maintain the status quo?
17       MR. RUFF: Yes, I will do that.
18       THE COURT: I think it's very simple. It's
19 just -- I'm not asking you to change any
20 communications at this point. I'm not asking you to
21 sees any communications at this point. I'm not --
22 but I am asking you not to settle anything.
23       MR. RUFF: Consent, yes, granted.
24       THE COURT: And I am asking you
25 specifically not to settle anything until I decide

81

1   whether there should be some additional
2   communications, and as I sit here now, I think that
3   some may be necessary. And to the extent you can
^   agree to the status quo, I think it's helpful.
        MR. RUFF: Yes, I can agree.
6       THE COURT:  They received what they
7   received. I can't but the Genie back into the
8   bottle. If I am to decide that additional
9   communications are necessary, I'll have to go to the
10  next step which is, you are still talking to people
11  and the next step would be an order specifying a
12  more unified communication or -- a comprehensive
13  communication for all future recipients of
14  information.
15      MR. RUFF: Or ones who received it in the
16  past to resend it, right?
17      THE COURT: Right.
18      MR. RUFF: Right.
19      THE COURT:  Right.
20      I appreciate that.
21      Is that process satisfactory to, in terms
22  of the procedural steps?
23      MR. RUFF: I will do so. Yes.
24      THE COURT: Plaintiffs?
25      MR. PAUL: Yes, Your Honor.
            U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

82

1       THE COURT: I'll ask you get it to me
2   promptly.
3       MR. PAUL: Yes.
4       THE COURT:  I want you to specifically say,
5   not only submit it, but explain to me in a very
6   clear, concise, short fashion why you think your
7   proposed additional communication clears up anything
8   about the prior communication that was in your view
9   misleading or coercive, or otherwise violative of
10  the general rules concerning communications with
11  putative class members.
12      MR. PAUL: Yes, Your Honor.
13      THE COURT:  Including issues of opt-out,
14  sitting passively while litigation proceeds, those
15  kinds of issues.
16      I'm left with the impression more is better
17  here. The more the individuals know, potential
18  plaintiffs know about what their rights are, the
19  better off they are. And the more information that
20  is communicated, the less likely we are in
21  infringing upon the legitimate rights of the
    defendants to communicate themselves with their
    customers, the public, and with those who wish to
24  settle.
25      I'm more comfortable with communications
            U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

83

1   and ordering communications where the defendants,
2   themselves, have undertaken a mass effort to
3   communicate with the putative class members than I
4   would be if they were less passive. Their decision
5   to communicate, and I don't criticize, but heightens
6   in my view my responsibility as, my responsibilities
7   to insure that the rights of the putative class are
8   protected, until such time as the important legal
9   issues that have been raised concerning class
10  certification and damages are resolved by me or by
11  juries.
12      So I will await the submission from the
13  plaintiffs.  I will rule as to whether or not
14  further communications are appropriate; make the
15  requisite factual findings and direct that relief,
16  if it's required.
17      I appreciate the defendant's willingness to
18  have the status quo regarding settlements until I
19  make that ruling, and also appreciate the efforts of
20  the defendants to search Crawford's database, and
21  any other database that may exist regarding putative
22  class members to insure there are no communications
23  of represented persons going forward.
24      I invite plaintiffs to advise me promptly
25  if they're aware such a communication occurred in
            U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

84

1   the past.
2       I would appreciate any efforts made by the
3   defendant's counsel to inform their clients that now
4   having engaged counsel, that there are certain
5   ethical obligations that lawyers have, and while I
6   may sound -- while the plaintiffs -- the defendants
7   themselves may not be aware of those rules, that
8   they need to understand that those rules are binding
9   on counsel.
10      Without suggesting it was done
11  intentionally or finding it was done intentionally,
12  since I have no such facts to make such a finding, I
13  would encourage full and clear communications with,
14  between counsel and the clients to insure that such
15  situations do not arise in the future.
16      With that, then, if nothing else from the
17  parties, I appreciate your patience and your time.
18  I look forward to the proposed communication from
19  the plaintiff and will rule promptly on it in
20  advance of the defendant's plans to proceed towards
21  the end of next week.
22      MS. RODRIGUEZ: Thank you, Your Honor.
23      MR. RUFF: Just so I understand, they will
24  provide something and we will provide a reply?
25      THE COURT:  I want to give you an
            U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

85

1   opportunity -- they have to convince me it's
2   necessary, and provide you an opportunity to provide
3   me it's not necessary, and then I will, my general
    sense is that it's likely to be some additional
    information that ought to be conveyed. I need to
6   make sure it's only that information that's
7   necessary to be conveyed. You go as far as the law
8   requires, but no further. I will look at it
9   closely.
10          MR. RUFF: Thank you, Your Honor, for your
11  time.
12          MR. PAUL: Thank you, Your Honor.
13          (At which time the matter was concluded)
14
15
16
17
18
19
20
21
22
23
24
25

               U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

                                                          86

1          **C E R T I F I C A T E.**
2
3
4
5    I, Stephen J. Daner, C.C.R., Official United States
6   Court Reporter and Certified Court Reporter of the
7   State of New Jersey, do hereby certify that the
8   foregoing is a true and accurate transcript of the
9   testimony as taken stenographically by and before me
10  at the time, place and on the date hereinbefore set
11  forth.
12   I do further certify that I am neither a relative
13  nor employee nor attorney nor counsel of any of the
14  parties to this action, and that I am neither a
15  relative nor employee of such attorney or counsel
16  and that I am not financially interested in this
17  action.
18
19
20
21
22
23
    _____
    STEPHEN J. DANER, C.C.R.
24  Certificate No. 30X100151400
    Date: Saturday, May 19, 2007
25

               U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Jared Workman and Mark and Mona Cohen,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

      v.

Menu Foods Limited, Menu Foods Inc., and
Menu Foods Midwest Corporation

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 07-cv-1338

**CONSENT ORDER**

This matter having come before the Court on Plaintiffs' Order to Show Cause

Why a Protective Order Should Not be Issued, and the Court having considered the

submissions of the parties, and having heard on this matter on May 18, May 23 and May

24, 2007, and counsel having determined that it is best interest of the parties to resolve

this matter, and for good cause shown, it is on this 4th day of May, June, 2007, hereby

ORDERED THAT:

    (1) There will be no direct or indirect contact by Menu Foods with putative class
        members except in the circumstances described in Paragraph 2. Menu Foods
        will delete all settlement materials from its website and there will be no
        settlements between Menu Foods and any unrepresented member of the
        putative class;

    (2) If Menu Foods is responding to calls to its toll-free phone number and it
        becomes apparent that a caller is addressing litigation, or the Menu Foods
        product recall that is the subject of the litigation, Menu Foods will tell the
        caller that it is unable to comment on the matter at this time, but hopes to do
        so in the near future;

    (3) For represented parties, Plaintiffs' counsel will receive copies of the claim
        forms and any information sent or provided by their clients to Menu Foods;



(4) After the cases subject to the MDL motion are transferred to the MDL/Transferee Judge, if Menu Foods seeks to communicate with putative class members, a motion must be advanced in order to seek authority to communicate with such persons and to determine the nature of the communication; and

(5) Subject to further order of the MDL/Transferee Court, Menu Foods will not use any information obtained from putative class members for settlement with unrepresented persons.

**CONSENTED TO BY:**

NEW JERSEY COUNSEL

Lisa J. Rodriguez
Trujillo Rodriguez & Richards, LLC
8 Kings Highway West
Haddonfield, NJ 08033
**Counsel for Plaintiffs**


Dated: May ___, 2007
June 5

NEW JERSEY COUNSEL

Gerard H. Hanson
Hill Wallack LLP
202 Carnegie Center, CN 5226
Princeton, NJ 08543
**Counsel for Defendants**

**SO ORDERED:**

Honorable Noel L. Hillman, U.S.D.J.

STAY

# U.S. District Court
## District of New Jersey [LIVE] (Camden)
### CIVIL DOCKET FOR CASE #: 1:07-cv-01338-NLH-AMD

WORKMAN et al v. MENU FOODS LIMITED et al        Date Filed: 03/23/2007
Assigned to: Judge Noel L. Hillman                            Jury Demand: Plaintiff
Referred to: Magistrate Judge Ann Marie Donio         Nature of Suit: 365 Personal Inj. Prod.
Cause: 28:1332 Diversity-Product Liability                   Liability
                                                                                    Jurisdiction: Diversity

**Plaintiff**

**JARED WORKMAN**                     represented by **DONNA SIEGEL MOFFA**
                                                                         TRUJILLO, RODRIGUEZ &
                                                                         RICHARDS, LLP
                                                                         8 KINGS HIGHWAY WEST
                                                                         HADDONFIELD, NJ 08033
                                                                         (856) 795-9002
                                                                         Email: donna@trrlaw.com
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **LISA J. RODRIGUEZ**
                                                                         TRUJILLO, RODRIGUEZ &
                                                                         RICHARDS, LLP
                                                                         8 KINGS HIGHWAY WEST
                                                                         HADDONFIELD, NJ 08033
                                                                         (856) 795-9002
                                                                         Email: lisa@trrlaw.com
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARK COHEN**                          represented by **DONNA SIEGEL MOFFA**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

                                                                         **LISA J. RODRIGUEZ**
                                                                         (See above for address)
                                                                         *LEAD ATTORNEY*
                                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MONA COHEN**                         represented by **DONNA SIEGEL MOFFA**
*on behalf of themselves and all others*                          (See above for address)
*similarly situated*                                                       *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**LISA J. RODRIGUEZ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MENU FOODS LIMITED**            represented by **CARLOS F. ORTIZ**
DLA, PIPER, RUDNICK, GRAY &
CARY, LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NY 10020-1104
(212) 835-6149
Email: carlos.ortiz@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GERARD H. HANSON**
HILL WALLACK
202 CARNEGIE CENTER
PRINCETON, NJ 08543-5226
(609) 924-0808
Email: ghh@hillwallack.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**STEVEN F. GOOBY**
DLA PIPER US LLP
379 THORNALL STREET
8TH FLOOR
PO BOX 2940
EDISON, NJ 08837-2226
(732) 590-1850
Email: steven.gooby@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MENU FOODS INC.**              represented by **CARLOS F. ORTIZ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GERARD H. HANSON**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**STEVEN F. GOOBY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MENU FOODS MIDWEST**          represented by    **CARLOS F. ORTIZ**
**CORPORATION**                                  (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **GERARD H. HANSON**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **STEVEN F. GOOBY**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/23/2007 | 1 | COMPLAINT against MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC. (Filing fee $350 receipt number 1403626.) JURY DEMAND, filed by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Civil Cover Sheet)(sk) (Entered: 03/23/2007) |
| 03/23/2007 | 2 | Summons Issued as to MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC. Days Due - 20. (sk) (Entered: 03/23/2007) |
| 03/27/2007 | 3 | MOTION to Authorize Service of Process of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Memorandum of Law in Support of Plaintiffs' Motion to Authorize Service of P rocess of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention# 2 Text of Proposed Order)(MOFFA, DONNA) (Entered: 03/27/2007) |
| 03/28/2007 |  | Setting Deadlines as to 3 MOTION to Authorize Service of Process of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention. Motion Returnable for 4/20/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 03/28/2007) |

CM/ECF LIVE - U.S. District Court for the District of New Jersey - Docket Report    Page 4 of 8

| | | |
|---|---|---|
| 03/29/2007 | 4 | ORDER granting 3 Motion to appoint special process service to serve a corporation in a foreign country. Signed by Judge Noel L. Hillman on 03/28/07. (db, ) (Entered: 03/29/2007) |
| 03/30/2007 | 5 | AFFIDAVIT of Service for Summons and Complaint served on Menu Foods, Inc. on 3/27/07, filed by JARED WORKMAN, MARK COHEN, MONA COHEN. (MOFFA, DONNA) (Entered: 03/30/2007) |
| 04/02/2007 | 6 | Copy of motion before the MDL Panel to have this case transferred to S.D. of Florida. (th, ) (Entered: 04/02/2007) |
| 04/04/2007 | 7 | AFFIDAVIT of Service for Summons and Complaint served on Menu Foods Midwest Corporation on March 29, 2007, filed by JARED WORKMAN, MARK COHEN, MONA COHEN. (MOFFA, DONNA) (Entered: 04/04/2007) |
| 04/19/2007 | 8 | First MOTION to Stay by MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC.. (Attachments: # 1 Certification Gerard H. Hanson# 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Brief # 8 Text of Proposed Order)(HANSON, GERARD) (Entered: 04/19/2007) |
| 04/20/2007 | | Setting Deadlines as to 8 First MOTION to Stay. Motion Hearing set for 5/18/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 04/20/2007) |
| 05/02/2007 | 9 | ORDER Granting 8 Motion to Stay. Signed by Judge Noel L. Hillman on 5/2/07. (gn, ) (Entered: 05/02/2007) |
| 05/07/2007 | 10 | MOTION for Order to Show Cause *Why a Protective Order to Supervise or Limit Communications With Absent Class Members Should Not Issue* by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Memorandum of Law in Support# 2 Affidavit of Russell D. Paul in Support# 3 Order# 4 Certificate of Service) (RODRIGUEZ, LISA) (Entered: 05/07/2007) |
| 05/08/2007 | | Setting Deadlines as to 10 MOTION for Order to Show Cause *Why a Protective Order to Supervise or Limit Communications With Absent Class Members Should Not Issue.* Motion returnable date set for 6/1/2007 before Judge Noel L. Hillman. PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (sb) (Entered: 05/08/2007) |
| 05/08/2007 | 11 | Second MOTION for Leave to Appear Pro Hac Vice by MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC.. (Attachments: # 1 Affidavit of Gerard H Hanson# 2 Text of Proposed Order Pro Hac Vice Order re Edward Ruff# 3 Text of Proposed Order Pro Hac Vice Order re Michael Turiello# 4 Text of Proposed Order Pro Hac Vice Order re Priya Jesani# 5 Certificate of Service # 6 Affidavit Edward Ruff# 7 Affidavit Priya Jesani# 8 Affidavit Michael Turiello)(HANSON, GERARD) (Entered: 05/08/2007) |

CM/ECF LIVE - U.S. District Court for the District of New Jersey - Docket Report          Page 5 of 8

| 05/09/2007 | | Setting Deadlines as to 11 Second MOTION for Leave to Appear Pro Hac Vice. Motion returnable date set for 6/1/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (sb) (Entered: 05/09/2007) |
|---|---|---|
| 05/10/2007 | | NOTICE of Hearing on Motion 10 MOTION for Order to Show Cause *Why a Protective Order to Supervise or Limit Communications With Absent Class Members Should Not Issue* on Friday, May 18, 2007 at 11:00AM in Courtroom 3A : Defendants' opposition due Tuesday, May 15, 2007 by 5PM; Plaintiffs' reply due Thursday, May 17, 2007 by Noon (sa, ) Modified on 5/10/2007 (sa, ). (Entered: 05/10/2007) |
| 05/15/2007 | 12 | MOTION for Leave to Appear Pro Hac Vice *for Attorney Russell D. Paul* by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Statement As To Why No Brief Is Necessary# 2 Certification of Lisa J. Rodriguez# 3 Certification of Russell D. Paul, Esquire, in Support of the Motion for Pro Hac Vice Admission# 4 Text of Proposed Order # 5 Certificate of Service)(RODRIGUEZ, LISA) (Entered: 05/15/2007) |
| 05/15/2007 | | Setting Deadlines as to 12 MOTION for Leave to Appear Pro Hac Vice *for Attorney Russell D. Paul*. Motion returnable date set for 6/15/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (sb) (Entered: 05/15/2007) |
| 05/15/2007 | 13 | BRIEF in Opposition re 10 MOTION for Order to Show Cause *Why a Protective Order to Supervise or Limit Communications With Absent Class Members Should Not Issue* filed by MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D) (HANSON, GERARD) (Entered: 05/15/2007) |
| 05/17/2007 | 14 | RESPONSE in Support re 10 MOTION for Order to Show Cause *Why a Protective Order to Supervise or Limit Communications With Absent Class Members Should Not Issue* filed by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Certificate of Service) (RODRIGUEZ, LISA) (Entered: 05/17/2007) |
| 05/18/2007 | 15 | Minute Entry for proceedings held before Judge Noel L. Hillman : Motion Hearing held on 5/18/2007 re 10 MOTION for Order to Show Cause *Why a Protective Order to Supervise or Limit Communications With Absent Class Members Should Not Issue* filed by MONA COHEN, JARED WORKMAN, MARK COHEN. Hearing on application by pltfs for pro hac vice admission. Ordered application granted appointing Russell D. Paul, Esq. pro hac vice. Order entered. Hearing on defendants' application for pro hac admissions. Ordered application granted. Order entered. Supplemental documents to be submitted. (Court Reporter Stephen J. Daner.) (sb) (Entered: 05/18/2007) |
| | | |

CM/ECF LIVE - U.S. District Court for the District of New Jersey - Docket Report    Page 6 of 8

| 05/18/2007 | 16 | ORDER granting 11 Motion for Leave to Appear Pro Hac Vice. Order directing attorney admitted pro hac vice to make payment of $150 made payable to Clerk, U.S. District Court. Signed by Judge Noel L. Hillman on 5/18/07. (sb) (Entered: 05/18/2007) |
| --- | --- | --- |
| 05/18/2007 | 17 | ORDER granting 11 MOTION for Leave to Appear Pro Hac Vice. Order directing attorney admitted pro hac vice to make payment of $150 made payable to Clerk, U.S. District Court. Signed by Judge Noel L. Hillman on 5/18/07. (sb) Additional attachment(s) added on 5/18/2007 (sb, ). (Entered: 05/18/2007) |
| 05/18/2007 | 18 | ORDER granting 12 Motion for Leave to Appear Pro Hac Vice. Ordered that the attorney admitted pro hac vice is to make payment of $150 made payable to Clerk, U.S. District Court. Signed by Judge Noel L. Hillman on 5/18/07. (sb) (Entered: 05/18/2007) |
| 05/18/2007 | | NOTICE OF CONTINUED HEARING: May 23, 2007 at 3:00PM Before The Honorable Noel L. Hillman in Courtroom 3A (sa, ) (Entered: 05/18/2007) |
| 05/21/2007 | 19 | TRANSCRIPT of Proceedings held on May 18, 2007 before Judge Noel L. Hillman. Court Reporter: Stephen J. Daner. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (sb) (Entered: 05/21/2007) |
| 05/21/2007 | 20 | Letter from Plaintiffs' Counsel to The Honorable Noel L. Hillman Submitting Plaintiffs' Proposed Curative Letter. (Attachments: # 1 Declaration of Mark J. Tamblyn Regarding Menu Foods Defendants' Contacts with Represented Parties and Absent Class Members# 2 Certificate of Service)(RODRIGUEZ, LISA) (Entered: 05/21/2007) |
| 05/21/2007 | | Pro Hac Vice fee recvd as to Russell D. Paul, Esq.: $ 150, receipt number 306245 (sb) (Entered: 05/21/2007) |
| 05/22/2007 | 21 | AFFIDAVIT of Lisa J. Rodriguez Attesting Compliance with Rule 1:28-2(a) for Attorney Russell D. Paul by JARED WORKMAN, MARK COHEN, MONA COHEN. (RODRIGUEZ, LISA) (Entered: 05/22/2007) |
| 05/22/2007 | 22 | Notice of Request by Pro Hac Vice Russell D. Paul to receive Notices of Electronic Filings. (RODRIGUEZ, LISA) (Entered: 05/22/2007) |
| 05/22/2007 | 23 | Letter from Michael A. Ferrara, Jr., Esquire regarding concerns with the current proposed "solicitation" letter submitted by a limited number of Plaintiff's counsel. (FERRARA, MICHAEL) (Entered: 05/22/2007) |
| 05/22/2007 | 24 | BRIEF Response to Plaintiffs' Proposed Letter to Claimants filed by MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC.. (HANSON, GERARD) (Entered: 05/22/2007) |
| 05/23/2007 | 25 | Letter from Jay Edelson, Esq. addressed to Judge Hillman. (sb) (Entered: 05/23/2007) |

CM/ECF LIVE - U.S. District Court for the District of New Jersey - Docket Report          Page 7 of 8

| | | |
|---|---|---|
| 05/23/2007 | 26 | Minute Entry for proceedings held before Judge Noel L. Hillman : Continued Hearing held on 5/23/2007 re 10 MOTION for Order to Show Cause *Why a Protective Order to Supervise or Limit Communications With Absent Class Members Should Not Issue* filed by MONA COHEN, JARED WORKMAN, MARK COHEN. Order to be entered. Ordered affidavits of attorneys employed by defendants to be submitted. Order to be entered enjoining defendants for a period of 10 days. Ordered defendants to submit further documentation regarding phone calls to plaintiffs. Ordered hearing continued to May 24, at 12:00pm.(Court Reporter Lisa Marcus.) (sb) (Entered: 05/24/2007) |
| 05/24/2007 | 27 | Minute Entry for proceedings held before Judge Noel L. Hillman : Continued Motion Hearing held on 5/24/2007 re 10 MOTION for Order to Show Cause *Why a Protective Order to Supervise or Limit Communications With Absent Class Members Should Not Issue* filed by MONA COHEN, JARED WORKMAN, MARK COHEN. Terms of agreement between parties placed on the record. Consent Orders to be submitted. (Court Reporter Theodore Formaroli.) (sb) (Entered: 05/24/2007) |
| 05/24/2007 | | Pro Hac Vice fee recv'd as to Edward Ruff, Esq.: $ 150, receipt number 306263 (sb) (Entered: 05/24/2007) |
| 05/24/2007 | | Pro Hac Vice fee recv'd as to Michael Turiello, Esq: $ 150, receipt number 306264 (sb) (Entered: 05/24/2007) |
| 05/31/2007 | 28 | Letter from Plaintiffs Counsel Enclosing Signed Consent Order and Declaration of Mark Tamblyn re Defendants' Contacts with Represented Parties and Class Members. (Attachments: # 1 Consent Order# 2 Declaration of Mark J. Tamblyn Regarding Menu Foods Defendants' Contacts with Represented Parties and Class Members)(RODRIGUEZ, LISA) (Entered: 05/31/2007) |
| 05/31/2007 | 29 | TRANSCRIPT of Proceedings held on May 23, 2007 before Judge Noel L. Hillman. Court Reporter: Lisa Marcus. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (sb) (Entered: 06/04/2007) |
| 06/04/2007 | 31 | CONSENT ORDER re: 10 Motion for Order to Show Cause why a Protective Order Should Not be Issued. Signed by Judge Noel L. Hillman on 6/4/07. (sb) (Entered: 06/06/2007) |
| 06/05/2007 | 30 | Minute Entry for proceedings held before Judge Noel L. Hillman : Telephone Conference held on the record on 6/5/2007. (Court Reporter Stephen J. Daner.) (sb) (Entered: 06/05/2007) |
| 06/12/2007 | 32 | NOTICE of Appearance by STEVEN F. GOOBY on behalf of MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC. (GOOBY, STEVEN) (Entered: 06/12/2007) |
| 06/14/2007 | 33 | NOTICE of Appearance by CARLOS FRANCISCO ORTIZ on behalf of |

CM/ECF LIVE - U.S. District Court for the District of New Jersey - Docket Report          Page 8 of 8

|  |  | MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC. (ORTIZ, CARLOS) (Entered: 06/14/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/18/2007 14:35:09 | | | |
| **PACER Login:** | kw0083 | **Client Code:** | 2044 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-01338-NLH-AMD Start date: 1/1/1970 End date: 6/18/2007 |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

# EXHIBIT I

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1850 |

**PROOF OF SERVICE**

     I hereby certify that a true and correct copy of Plaintiff Movant Christina Troiano's Notice

of Significant Activity in Related Action Pending in District of New Jersey, has been served by U.S.

Mail on all parties listed on the attached Panel Attorney Service List, this 29th day of May, 2007.

<div style="margin-left:40%">

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

By: _____
    Stuart A. Davidson
    120 E. Palmetto Park Road, Suite 500
    Boca Raton, FL 33432-4809
    Telephone: 561/750-3000
    561/750-3364 (fax)

*Counsel for Plaintiff-Movant
Christina Troiano*

</div>

08/28/2007  13:48  FAX  2023022000          JFML                                    ☒003

# Judicial Panel on Multidistrict Litigation - Panel Attorney Service List

Docket: 1850 - In re Pet Food Products Liability Litigation
Status:  Pending on ✓ /
Transferee District:        Judge:

Printed on 05/29/2007

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Berman, Steve W.<br>Hagens Berman Sobol Shapiro, LLP<br>1301 Fifth Avenue<br>Suite 2900<br>Seattle, WA 98101 | => Phone: (206) 623-7292  Fax: (206) 623-0594<br>Heller, Stacey*; Johnson, Suzanne E.*; Klemann, Craig R.*; Kornelius, Audrey*; Mitchell, Cecily*;<br>Mitchell, Terrence*; Rapp, David*; Robinson, Toinette*; Smith, Barbara* |
| Blim, John<br>Blim & Edelson, LLC<br>53 West Jackson Blvd.<br>Suite 1642<br>Chicago, IL 60604 | => Phone: (312) 913-9400  Fax: (312) 913-9401<br>Majerczyk, Dawn* |
| Craft, Perry A.<br>Craft & Sheppard, PLC<br>The Shiloh Building<br>214 Centerview Drive<br>Suite 223<br>Brentwood, TN 37027 | => Phone: (615) 309-1707  Fax: (615) 309-1717<br>Holt, Lisajean*; Lefebvre, Donna*; Leonard, Kim*; Leroy, Debra* |
| Davidson, Stuart A.<br>Lerach Coughlin Stoia Geller Rudman & Robbins, LLP<br>120 East Palmetto Park Road<br>Suite 500<br>Boca Raton, FL 33432-4809 | => Phone: (561) 750-3000  Fax: (561) 750-3364<br>Troiano, Christina* |
| Eukanuba,<br>One Proctor & Gamble Plaza C-2<br>Cincinnati, OH 45202 | =><br>Eukanuba |
| Hatfield, Jason Matthew<br>Lundy & Davis, LLP<br>300 North College Avenue<br>Suite 309<br>Fayetteville, AR 72701 | => Phone: (479) 527-3921  Fax: (479) 587-9196  Email: jhatfield@lundydavis.com<br>Sims, Charles Ray*; Sims, Pamela* |
| Hutchinson, Jeremy Y.<br>Patton, Roberts, McWilliams & Capshaw, LLP<br>Stephens Building<br>111 Center Street<br>Suite 1315<br>Little Rock, AR 72201 | => Phone: (501) 372-3480  Fax: (501) 372-3488<br>Widen, Barbara*; Widen, Richard Scott* |
| Ireland, D. Jeffrey<br>Faruki, Ireland & Cox, P.L.L.<br>500 Courthouse Plaza, S.W.<br>10 North Ludlow Street<br>Dayton, OH 45402 | => Phone: (937) 227-3710  Fax: (937) 227-3749  Email: djireland@ficlaw.com<br>Iams Co.* |

Note: Please refer to the report title page for complete report scope and key.

00/20/2007 10:48 FAX 2023022888        JFBL                                    ☒004

*(Panel Attorney Service List for MDL 1,850 Continued)*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Karp, Adam P.<br>Animal Law Offices<br>114 West Magnolia Street<br>Suite 425<br>Bellingham, WA 98225 | ⇒ Phone: (360) 392-3936<br>James, Don; Suggett, Michele |
| Myers, Michael David<br>Myers & Co., P.L.L.C.<br>1809 Seventh Avenue<br>Suite 700<br>Seattle, WA 98101 | ⇒ Phone: (206) 398-1188  Fax: (206) 400-1112<br>Whaley, Tom |
| Newman, Bruce E.<br>Newman, Creed & Associates<br>99 North Street, Route 6<br>P.O. Box 575<br>Bristol, CT 66011 | ⇒ Phone: (860) 583-5200  Fax: (860) 582-0012<br>Osborne, Lauri A.; Sokolwski, Todd* |
| Rottinghaus, Daniel L.<br>Berding & Weil<br>3240 Stone Valley Road West<br>Alamo, CA 94507 | ⇒ Phone: (925) 838-2090  Fax: (925) 820-5592<br>Swarberg, Diane* |
| Ruff, III, Edward B.<br>Pretzel & Stouffer, Chtd.<br>One South Wacker Drive<br>Suite 2500<br>Chicago, IL 60606-4673 | ⇒ Phone: (312) 346-1973  Fax: (312) 346-8242<br>Menu Foods*; Menu Foods Gen Par Ltd.*; Menu Foods Holding, Inc.*; Menu Foods Income Fund*;<br>Menu Foods Ltd.*; Menu Foods Ltd. Partnership*; Menu Foods Midwest Corp.*; Menu Foods<br>Operating Partnership*; Menu Foods South Dakota Inc.*; Menu Foods, Inc.* |
| Savett, Sherrie R.<br>Berger & Montague, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103 | ⇒ Phone: (215) 875-3071  Fax: (215) 875-5715<br>Cohen, Mark*; Cohen, Mona*; Workman, Jared* |
| Wal-Mart Stores, Inc.,<br>C/O Registered Agent<br>Corporation Trust Co.<br>1209 Orange Street<br>Wilmington, DE 19801-1120 | ⇒<br>Wal-Mart Stores, Inc. |
| Wexler, Kenneth A.<br>Wexler Toriseva Wallace, LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 | ⇒ Phone: (312) 346-2222  Fax: (312) 346-0022<br>Sexton, Shirley* |

Note: Please refer to the report title page for complete report scope and key.