SOKOLWSKI v. MENU FOODS, INC. et al Doc. 7 Att. 4

# EXHIBIT J

Dockets.Justia.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

JARED WORKMAN, ET AL.,

PLAINTIFFS, CIVIL ACTION NUMBER:

-VS- 07-1338

MENU FOODS,

DEFENDANT.

---

MITCHELL H. COHEN UNITED STATES COURTHOUSE
ONE JOHN F. GERRY PLAZA
CAMDEN, NEW JERSEY 08101
MAY 23, 2007

B E F O R E: THE HONORABLE NOEL L. HILLMAN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

TRUJILLO RODRIGUEZ & RICHARDS, LLC
BY: LISA J. RODRIGUEZ, ESQUIRE

BERGER & MONTAGUE
BY: RULLELL D. PAUL, ESQUIRE

WEXLER TORISEVA WALLACE
BY: KENNETH A. WEXLER, ESQUIRE

THE FERRARA LAW FIRM
BY: MICHAEL A. FERRARA, JR., ESQUIRE

KAMBER & ASSOCIATES, LLC
BY: SCOTT A. KAMBER, ESQUIRE.
ATTORNEYS FOR THE PLAINTIFFS

HILL WALLACH
BY: GERALD H. HANSON, ESQUIRE

PRETZEL & STOUFFER
BY: EDWARD B. RUFF, ESQUIRE
ATTORNEYS FOR THE DEFENDANT

LISA MARCUS, CSR, CRR
OFFICIAL COURT REPORTER
NEW JERSEY CSR # 1492

---

DEPUTY CLERK: ALL RISE.

THE COURT: GOOD AFTERNOON, EVERYONE. PLEASE BE SEATED.

I'LL TAKE APPEARANCES IN A MINUTE. THERE'S NOT NEARLY AS MANY PEOPLE OUT THERE AS I WAS LED TO BELIEVE. I THOUGHT WE WOULD BE SWARMED. ARE THEY HIDING SOMEWHERE? ARE THEY OUT IN THE HALL? I WAS GOING TO JOKE WHO SAYS IT'S HARD TO GET PEOPLE TO CAMDEN.

I WANT TO MAKE IT CLEAR THAT I'M HERE, AT LEAST FOR THE NEXT 20 MINUTES OR SO, SITTING IN THE WORKMAN MATTER NOT ANY OTHER MATTER. BUT THAT HAVING BEEN SAID, I HAVE REASON TO BELIEVE THAT THERE MAY BE PEOPLE HERE WHO HAVE OTHER CASES PENDING BEFORE ME AND WHEN WE GET TO CERTAIN ISSUES, WE'LL OPEN UP THE FLOOR, PERHAPS, TO FIND OUT WHO ELSE IS HERE.

BUT RIGHT NOW WE'RE HERE ON WORKMAN VS. MENU FOODS, 07-1338, AND THIS A CONTINUATION OF AN ORDER TO SHOW CAUSE HEARING THAT WE HAD SOME PROCEEDINGS ON ON THE 18TH. AND I SET THIS MATTER DOWN AGAIN TODAY TO CONTINUE TO TRY TO WORK THROUGH THE ISSUES THAT HAVE BEEN BROUGHT TO MY ATTENTION BY THE PLAINTIFFS IN THE WORKMAN MATTER, AND WE'LL TRY TO WORK THROUGH WHAT WILL BE APPROPRIATE IN THIS CASE MINDFUL THAT IT IS ONE OF MANY NOT ONLY PENDING BEFORE ME, BUT PENDING IN OTHER DISTRICTS AND ALSO THE SUBJECT OF SEVERAL PENDING MOTIONS BEFORE THE MULTIDISTRICT LITIGATION PANEL.

SO LET ME START OUT BY GOING THROUGH WHERE I THINK WE

---

ARE AND SOME OF THE THINGS THAT I'M THINKING ABOUT AND CONTINUE TO BE CONCERNED ABOUT.

MR. PAUL, IF I COULD START WITH YOU.

MR. PAUL: YES, YOUR HONOR.

THE COURT: I'M NOT SURE HOW WE LEFT THIS LAST TIME AROUND, BUT YOUR INITIAL PAPERS ASK FOR THE DISCLOSURE OF INFORMATION THAT THE DEFENDANTS WERE SOLICITING FROM VARIOUS POTENTIAL CLAIMANTS. I DON'T RECALL NOW HOW DEEPLY WE GOT INTO THAT, BUT I NOTICE YOUR PAPERS RENEW THAT APPLICATION, I THINK ESPECIALLY IN LIGHT OF WHAT WE NOW KNOW THE DEFENDANTS ARE DOING IN TERMS OF THEIR I'LL CALL IT AN AGGRESSIVE CAMPAIGN TO CONTACT VARIOUS PERSONS. I'M GOING TO ADDRESS THAT ISSUE FIRST.

THEN I WANT TO TALK ABOUT THIS CONTACTS WITH REPRESENTED PERSONS ISSUE, WHICH CONCERNED ME A LOT LAST TIME AND REALLY CONCERNS ME NOW. AND I BELIEVE THAT MY LAW CLERK SENT OUT TO YOUR OFFICE, AS WELL AS TO MR. RUFF'S LOCAL COUNSEL, SOME AFFIDAVITS THAT I RECEIVED THIS AFTERNOON FROM A LAWYER, MR. EDELSON, AS I RECALL, FROM BLIM AND EDELSON IN CHICAGO. YOUR HOME TOWN, MR. RUFF.

MR. RUFF: THAT'S RIGHT, YOUR HONOR.

THE COURT: SO HAVE YOU SEEN THESE, MR. RUFF?

MR. RUFF: I JUST READ THEM 15 MINUTES AGO.

THE COURT: OKAY. WELL, MR. EDELSON DOES NOT REPRESENT THE PLAINTIFFS IN THIS CASE, HE REPRESENTS

PLAINTIFFS IN SOME CASES. THESE HAVE BEEN PREPARED UNDER THE CAPTION OF THIS CASE AND SUBMITTED HERE AND I'VE HAD THEM FILED ON THIS DOCKET AND WE'LL SORT THROUGH THAT SECOND.

AND THE LAST THING I WANT TO ADDRESS HERE TODAY IS THE FORM, THE PROCEDURE, AND THE CONTENT OF THIS CURATIVE COMMUNICATION. I'M STILL STRUGGLING WITH WHO SHOULD SEND IT AND WHAT IT SHOULD SAY. I COMMEND THE PLAINTIFFS FOR BRINGING THIS OVERALL ISSUE TO MY ATTENTION AND I'VE READ OVER THEIR PROPOSAL, WHICH HAS SOME GOOD POINTS. BUT I HAVE TO SAY THAT MR. EDELSON'S LETTER HAS GIVEN ME PAUSE, AND HE SEEMS TO HAVE MADE SOME SENSIBLE SUGGESTIONS AND RAISED SOME ISSUES HERE THAT I THINK WE ALL NEED TO ADDRESS AS WELL. SO WE'LL DEAL WITH THAT ISSUE LAST.

I KNOW, MR. PAUL, YOU WOULD WANT ME TO HAVE THE DEFENDANTS TURN OVER ALL OF THIS INFORMATION THAT THEY'VE GOTTEN FROM THESE VARIOUS FOLKS TO YOU AND THE FOLKS REPRESENTING THE PUTATIVE CLASS IN WORKMAN.

AND, BY THE WAY, DO YOU REPRESENT OTHER PLAINTIFFS IN THE 40 OR SO CASES THAT I HAVE? HOW MANY OF THOSE ARE YOURS, IF ANY, OR IS IT JUST THIS ONE?

MR. PAUL: I BELIEVE WE HAVE FIVE CASES ON FILE IN NEW JERSEY, YOUR HONOR, BESIDES THIS ONE.

THE COURT: OKAY. AND I BELIEVE ALL OF THE CASES IN NEW JERSEY HAVE NOW BEEN TRANSFERRED TO ME.

MR. PAUL: I BELIEVE SO.

THE COURT: MY CONCERN ABOUT TURNING OVER ALL OF THAT INFORMATION IS THAT SOME OF THAT INFORMATION, AND I DON'T LAY

03:14PM THIS AT YOUR FEET, BUT THEY SOUGHT A LOT OF DETAILED INFORMATION, SOCIAL SECURITY NUMBERS AND THOSE KIND OF THINGS. SOME OF THAT INFORMATION MAY BE TURNED OVER BY INDIVIDUALS THAT DON'T WANT THAT INFORMATION TO GO BEYOND MENU FOODS AND GAVE IT WITH EXPECTATION AND UNDERSTANDING THAT THAT'S WHERE IT WOULD STAY. AND PARTICULARLY WHERE THAT RELATIONSHIP EXISTS, THAT RELATIONSHIP I MEAN WHERE A PHONE CALL CAME IN TO 03:14PM MENU FOODS AND MENU FOODS, FOR WHATEVER THEIR MOTIVATION MAY HAVE BEEN, TOOK ADVANTAGE OF THAT CALL TO ENGAGE IN COMMUNICATIONS, GATHERED INFORMATION. IF THAT EXCHANGE OF INFORMATION IS IN NO WAY RELATED TO LITIGATION THAT'S ACTUALLY PENDING BEFORE ME NOW OR ADDRESSES AN ISSUE THAT'S NOT YET 03:14PM RIPE FOR ME OR MAY BE MOOT AS TO ME BECAUSE I DON'T HAVE THOSE CASES, THEN I'M RELUCTANT TO ORDER THEM TO TURN THAT INFORMATION OVER, IN FACT I JUST -- I CAN'T THINK OF A GOOD REASON TO DO IT AT THIS POINT, AND I WILL EXPLAIN IT A LITTLE MORE WHY I SAY IT AT THIS POINT.

03:15PM I THINK THAT HAVING BEEN SAID, THAT TO THE EXTENT THAT YOU BELIEVE THAT ANY OF YOUR CLIENTS IN CASES PENDING BEFORE ME HAVE GIVEN OVER ANY INFORMATION WITHOUT YOUR KNOWLEDGE AND APPROVAL TO MENU FOODS, I WOULD MOST CERTAINLY ORDER THAT TURNED OVER TO YOU FOR REASONS RELATED TO THIS QUESTION OF 03:16PM CONTACTS WITH REPRESENTED PERSONS THAT I'VE RAISED BEFORE.





AND I WOULD GRANT SIMILAR RELIEF TO ANY ATTORNEY WHO REPRESENTS A PLAINTIFF IN ONE OF THE 40 OR SOMETHING CASES BEFORE ME. IT SEEMS TO ME THAT IF MENU FOODS HAD A COMMUNICATION WITH SOMEONE WHO IS REPRESENTED AND TOOK 03:16PM INFORMATION FROM THEM, THAT THE LAWYERS WHO REPRESENT THOSE PEOPLE HAVE A RIGHT TO HAVE THAT.

SO ARE YOU AWARE OF ANY OF YOUR CLIENTS GIVING OVER INFORMATION TO MENU FOODS?

MR. PAUL: YOUR HONOR, I'M NOT AWARE AT THIS TIME. 03:16PM I'D HAVE TO LOOK INTO IT FURTHER.

THE COURT: OKAY. I'M PROBABLY GOING -- I'M GOING TO SHIFT THE BURDEN HERE A LITTLE BIT, BUT REMIND ME WHEN WE GET TO THE SECOND ISSUE BECAUSE I'M GOING TO ASK MR. RUFF TO SEE WHETHER OR NOT HE HAS ANY, HIS CLIENT HAS ANY INFORMATION FROM 03:16PM YOUR CLIENTS. AND TO THAT EXTENT THAT EXISTS, IT SHOULD BE TURNED OVER IMMEDIATELY.

I UNDERSTAND AND APPRECIATE THAT YOU MAY BE CONCERNED, AND THIS MAY BE SHARED BY OTHER LAWYERS WHO REPRESENT PLAINTIFFS IN THIS MATTER, THAT PART OF THIS COMMUNICATION, 03:17PM THIS AGGRESSIVE COMMUNICATION EFFORT ON BEHALF OF MENU FOODS IS DESIGNED TO GLEAN INFORMATION THAT COULD BE USED, AND I'LL USE THE WORD UNFAIRLY IN THE MULTIDISTRICT LITIGATIONS MOTIONS THAT ARE PENDING. I'M INCREASINGLY CONCERNED ABOUT THE STRATEGY THAT THE DEFENDANT HAS TAKEN IN THIS CASE, AND I'LL 03:17PM ADDRESS THOSE ISSUES LATER. SO I'M NOT RULING OUT OF HAND





THAT THAT'S PART OF WHAT'S GOING ON HERE.

BUT MY CONCERN IS THAT I, ALTHOUGH I HAVE 40 OF THESE CASES OR WHATEVER IT IS, I ONLY HAVE 40 OF THEM, I DON'T HAVE THEM ALL, AND THERE ARE PENDING, NUMEROUS MOTIONS PENDING

03:18PM BEFORE THAT PANEL, AND I WOULD NOT WANT TO PRESUME TO WADE INTO THE ISSUE OF WHETHER THEY ARE SEEKING INFORMATION IMPROPERLY IN ORDER TO GAIN AN UNFAIR ADVANTAGE IN THAT PROCEEDING. IT SEEMS TO ME THAT IF THAT'S YOUR CONCERN AND YOU HAVE A GOOD FAITH BASIS TO ASSERT THAT, THAT YOU SHOULD 03:18PM RAISE THAT CLAIM BEFORE THE MULTIDISTRICT PANEL.

I THINK ON THE ISSUE OF CLASS CERTIFICATION, BECAUSE I THINK YOU'RE ALSO CONCERNED THAT THAT INFORMATION IS BEING GATHERED IN A WAY THAT WILL BE USED EVENTUALLY IN AN ATTEMPT TO DEFEAT THOSE EFFORTS TO CERTIFY CLASSES AND THE VARIOUS 03:18PM CASES PENDING AROUND, AND I THINK, JUST AS A GENERAL MATTER, THAT THAT MAKES THAT INFORMATION DISCOVERABLE, PERHAPS, PERSONAL INFORMATION REDACTED OR WHATEVER AT SOME POINT, BUT I DON'T THINK THAT THAT ISSUE IS YET RIPE. AND UNTIL THE MULTIDISTRICT PANEL RULES AND WE FIND OUT IN WHAT COURTS WE'RE 03:19PM GOING TO BE -- COURTS OR COURT WE'LL BE LITIGATING IN, AND UNTIL SUCH TIME AS THAT ISSUE IS JOINED. I'M RELUCTANT TO DISCLOSE TO OR FORCE THE DEFENDANTS TO DISCLOSE TO ONE GROUP OF REMAINING LAWYERS WHO HAVE AN INTEREST IN THAT INFORMATION. I THINK THE DECISION AS TO WHETHER THAT INFORMATION IS 03:19PM DISCOVERABLE AND TO WHOM IT SHOULD BE TURNED OVER IS PROBABLY

---

BEST MADE BY THE JUDGE WHO ENDS UP WITH, IF THAT'S THE WAY WE GO, THE JUDGE WHO ENDS UP WITH ALL THESE CASES AT THE FEDERAL LEVEL. SO I'M GOING TO PUNT THAT LAST ONE. BUT IF I END UP BEING THAT JUDGE AND I HAVE FREE OR MORE ROOM TO ROAM, I WOULD 03:20PM WANT TO READDRESS THAT ISSUE. BUT I DON'T THINK IT'S RIGHT FOR ME NOW UNTIL SUCH TIME AS THE MULTIDISTRICT LITIGATION ISSUES SETTLES OUT.

SO I THINK YOU'RE ABSOLUTELY ENTITLED TO INFORMATION THAT CAME FROM YOUR CLIENTS. I WOULD SAY THE SAME TO ANY 03:20PM OTHER LAWYER THAT REPRESENTS ONE OF THE PARTIES IN THE CASES PENDING BEFORE ME. AND WHEN WE'RE DONE HERE, I'M GOING TO ASK MR. RUFF TO DIRECT HIS CLIENT TO SEARCH THEIR RECORDS TO SEE WHETHER THERE'S ANY INFORMATION OBTAINED FROM PLAINTIFFS IN ACTIONS PENDING BEFORE ME AND ORDER HIM TO TURN THAT OVER TO 03:21PM THE PLAINTIFF'S ATTORNEYS.

MR. PAUL: YOUR HONOR, YOU'RE TALKING ABOUT NAMED PLAINTIFFS ONLY AND NOT INCLUDING PARTIES THAT ARE REPRESENTED BY COUNSEL?

THE COURT: PARTIES REPRESENTED BY COUNSEL. IF THEY 03:21PM ARE REPRESENTED BY COUNSEL, THAT INFORMATION SHOULD BE TURNED OVER. BUT I DON'T WANT TO EXCEED MY -- I HAVE TO -- LET ME BACKTRACK A LITTLE BIT. I WANT TO MAKE SURE THIS IS SOMETHING -- I DON'T WANT TO PRESUME TO SPEAK FOR ANOTHER DISTRICT JUDGE WHO HAS A CASE PENDING BEFORE THEM THAT'S 03:21PM SUBJECT TO THE MULTIDISTRICT WHERE THIS ISSUE PRESUMABLY

---

EXISTS FOR THEM AS WELL. UNDERSTAND, I WANT TO BE RESPECTFUL OF THE MOTIONS PENDING BEFORE THE MULTIDISTRICT PANEL. I WANT TO BE RESPECTFUL OF THE OTHER JUDGES WHO HAVE THESE OTHER CASES PENDING BEFORE THEM. I DON'T WANT TO ORDER THEM TO TURN 03:22PM OVER STUFF TO A LAWYER WHO'S GOT A CASE SOMEWHERE ELSE THAT DOESN'T HAVE ANYTHING TO DO WITH ME AT THIS POINT. SO WHEN

YOU SAY REPRESENTED BY COUNSEL BUT NOT A PARTY BEFORE ME, YOU MEAN IN SOME OTHER DISTRICT?

MR. PAUL: NO, I'M REFERRING TO PARTIES THAT ARE NOT NAMED PLAINTIFFS IN THE ACTIONS BEFORE YOU BUT PARTIES THAT ARE REPRESENTED BY COUNSEL.

THE COURT: OKAY. SO THEY'RE PUTATIVE CLASS MEMBERS WHO HAVE A LAWYER.

MR. PAUL: RIGHT.

THE COURT: BUT THEY'RE NOT NAMED IN ANY CASE.

MR. PAUL: YES.

THE COURT: AND ARE THEY CO-COUNSEL WITH YOU IN ANY WAY? ARE THEY IN THE CASE?

MR. PAUL: THEY'RE NOT NAMED PLAINTIFFS, YOUR HONOR, IN THE CASES BEFORE YOU, BUT I'M TALKING ABOUT PET OWNERS WHO HAVE RETAINED OUR FIRM AS COUNSEL.

THE COURT: RIGHT.

MR. PAUL: THAT WE COULD HAVE PUT --

THE COURT: YES, IF THERE'S AN ATTORNEY/CLIENT RELATIONSHIP EVEN KNOW THEY'RE NOT A NAMED PLAINTIFF AND YOU

REPRESENT THEM AND THEY HAVE PROVIDED INFORMATION TO THEM, I WILL ORDER THAT DISCLOSED.

MR. PAUL: THANK YOU.

THE COURT: BUT THERE HAS TO BE AN ATTORNEY/CLIENT RELATIONSHIP.

MR. PAUL: I UNDERSTAND.

THE COURT: I KNOW YOU SEEK TO REPRESENT EVERYONE WHO'S BOUGHT MENU FOODS STUFF, AND MAYBE SOME DAY YOU WILL, BUT I CAN'T PRESUME THAT.

MR. PAUL: I UNDERSTAND.

THE COURT: BUT YOU'RE ENTITLED TO WHAT'S YOURS, IF YOU WILL. SO THAT'S MY THINKING ABOUT ALL OF THESE ISSUES THAT ARE RAISED BY THIS DISCLOSURE OF INFORMATION. I WANT TO GIVE YOU AN OPPORTUNITY TO CONVINCE ME I'M WRONG, BUT THAT'S WHAT I WANT TO DO.

MR. PAUL: YOUR HONOR, I DON'T FEEL THE NEED TO PUSH THAT ISSUE ANY FURTHER. I WOULD SAY, THOUGH, THAT ALTHOUGH WE ARE NOT GOING TO GET ALL THE INFORMATION THAT THEY HAVE RECEIVED THROUGH THEIR MISLEADING COMMUNICATIONS, THAT OUR CONCERN WAS THAT THEY WOULD USE THAT TO SOME LITIGATION ADVANTAGE IN THE CASE NOW. AND YOUR HONOR HAS SAID THAT THAT IS AN ISSUE TO BE DISCUSSED BEFORE THE MDL PANEL AND THAT'S WHERE WE WILL DO SO.

THE COURT: WELL, TO THE EXTENT THAT THEY'RE USING THAT INFORMATION TO YOUR DISADVANTAGE IN TERMS OF BOTH SIDES

HAVING EQUAL ACCESS TO RELEVANT INFORMATION THAT WILL GUIDE THE COURT IN RENDERING A FAIR DECISION, TO THE EXTENT THAT THEY'RE USING THAT TO ADDRESS THE ISSUE OF WHAT FORUM SHOULD HAVE ALL OF THESE CASES, I THINK YOUR REMEDY IS BEFORE THAT PANEL. I DON'T WANT TO PRESUME TO SPEAK FOR THAT PANEL ABOUT WHETHER OR NOT THAT INFORMATION IS SOMETHING THAT THEY WOULD WANT YOU TO HAVE, IT SEEMS TO ME THAT'S SOMETHING THEY SHOULD DECIDE.

ON THE ISSUE OF CLASS CERTIFICATION, I THINK THAT ISSUE COULD VERY WELL BE RELEVANT. AND I WOULD WANT BOTH SIDES TO HAVE FAIR ACCESS TO ALL OF THE FACTUAL INFORMATION THAT WOULD ALLOW THE PARTIES TO MAKE THEIR ARGUMENTS AND ALLOW ME TO RENDER A FAIR AND INFORMED DECISION. AND THAT'S WHY I SAID THAT PART IS NOT YET RIPE BECAUSE WE'RE JUST NOT THERE YET IN TERMS OF CLASS CERTIFICATION.

SO I'M NOT SAYING YOU'LL NEVER GET IT, I'M SAYING YOU WON'T GET IT FROM ME FOR MULTIDISTRICT LITIGATION PURPOSES BECAUSE THAT'S NOT MY PLACE. AND YOU WON'T GET IT FROM ME NOW ON THE ISSUE OF CLASS CERTIFICATION BECAUSE THAT ISSUE IS NOT RIPE FOR ME. WHEN THE DAY -- IF THE DAY COMES AFTER THE MUTTER DISTRICT LITIGATION IS OVER AND IF I AM THE JUDGE AND THERE'S AN ISSUE THAT RELATES TO THAT INFORMATION AND I THINK YOU SHOULD HAVE IT, YOU'LL GET IT. I WON'T HESITATE.

IN THE INTERIM, TO THE EXTENT THAT THEY ARE GATHERING INFORMATION FROM YOUR CLIENTS, YOU HAVE AN ABSOLUTE RIGHT TO

HAVE IT AS FAR AS I'M CONCERNED. AND THAT WOULD BE TRUE OF ANY OTHER LAWYER THAT APPEARS BEFORE ME, THEY NEED ONLY TO MAKE AN APPLICATION. THAT'S HOW I SEE THIS PLAYING OUT, AT LEAST IN THE INTERIM REGARDING THE DISCLOSURE OF THE INFORMATION THAT THEY'VE OBTAINED.

NOW, LET ME HEAR FROM THE DEFENDANTS AS TO WHETHER OR NOT THEY HAVE AN OBJECTION TO THAT PARSING OUT.

MR. RUFF: GOOD AFTERNOON, YOUR HONOR.

THE COURT: GOOD AFTERNOON.

MR. RUFF: IT'S A PLEASURE TO BE BEFORE YOU AGAIN.

THE COURT: WELCOME TO CAMDEN.

MR. RUFF: THANK YOU, SIR.

AGAIN, I GENERALLY DO NOT HAVE ANY DISAGREEMENT WITH WHAT THE COURT HAS DONE ON FRIDAY WHEN I WAS HERE OR TODAY. I JUST WANTED TO RAISE A COUPLE POINTS BEFORE YOU.

I THINK THE ONLY WAY THAT MENU COULD KNOW OF WHO WAS REPRESENTED WAS BY A NAMED PLAINTIFF IN A CASE OR IF A LETTER WAS SENT TO THEM THROUGH AN ATTORNEY. SO FROM THE STANDPOINT OF TRYING TO DECIPHER WHO WAS REPRESENTED, THAT'S THE ONLY WAY I THINK THEY COULD KNOW.

THE COURT: SURE. WELL, I BELIEVE THAT THEY'RE LATEST SUBMISSION LISTED ALL OF THE PLAINTIFFS, NAMED PLAINTIFFS AROUND THE COUNTRY. IS THAT CORRECT?

MR. PAUL: THE SUBMISSION WAS GOING TO LIST ALL OF THE ATTORNEYS WHO FILED CLASS ACTIONS AROUND THE COUNTRY.

THE COURT: I SEE.

MR. RUFF: I WASN'T AWARE THAT WAS THE CASE.

THE COURT: WELL, AT A MINIMUM, YOU CAN CERTAINLY PROVIDE MR. RUFF THE NAMES OF ALL YOUR CLIENTS WHETHER THEY'RE NAMED PLAINTIFFS OR NOT.

MR. PAUL: ABSOLUTELY.

THE COURT: AND AS SOON AS HE DOES THAT, I WANT YOU TO HAVE YOUR CLIENT SEARCH FOR THOSE NAMES AND THE MATERIALS THAT THEY HAVE RECEIVED AND I'M GOING TO ENTER AN ORDER COMPELLING YOU TO TURN THAT OVER TO MR. PAUL.

MR. RUFF: I AGREE.

THE COURT: OKAY.

MR. RUFF: AND, YOUR HONOR --

THE COURT: NOW --

03:28PM MR. RUFF: I'M SORRY.

THE COURT: WE'LL DEAL WITH THE SECOND ISSUE NEXT, AND THAT'S THE ISSUE OF CONTACTS WITH REPRESENTED PERSONS.

I'M SORRY, YOU WERE GOING TO SAY?

MR. RUFF: IF YOUR HONOR HAD A FURTHER THOUGHT, I

03:28PM WASN'T GOING TO INTERRUPT.

THE COURT: THAT'S OKAY.

MR. RUFF: OKAY. JUST IN THE TRANSCRIPT OF THE PROCEEDING, WHICH EVERYBODY HAD BEFORE TODAY, WE WERE UNDER -- MR. PAUL DID STATE THAT HE WAS GOING TO PROVIDE US WITH A LIST

03:28PM OF REPRESENTED PEOPLE, AND THAT'S ON PAGE 75 OF THE

TRANSCRIPT. WE HAVE NOT RECEIVED THAT LIST AS OF TODAY. AND FROM THE STANDPOINT OF JUST TO LET YOU KNOW, MR. TURIELLO, MY PARTNER WAS OBVIOUSLY WITH ME LAST TIME, AND AS SOON AS WE LANDED OR AS SOON AS HE WAS ABLE TO GET TO A COMPUTER, I HAVE

03:28PM A COPY OF THE E-MAIL. HE SENT AN E-MAIL. AND SINCE THERE MAY BE ATTORNEY/CLIENT PRIVILEGE, I JUST WANTED TO SHOW THE COURT IN GOOD FAITH WE SENT AN E-MAIL AS SOON AS WE GOT TO A COMPUTER WHEN WE GOT BACK TO CHICAGO, INDICATING PRECISELY WHAT THE COURT SAID, AT 9:48 P.M. AND REITERATED THAT ON

03:29PM MAY 18TH.

THE COURT: YOUR E-MAIL APPARENTLY DIDN'T WORK. WE'LL GET TO THAT ISSUE.

MR. RUFF: I KNOW WHY THAT DIDN'T.

THE COURT: OKAY.

03:29PM MR. RUFF: I SHOULDN'T SAY I KNOW, BUT I HAVE A SUPPOSITION AS TO WHY IT DIDN'T. AND THEN WHEN WE FOUND OUT, BASED UPON SUBMISSIONS WE SENT ON MAY 21, 2007 AT 4:38. AND SO I WANT THE COURT TO KNOW WE DID EXACTLY WHAT YOU SAID AND I WANTED TO SHOW IT TO THE COURT.

03:29PM THE COURT: I DON'T NEED TO SEE IT NOW, BUT YOU CAN MAKE IT PART OF THE RECORD HERE NOW OR IN THE FUTURE.

MR. RUFF: I JUST WANTED TO LET YOU KNOW WE DID DO THAT.

THE COURT: OKAY.

03:29PM MR. RUFF: AND AS FAR AS THE FIVE INDIVIDUALS WHO

WERE LISTED IN THE LETTER FROM COUNSEL THAT WAS TODAY --

THE COURT: BEFORE WE GET TO THAT ISSUE, LET ME ASK MR. PAUL, YOU WERE GIVEN THE NAMES OF YOUR CLIENTS, BUT DO YOU HAVE ACCESS TO A LIST OF ALL OF THE NAMED PLAINTIFFS?

03:30PM MR. PAUL: ALL OF THE NAMED PLAINTIFFS -- CERTAINLY WE CAN AND WILL COMPILE THAT LIST OF ALL NAMED PLAINTIFFS IN CLASS ACTIONS REGARDING MENU FOODS THAT HAVE BEEN FILED AROUND THE COUNTRY.

THE COURT: OKAY. IT'S SOMETHING YOU'D HAVE TO

03:30PM COMPILE. YOU'D HAVE TO CALL UP EACH OF THE --

MR. PAUL: NO, WE CONSTANTLY KEEP UPDATING THE LIST OF ALL CLASS ACTIONS THAT HAVE BEEN FILED AND KNOW THE NAMES

OF EACH PLAINTIFF IN EACH CASE.

THE COURT: THAT'S PUBLIC RECORD AND INFORMATION.

MR. PAUL: YES.

THE COURT: I WON'T GET AN ANGRY LETTER FROM SOME OTHER PLAINTIFFS' LAWYERS SUGGESTING I'VE OVERSTEPPED MY BOUNDS IF YOU COMPILE IT AND TURN IT OVER.

MR. PAUL: I DON'T BELIEVE SO, YOUR HONOR.

THE COURT: OKAY. I'D LIKE YOU TO DO THAT, I THINK IT WOULD HELP. MAYBE I DIDN'T HOLD HIS FEET CLOSE ENOUGH TO THE FIRE LAST TIME, BUT I WANT HIM TO FEEL A LITTLE BIT OF THE WARMTH FROM THE FIRE TODAY ABOUT THAT ISSUE. WE'LL HAVE TO SEE HAPPENS. I'M NOT GOING TO PRE-JUDGE IT, BUT THE AFFIDAVITS SPEAK FOR THEMSELVES. THE MORE INFORMATION THAT

ANY PLAINTIFF'S LAWYER HAS TURNED OVER TO MENU FOODS' LAWYERS ABOUT WHO THEIR CLIENTS ARE, THE LESS LIKELY WE'RE GOING TO HAVE THIS, WHAT I DEEM TO BE IMPROPER CONTACTS.

MR. PAUL: YOUR HONOR --

THE COURT: SO I APPRECIATE YOUR EFFORTS TO DO THAT.

MR. PAUL: YOUR HONOR, IN ADDITION TO COMPILING THE LIST OF NAMED PLAINTIFFS, MAY WE PUT TOGETHER A LIST OF ALL PET OWNERS WHO ARE REPRESENTED BY COUNSEL THAT WE CAN FIND AND TURN THAT LIST OVER TO MR. RUFF?

THE COURT: WELL, AS LONG AS YOU GET THAT FROM A LAWYER.

MR. PAUL: YES.

THE COURT: WHO SAYS THESE ARE MY CLIENTS, YEAH, PUT THEM IN THERE, TOO, THEY DON'T LIKE THESE HARASSING PHONE CALLS EITHER, THAT'S FINE.

MR. PAUL: WE'LL DO THAT.

THE COURT: BUT I DON'T WANT YOU TO DISCLOSE THE NAME OF A CLIENT TO MR. RUFF WHO IS NOT NAMED IN A CASE WITHOUT THE PERMISSION OF THAT PERSON'S LAWYER.

MR. PAUL: YES, YOUR HONOR.

THE COURT: DO YOU UNDERSTAND WHAT I'M SAYING? IS THAT CLEAR?

MR. PAUL: YES, WE'LL SPEAK TO ALL THE ATTORNEYS AROUND THE COUNTRY WHO ARE INVOLVED IN THIS LITIGATION AND ASK THEM TO PULL TOGETHER A LIST OF THEIR CLIENTS.

THE COURT: AND IF THEY WANT TO REVEAL WHO THEIR CLIENTS ARE AND FURTHER WANT TO REVEAL IT TO YOU FOR PURPOSES OF COMMUNICATING IT TO MENU FOODS FOR THE PURPOSE OF GETTING FROM THEM THE INFORMATION THAT THEY MAY HAVE PREVIOUSLY SUPPLIED, THAT'S SOMETHING YOU CAN WORK OUT PERHAPS. BUT A MINIMUM IT CAN GO TO THIS ISSUE OF THESE FURTHER CONTACTS, WHICH I'M GOING TO ADDRESS.

MR. PAUL: YES, YOUR HONOR.

THE COURT: ALL RIGHT. LET'S TALK ABOUT THAT. WHY DON'T YOU TELL ME WHAT YOU THINK HAPPENED?

MR. RUFF: OKAY.

THE COURT: LET ME TELL YOU WHAT I -- WHEN YOU LEFT HERE THE OTHER DAY, IT SEEMS TO ME THAT WE HAD AN UNDERSTANDING, AND YOU'VE GOT THE TRANSCRIPT, I'VE GOT IT

SOMEWHERE HERE, TOO, THAT YOUR CLIENT WOULD DO WHAT WAS REASONABLE AND APPROPRIATE UNDER THE CIRCUMSTANCES TO PRECLUDE CONTACT WITH PEOPLE WHO ARE REPRESENTED. AND THE AFFIDAVIT SUGGESTS THAT EVEN AFTER PEOPLE SAID, HEY, I GOT A LAWYER, I DON'T WANT TO TALK TO YOU, THAT THEY WERE AGAIN REPEATEDLY CONTACTED. SO I DON'T KNOW HOW IT COULD BE, THERE'S A BREAKDOWN. AND I EVEN SAID TO YOU YOU NEED TO HAVE BETTER COMMUNICATION BETWEEN LAWYERS AND CLIENT HERE.

ON APRIL 24TH I SPOKE TO MENU FOODS ABOUT MY SITUATION. I INFORMED THEM I DID NOT WANT TO SPEAK FURTHER UNTIL I SPOKE WITH MY COUNSEL. THEY VERBALLY CONFIRMED THAT I WAS

REPRESENTED. THEY CALLED BACK. I TOLD THEM I DIDN'T WANT TO TALK TO THEM. SO YOU DON'T WANT A SETTLEMENT PACKAGE? AFTER THEY'VE BEEN TWICE TOLD NOT TO CONTACT THEM. THE DAY YOU WERE HERE, THE DAY YOU WERE HERE THEY GOT AN AUTOMATED PHONE CALL. THAT WAS THE AFFIDAVIT OF CLAIRE MOONJIAN.

DECLARATION OF A.J. COOK. AFTER I RETAINED COUNSEL, THEY CALLED ME. I INFORMED THEM I HAD A LAWYER AND INSTRUCTED ME NOT TO DISCUSS MY CASE WITH THEM. DESPITE THIS, IN THE LAST WEEK I RECEIVED THREE AUTOMATED PHONE CALLS.

SAME WITH MS. NEWMAN. ONCE I RETAINED COUNSEL, I TOLD THEM I'M NOT INTERESTED IN SPEAKING TO YOU. I RECEIVED FIVE PHONE CALLS, SOME OF THEM AUTOMATED.

AND MR. JANKE SAYS, JUST THIS MONDAY, NOW HIS IS NOT CLEAR AS TO WHETHER HE PROVIDED NOTICE TO MENU FOODS, BUT HE'S GOTTEN NUMEROUS PHONE CALLS.

SO WHY IS IT NOT FAIR TO SAY THAT MENU FOODS IS -- AND WE'LL MAKE INQUIRY, SINCE THE RULE BINDS LAWYERS, THE INVOLVEMENT OF LAWYERS IN THIS. BUT WHY IS THIS NOT THE KIND OF ABUSIVE CONDUCT THAT IS DESCRIBED EXTENSIVELY IN THE CASE LAW, DESIGNED TO HARASS PUTATIVE CLASS MEMBERS WHO ARE NOT YET FULLY INFORMED ABOUT WHAT THEIR RIGHTS ARE UNDER THE LAW AFTER WE HAD A DISCUSSION ON FRIDAY ABOUT MAKING SURE THIS DIDN'T HAPPEN?

MR. RUFF: CAN I RESPOND?

THE COURT: PLEASE.

MR. RUFF: NONE OF THESE THAT WERE JUST READ WERE AFTER THAT, EXCEPT THE JANKE AND I THINK MS. SEXTON. SO THE FIRST FOUR YOU READ APPEAR TO HAVE OCCURRED BEFORE THEN.

THE COURT: WELL, HERE'S MY PROBLEM WITH THAT. WHEN YOU -- TO YOUR CREDIT, DISCLOSED TO ME THAT THE LETTER HAD GONE OUT AND THE PHONE CALLS WERE STARTING. BUT IT'S ALSO FAIR TO SAY -- YOU KNOW, I WENT BACK AND I READ THE AFFIDAVIT FROM THE HARNETT, IS IT, PERHAPS FROM THE COMPANY, YOUR OPPOSITION PAPERS WERE CLEAR THAT YOU HAD NOT SOLICITED ANYBODY, YOU WERE NOT CONTACTING THEM PROACTIVELY. IT'S CLEAR TO ME AT THE TIME THAT AFFIDAVIT WAS PREPARED AND SUBMITTED TO THIS COURT, THAT MENU FOODS WAS CALCULATING AN AGGRESSIVE MARKETING CAMPAIGN AND CERTAINLY LED THIS COURT AND ME AND THE PLAINTIFFS INTO BELIEVING ON THE 18TH THAT THEY WERE GOING TO AWAIT THAT MOTION, THE RESOLUTION OF THAT MOTION. AND THEY FILED AN AFFIDAVIT IN THIS COURT THAT MENTIONED NOT A WIT

ABOUT WHAT THEY PLANNING TO DO AND VEHEMENTLY DENYING THAT THEY HAD DONE IT. SO WHY AM I NOT MISLED BY THAT? NOW, YOU TOLD ME AT THAT HEARING, AND I'M ONE WHO LIKES TO GIVE PEOPLE THE BENEFIT OF THE DOUBT, BUT IN LIGHT OF THESE AFFIDAVITS AND THE HARASSING NATURE OF THESE PHONE CALLS TO REPRESENTED PERSONS, IT SEEMS TO ME THAT MENU FOOD IS OUT TO DO WHATEVER MENU FOODS WANTS TO DO IN A WAY THAT COULD ADVERSELY IMPACT THE RIGHTS OF THESE PUTATIVE CLASS MEMBERS.

SO WHAT I WANT TO KNOW IS WHAT THE CONTENT OF THOSE

TELEPHONE CALLS IS, WHY IS THERE NO MECHANISM TO STOP THE CALLS WHEN PEOPLE SAY I DON'T WANT TO BE SPOKEN TO, I WANT TO KNOW WHAT PROCEDURE IS IN PLACE TO DETERMINE -- WHAT LAWYERS ARE INVOLVED IN THIS ADVISING THEM AS TO THIS, WHERE THOSE LAWYERS ARE ADMITTED, AND WHAT PROCEDURES HAVE BEEN PUT IN PLACE TO ENSURE THAT PEOPLE WHO ARE REPRESENTED BY COUNSEL ARE NOT CONTACTED. SO WHAT OF THOSE THINGS CAN YOU TELL ME?

MR. RUFF: CAN I START BACK AT THE BEGINNING, SIR?

THE COURT: SURE.

MR. RUFF: BECAUSE YOU ASKED ME A LOT OF QUESTIONS SO I WAS JUST TRYING TO ADDRESS ALL OF YOUR HONOR'S QUESTIONS.

NONE OF THE PEOPLE THAT WERE CONTACTED ARE NAMED PLAINTIFFS IN ANY PARTICULAR CASE, AND I WILL TAKE THE AFFIDAVITS ON FACE VALUE. BUT NONE OF THE PEOPLE THAT WOULD HAVE BEEN CONTACTED WOULD HAVE BEEN CONTACTED UNLESS AN INITIAL CONTACT WAS MADE, THE WAY I UNDERSTAND IT, FROM THESE INDIVIDUALS MAKING A CALL TO MENU FOODS AND, AS I EXPLAINED ON FRIDAY, THOSE CALLS WOULD BE THEN TURNED OVER TO CRAWFORD. SO THAT'S HOW I UNDERSTAND THE PROCESS WAS, THAT THOSE CALLS WERE PLACED --

THE COURT: GO AHEAD.

MR. RUFF: THOSE INITIAL CALLS WERE PLACED BY THESE INDIVIDUALS, THEN THE RETURN --

THE COURT: I DIDN'T SAY A WORD. KEEP TALKING. YOU KNOW WHAT THE RULES -- YOU KNOW WHAT THE ETHICAL RULE SAYS.

MR. RUFF: THE RETURN CALL WAS MADE.

THE COURT: THE RULE SAYS IT DOESN'T MATTER WHO INITIATES THE CALL.

MR. RUFF: I DON'T KNOW ABOUT THESE -- WHEN I SEE THESE AFFIDAVITS, THAT'S THE FIRST TIME I'M AWARE THAT SOMEBODY --

THE COURT: WHAT YOU KNOW AND WHAT I KNOW IS THAT AS EARLY AS MAY 7TH, THE PEOPLE SITTING AT THE TABLE TO YOUR LEFT FILED A MOTION AND VERY CLEARLY SAID WE BELIEVE THAT PEOPLE WHO ARE REPRESENTED BY COUNSEL ARE BEING CONTACTED. SO YOUR CLIENT KNEW AS OF MAY 7TH THIS IS A PROBLEM. AND IT'S A PROBLEM UP UNTIL MAY 21ST, SO SOMETHING'S GOING WRONG. NO ONE'S REALLY MAKING AN EFFORT AND IT'S DISTURBING. SO MY QUESTION TO YOU IS WHAT EFFORT IS BEING MADE -- WELL, MY FIRST QUESTION IS I WOULD LIKE TO KNOW, AND I WOULD LIKE AFFIDAVITS FROM THE LAWYERS WHO APPEARED IN THIS CASE, I WANT TO KNOW WHAT LAWYERS HAVE BEEN INVOLVED IN ADVISING MENU FOODS ABOUT CONTACTS WITH THE PUTATIVE CLASS AND I WANT TO KNOW WHERE EACH

03:41PM OF THOSE LAWYERS IS ADMITTED TO PRACTICE LAW.

MR. RUFF: OKAY, YOUR HONOR.

THE COURT: I'M GOING TO MAKE INQUIRY INTO WHEN THIS STARTED AND WHO WAS ADVISING WHOM. BECAUSE THE PLAINTIFFS MADE CLEAR AS OF MAY 7TH THEIR CONCERNS ABOUT THIS. I'VE NOW GOT -- THERE'S A MENTION IN -- I'VE NOW GOT ALL OF THESE AFFIDAVITS. I BELIEVE THAT THERE'S A MENTION IN THE

03:42PM

PLAINTIFFS MOST RECENT SUBMISSION IN WHICH THERE'S A THIRD LAWYER WHO WAS COMPLAINING ABOUT THIS.

DO I REMEMBER THAT CORRECTLY, MR. PAUL?

MR. PAUL: YES, YOUR HONOR. THERE'S AN AFFIDAVIT OF A MR. TAMBLYN, AN ATTORNEY IN THIS CASE.

03:42PM

THE COURT: AND DOES HE REPRESENT -- DOES HE NOT REPRESENT A NAMED PARTY?

MR. PAUL: YES, I BELIEVE MS. SEXTON, SHIRLEY SEXTON.

THE COURT: IS THAT ONE OF THE AFFIDAVITS I JUST REFERRED TO?

03:42PM

MR. PAUL: IT'S IN THE DECLARATION OF MARK TAMBLYN FILED WITH THAT LETTER.

THE COURT: IN THAT CASE, MR. RUFF WOULD STAND CORRECTLY, WOULD HE NOT, ABOUT CONTACTS WITH SOMEONE WHO IS A NAMED PARTY?

03:43PM

MR. PAUL: I BELIEVE SO, YOUR HONOR.

MR. RUFF: I WAS TRYING TO GET TO ALL OF THAT.

THE COURT: OKAY. SO THAT'S ANOTHER STRIKE, RIGHT? THIS IS A NAMED PARTY THAT MENU FOODS DOESN'T KNOW WHO'S SUING THEM?

03:43PM

MR. RUFF: YOUR HONOR, I CAN SHOW YOU THE E-MAIL THAT WAS SENT AT 9:48.

THE COURT: I HAVE NO DOUBT YOU SENT IT, SIR.

MR. RUFF: AND --

03:43PM THE COURT: I HAVE NO DOUBT THAT WAS AN ATTEMPT. THE

ATTEMPT IS FAILING.

MR. RUFF: THE ONLY THING I CAN EXPLAIN IS THAT WHEN I ASKED ABOUT THIS, THE ONLY THING THAT I CAN SAY IS THAT I WAS ADVISED -- AND I DID ADVISE THE COURT THERE WAS A HOLIDAY

03:43PM IN CANADA ON THIS PAST MONDAY. THE PERSON WHO SUBMITTED AND IS RESPONSIBLE FOR THIS FROM CRAWFORD IS APPARENTLY A CANADIAN CRAWFORD REPRESENTATIVE. WE DID SEND E-MAILS TO MR. HACKETT ON FRIDAY. I DON'T KNOW IF HE COMPLETELY SHUT DOWN THE BLASTER MESSAGE THAT I HAD INFORMED THE COURT OF ON FRIDAY BY MONDAY.

03:44PM AND, OBVIOUSLY, ACCORDING TO MS. SEXTON AND TO MR. JANKE, THERE WAS A BLASTER MESSAGE THAT WAS RECEIVED BY BOTH OF THOSE, ONE ON MAY 19TH AND, ACCORDING TO MR. JANKE, ONE ON MAY 18TH, WHICH COULD HAVE BEEN DONE BEFORE I LEFT THIS COURTROOM. IN FACT, ALL OF THE CONTACTS HERE COULD HAVE BEEN

03:44PM DONE BEFORE I LEFT THE COURTROOM AS TO OTHER AFFIDAVITS. AND THEN THE TWO CONTACTS ON MAY 21ST WAS THE MONDAY THAT THE COURT HOLIDAY -- I MEAN, THE HOLIDAY IN CANADA. I DON'T KNOW THEIR SYSTEM. I DON'T KNOW HOW IT'S SET UP TO DO THAT. ALL I CAN TELL YOU IS THAT I TOOK TO HEART WHAT THE COURT HAD SAID,

03:45PM IMMEDIATELY SENT THAT OUT. I CALLED THE CHUBB REPRESENTATIVE.

WHO IS THE INSURANCE REPRESENTATIVE WHO'S WORKING WITH MENU REGARDING THE WHOLE CRAWFORD SETUP, AND I TOLD THEM THAT PURSUANT TO THE COURT'S CONTACT, NO SETTLEMENT AND NO CONTACT WITH ANY PUTATIVE CLASS MEMBER, GO THROUGH THE REPRESENTATIVE NAMES AND ANYONE THAT YOU HAVE AS FAR AS A LETTER FROM AN

ATTORNEY THAT SAYS, YOU KNOW, I WANT TO SETTLE THIS CLAIM. SO THOSE ARE, YOU KNOW, WHAT WE KNEW AND THAT'S WHAT I SAID TO THE INDIVIDUALS AS SOON AS I GOT OUT OF HERE.

THE COURT: ALL RIGHT. WHAT IS YOUR CLIENT'S INTENTIONS REGARDING THIS TELEPHONE CAMPAIGN? IS IT CONTINUING TODAY? ARE PEOPLE BEING --

MR. RUFF: AS FAR AS I KNOW, IT'S SHUT DOWN. I HAVEN'T TALKED TO BRETT HACKETT --

THE COURT: HACKETT WAS THE NAME I WAS LOOKING FOR.

MR. RUFF: -- BUT AS FAR AS I KNOW, IT WAS SHUT DOWN. I DON'T WANT TO SAY THAT, YOU KNOW, AND THEN RUN THE WRATH OF THE COURT. AS FAR AS I KNEW, THEY WEREN'T GOING TO DO ANY KIND OF SETTLEMENTS PURSUANT TO THE COURT'S DIRECTION. AND AS FAR AS, YOU KNOW, ANYBODY WHO WAS PURPORTED TO BE REPRESENTED OR A NAMED PARTY, THEY WERE NOT TO RECEIVE ANY FURTHER CONTACT. I DON'T KNOW IF, AS TO NOT THOSE PEOPLE, IF THAT -- IF THE BLASTER MESSAGES ARE STILL GOING ON.

THE COURT: ALL RIGHT. WELL, WE'RE GOING TO FIX THAT. I FILED THOSE AFFIDAVITS IN THIS CASE. AS I SAID TO YOU, I'M CONCERNED ABOUT THIS CONDUCT AND WHAT APPEARS TO BE A PATTERN OF NOT ONLY MISCONDUCT BUT A PATTERN OF MISCONDUCT AND ABUSE OF THE PROCESS HERE. IT'S CLEAR TO ME THAT MENU FOODS HAS TAKEN ADVANTAGE OF THE STAY, THE INTERIM PERIOD OF TIME BETWEEN THE FILING OF THESE ACTIONS AND THE MOTIONS BEFORE THE MDL, TO ENGAGE IN A AGGRESSIVE CAMPAIGN TO SETTLE WITH AS MANY

PUTATIVE CLASS MEMBERS AS IT CAN. THAT STANDING ALONE IS NOT WRONG, BUT I BELIEVE THAT THERE IS SUFFICIENT RECORD EVIDENCE HERE THAT THEY ARE ABUSING THAT RIGHT. THEY FILED PAPERS WITH ME IN WHICH THEY ASSERTED THAT THEY HAD NOT ENGAGED IN ANY CONDUCT PROACTIVELY TO SOLICIT SETTLEMENTS. IT IS NOW CLEAR TO ME THAT THEY WERE PREPARING TO DO EXACTLY THAT. AND IT WAS ONLY ON THE DAY OF THE HEARING, WHEN THEY KNEW THAT I WAS CONSIDERING THE CONTENT OF THE POSSIBLE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS, WAS IT DISCLOSED TO ME THAT THEY WERE ENGAGING IN THIS AGGRESSIVE CAMPAIGN. I EXPRESSED CONCERNS ABOUT A TELEMARKETING CAMPAIGN.

I NOW HAVE AFFIDAVITS IN WHICH PEOPLE WHO ARE REPRESENTED BY COUNSEL ARE BEING CONTACTED REPEATEDLY AND FEEL HARASSED. IT'S ONE THING FOR TWO PEOPLE TO SIT DOWN AT THE TABLE AND VOLUNTARILY AGREE TO SETTLE THEIR CASE, IT'S ANOTHER THING TO HARASS PEOPLE ON WEEKENDS THROUGH AUTOMATED PHONE CALLS AFTER THEY RECEIVED A WRITTEN SUBMISSION, WHICH I BELIEVE IS INCOMPLETE AND AFTER I EXPRESSED CONCERNS ABOUT IT BEING INCOMPLETE, AND SOLICITED FROM THE PLAINTIFFS SOME SUGGESTIONS AS TO HOW IT MIGHT BE FIXED. SO AT THE SAME TIME WE'RE IN THIS COURTROOM TRYING TO DECIDE WHAT THE FINAL COMMUNICATION OF THE SUM TOTAL OF COMMUNICATION SHOULD BE,

YOUR CLIENT IS BLASTING PHONE CALLS REPEATEDLY TO REPRESENTED PERSONS OVER THE WEEKEND, THAT'S PRECISELY THE KIND OF ABUSIVE CONDUCT THAT THEY TALKED ABOUT IN GULF OIL AND THESE CASES.

AND I'M GOING TO ENTER AN ORDER TODAY ENJOINING YOUR CLIENT FROM ENGAGING IN ANY TELEPHONE SOLICITATION TO PUTATIVE CLASS MEMBERS FOR A PERIOD OF 10 DAYS UNTIL I CAN GET TO THE BOTTOM OF WHAT THE CONTENT OF THOSE COMMUNICATIONS ARE AND FIND OUT WHO KNEW ABOUT THIS AND WHAT ADVICE WAS GIVEN AS TO REPRESENTED PERSONS, REPRESENTED PARTIES. AND I'LL SAY IT AGAIN, IT'S ABSOLUTELY CLEAR FROM THE CASE LAW THAT YOU HAVE A RIGHT, YOUR CLIENT HAS A RIGHT, WHEN I SAY YOU, I MEAN THE COLLECTIVE YOU AND YOUR CLIENT, TO SETTLE CASES. BUT YOU DON'T HAVE A RIGHT TO MISLEAD PEOPLE AND TO ABUSE THEM AND TO HARASS THEM INTO SETTLEMENTS WHEN THEY HAVE NOT YET BEEN FULLY INFORMED AS TO SAY WHAT THEIR RIGHTS MIGHT BE.

NOW, I WOULD LIKE YOU TO SUBMIT, AS SOON AS YOU CAN, AS I SAID, I WANT TO KNOW THE NAMES AND BAR ADMISSIONS OF ALL THE LAWYERS WHO ADVISED MENU FOODS ON ITS COMMUNICATIONS WITH THE PUTATIVE CLASS, I WANT TO KNOW THE CONTENT OF THE TELEPHONE MESSAGES, I WANT TO KNOW WHAT SCRIPTS ARE GIVEN TO THE PEOPLE WHO ARE CALLING PEOPLE LIVE ON THE PHONE AND WHAT THEY'RE BEING TOLD TO SAY AND IN PARTICULAR ANYTHING THAT THEY'RE BEING TOLD TO SAY IN RESPONSE TO ANY QUESTIONS BY THE PARTIES THEY'RE CONTACTING, IF THEY SAY THIS, YOU SAY THAT KIND OF THING, AND I WANT TO SET THIS DOWN FOR A HEARING IN 10 DAYS.

NOW, MR. RUFF, ARE THERE ANY OTHER ISSUES YOU WANT TO ADDRESS WITH ME?

MR. RUFF: NO, SIR.

THE COURT: I WANT TO RETURN TO THE FORM CONTENT OF THE CURATIVE LETTER, I KNOW YOU WILL HAVE SOME OPINIONS ON THAT. BUT BEFORE I LET YOU ADDRESS THAT, IF YOU DON'T -- PERHAPS THE DIVIDE AND CONQUER TECHNIQUE MIGHT WORK IF THE PLAINTIFFS CAN'T AGREE ON CONTENT, SO WE'LL SEE WHAT THEY HAVE TO SAY FIRST.

MR. PAUL, CAN WE DISCUSS WHAT YOU WANT TO SEND OUT?

MR. PAUL: ABSOLUTELY, YOUR HONOR.

THE COURT: LET ME START OUT BY SAYING THAT I HAVE SOME SYMPATHY FOR THE POSITION THAT THIS SHOULD BE MORE I'LL CALL IT NEUTRAL. MY THOUGHT IS THAT PERHAPS THE LETTER OUGHT TO COME FROM EITHER OR AT LEAST THE CONTENT OF IT OUGHT TO HAVE INPUT FROM THE BROADER RANGE OF LAWYERS REPRESENTING PLAINTIFFS. I'M CONCERNED ABOUT THE POINTS RAISED IN MR. EDELSON'S LETTER TO ME. AND ALL OF THAT HAS MADE ME THOUGHT THAT PERHAPS IT PERHAPS COULD COME FROM THE CLERK -- I COULD DIRECT THE CLERK OF THE COURT TO SEND IT SO THAT IT WOULD COME FROM HERE. AND MY THOUGHT WAS THAT WE WOULD -- IT SEEMS TO ME THAT THE LETTER THAT THE DEFENDANTS HAVE PROPOSED THAT WOULD BE PRESENTED AT A SETTLEMENT ADOPTS MANY OF THE THINGS THAT YOU PROPOSED OR MANY OF THEM AT LEAST, SO I THINK IT SHOULD CONTAIN THAT. BUT ALSO I THINK IT NEEDS TO EXPLAIN MORE IN TERMS OF PROCEDURAL HISTORY IN ORDER TO GIVE A PLAINTIFF ALL THE INFORMATION ABOUT THEIR OPTIONS. WE WILL TALK ABOUT THIS

03:55PM IN MORE DETAIL BUT I'M PARTICULARLY CONCERNED ABOUT THIS ISSUE

OF CLASS CERTIFICATION AND WHAT JUDGE WILL END UP WITH ALL THIS. WE DON'T KNOW WHETHER THERE'S GOING TO BE ONE CASE, AND THERE ARE STATE AND FEDERAL CASES, WE DON'T KNOW WHETHER THERE WILL BE A CLASS. SO WE HAVE TO, I THINK, PROVIDE MORE 03:55PM INFORMATION ABOUT THAT ISSUE THAN OR THE UNCERTAINTY ABOUT THAT ISSUE THAN YOUR LETTER AS CURRENTLY DRAFTED PROVIDES. SO WHY DON'T WE START WITH THAT.

MR. PAUL: MAY I ADDRESS YOUR FIRST POINT, YOUR HONOR?

03:56PM THE COURT: YEAH.

MR. PAUL: FROM WHOM THE LETTER WILL COME?

THE COURT: RIGHT.

MR. PAUL: YOUR HONOR, WE'RE CERTAINLY IN FAVOR OF IT COMING FROM THE CLERK OF THE COURT, ABSOLUTELY FINE WITH US. 03:56PM WE HAD NO INTENTION OF USING THIS LETTER FOR ANY OTHER MEANS THAN ITS CURATIVE EFFECT. AND WE ONLY PUT OUR FIRM'S NAME ON IT BECAUSE IT HAD TO COME FROM SOMEONE, IT COULDN'T JUST COME FROM THIN AIR. SO WE'RE ABSOLUTELY IN FAVOR OF IT COMING FROM THE CLERK OF THE COURT.

03:56PM THE COURT: PERHAPS SOME OF THEM ARE HERE. BUT DO YOU HAVE A VIEW AS TO HOW OTHER PLAINTIFF'S LAWYERS MAY FEEL ABOUT THAT?

MR. PAUL: ABOUT IT COMING FROM THE CLERK OF THE COURT?

03:56PM THE COURT: YES.

MR. PAUL: I THINK THEY WOULD BE IN FAVOR OF THAT, YOUR HONOR. I DON'T KNOW DEFINITIVELY. THAT SEEMS TO AMELIORATE THEIR OBJECTIONS THAT THEY'VE ALREADY IMPOSED TO THE COURT.

03:56PM THE COURT: OKAY.

MR. PAUL: YOU RAISED TWO OTHER ISSUES, YOUR HONOR.

THE COURT: I KNOW YOU'RE HERE. WE'LL GET TO YOU.

MR. KAMBER: OKAY.

THE COURT: WE WON'T DECIDE THIS ISSUE UNTIL YOU'VE HAD AN OPPORTUNITY TO SPEAK.

MR. KAMBER: IT SEEMED LIKE THE APPROPRIATE TIME TO INTRODUCE MYSELF.

THE COURT: IT WAS.

MR. KAMBER: I'LL WAIT. THANK YOU.

03:57PM THE COURT: I HAVEN'T FORGOTTEN.

MR. PAUL, GO AHEAD.

MR. PAUL: SHALL I GET TO THE CONTENT OF THE LETTER? YOU HAD TALKED ABOUT SOME CONCERNS YOU HAD HAD.

THE COURT: I WANTED TO -- YEAH, LET'S GET TO THE 03:57PM CONTENT OF IT. IN TERMS OF SUBSTANCE, YOU WOULD CONTEMPLATE THAT I WOULD DIRECT THE CLERK OF THE COURT TO PREPARE A LETTER AND IT WOULD BE SENT OUT -- IT WOULD BE GIVEN OVER TO -- I WOULD THEN ORDER THE DEFENDANTS TO GIVE IT TO CRAWFORD TO BE SENT OUT TO THE SAME PEOPLE WHO RECEIVED THE OTHER LETTER. 03:57PM AND IT WOULD BEGIN SOMETHING LIKE YOU HAVE PREVIOUSLY -- YOUR

LETTER, LET ME SEE. BY THIS TIME YOU'VE RECEIVED COMMUNICATIONS FROM MENU SO FORTH AND SO ON. AND IT WILL GO ON TO EXPLAIN WHAT I WOULD PROPOSE TO HAVING IT LAY OUT IN PERHAPS SOME MORE DETAIL THE PENDENCY OF STATE AND FEDERAL 03:58PM ACTIONS, THE MOTIONS PENDING BEFORE THE MULTIDISTRICT PANEL, THERE MAY OR MAY NOT BE A CONSOLIDATION IN ONE DISTRICT, THERE MAY ARE MAY NOT BE CLASS CERTIFICATIONS IN VARIOUS PROCEEDINGS. AND THEN -- I GUESS THAT'S REALLY THE FIRST ISSUE IN YOUR PROPOSED LETTER.

03:58PM MR. PAUL: YES, YOUR HONOR, WE CERTAINLY WOULD BE COMPLETELY AMENABLE TO THAT, TO SENDING IT OUT FROM THE CLERK OF THE COURT. AND IF YOU WANTED TO GO INTO FURTHER DETAIL, I THINK THAT'S FINE. WE DON'T WANT TO OVERWHELM THESE PEOPLE.

THE COURT: SEE, THAT'S ONE OF THE THINGS THAT 03:58PM CONCERNS ME AND I THINK THAT'S A GOOD POINT. IN THE KEYSTONE CASE, THEY WERE TALKING ABOUT SOPHISTICATED BUSINESS PEOPLE WHO WERE DISTRIBUTORS, I THINK, WHO WERE RECEIVING THE LETTER. HERE YOU'VE GOT INDIVIDUAL CONSUMERS WHO MAY OR MAY NOT BE KNOWLEDGEABLE ABOUT CLASS ACTIONS AND MAY OR MAY NOT BE 03:59PM KNOWLEDGEABLE ABOUT WHAT THEIR LEGAL RIGHTS ARE. I AM A LITTLE CONFUSED ABOUT DOING THIS IN TERMS OF IN A WAY THAT'S TOO COMPLICATED OR EVEN IN WAY THAT WILL HAVE THE OPPOSITE EFFECT, WHICH IS TO -- IF THEY WERE INCLINED AND IT WAS THE BEST THING FOR THEM TO DO TO WADE OUT THE PROCEDURAL MANEUVER 03:59PM TOWARDS A CLASS ACTION, I HATE TO SCARE THEM AWAY FROM IT IF

THAT WAS THE BEST THING FOR THEM IF ONE WERE TO BE ACTUALLY BE CREATED AT SOME POINT. AND I THINK ONE OF THE THINGS THAT GULF OIL TEACHES IS THAT WE'RE NOT SUPPOSED TO PUSH PEOPLE ONE WAY OR THE OTHER, WE'RE SUPPOSED TO LET THEM HAVE ALL THE 03:59PM INFORMATION AND LET THEM DECIDE FOR THEMSELVES.

AND I WONDER PERHAPS, YOU KNOW, SOMETIMES SOME OF THESE THINGS CAN BE WRITTEN IN A WAY THAT'S MORE UNDERSTANDABLE TO A LAYPERSON. AND I THINK PERHAPS IN SOME CLASS ACTION SETTLEMENTS I'VE SEEN THERE IS AN EFFORT TO EXPLAIN THINGS IN 04:00PM A PLAIN ENGLISH KIND HAVE WAY. AND I'M WONDERING WHETHER THERE SOME WAY TO SAY -- MAYBE YOU CAN HELP ME GO THROUGH IT NOW. WHAT ARE THE OPTIONS OF SOMEBODY WHO LIVES IN CAMDEN WHO BOUGHT EUKANUBA PET FOOD, NEVER GAVE ITS PET ANYTHING OTHER THAN EUKANUBA? YOUR CLIENT MAKES EUKANUBA, RIGHT?

04:00PM MR. RUFF: CAN I MAKE ONE SUGGESTION?

THE COURT: SURE.

MR. RUFF: YOUR HONOR, MAY I JUST ADDRESS THE COURT FOR ONE SECOND?

THE COURT: SURE. YOU CAN DO IT FROM THERE, I CAN 04:00PM HEAR YOU. YOU'RE NOT SHY.

MR. RUFF: NO, I'M NOT. I'M JUST TRYING TO -- YOUR HONOR, I THINK THE INTENTION, AT LEAST IT WAS DIRECTED TO ME, WAS PURE OF HEART FROM THE STANDPOINT OF TRYING TO GATHER INFORMATION, THAT'S THE WAY I UNDERSTOOD IT FROM THE START. I 04:01PM THINK YOUR HONOR KNOWS WHERE MY ADVICE WAS ON THIS FROM THE

START AS FAR AS THE WHOLE PROCESS REGARDING DATA COLLECTION OR TRYING TO SETTLE THE CASE OR UNTIL WE HAD AN MDL SO YOU CAN APPROVE OF THIS, UNTIL YOU COULD DO EVERYTHING. AND I -- TO SAY I FORESAW ALL THIS COMING IS AN UNDERSTATEMENT, AND I DON'T -- MAY I JUST STAND OVER THERE, SIR?

04:01PM

I RESPECT EVERYTHING THAT THE COURT HAS SAID IN THIS REGARD AND IT'S NOT SOMETHING THAT, WITHOUT DISCLOSING ATTORNEY/CLIENT COMMUNICATIONS, HAS NOT BEEN STATED BY MYSELF. SEEING WHERE THIS HAS GONE AND HOW IT'S MUSHROOMED, WOULD THERE BE -- AND YOUR HONOR HAD TALKED ABOUT POTENTIALLY THE LAST TIME SEEKING GROUNDS OF CONSENSUS, ET CETERA. I'M PREPARED, IF YOUR HONOR IS WILLING, TO STRONGLY SUGGEST TO MY CLIENT TO STOP THE WHOLE THING. IF I MAY SAY, THAT IT'S BEEN MY THOUGHT FROM THE START. AND ADVICE OF COUNSEL SOMETIMES, YOU KNOW, IF YOU CAN READ BETWEEN THE LINES WHERE I'M GOING ON THIS, IS NOT ALWAYS -- AND I THINK I'VE MENTIONED THIS TO SCOTT AND I'VE MENTIONED IT TO KEN WEXLER, IN FACT I RODE THE PLANE OUT WITH --

04:02PM

04:02PM

THE COURT: STOP THE EFFORT TO SETTLE THE CASES.

MR. RUFF: STOP IT. IF I CAN SAY, WE STOP -- BECAUSE I'M JUST SEEING THIS MUSHROOM IN THE HEARING ON THE 5TH INTO ATTORNEY/CLIENT ISSUES. IF I CAN SAY THERE WILL BE NO FURTHER COMMUNICATIONS, WHATEVER'S BEEN GLEANED WILL NOT BE USED FOR ANYTHING FURTHER.

04:03PM

THE COURT: HOLD ON THERE BECAUSE --

04:03PM

MR. RUFF: AND I CAN TELL YOU THAT WE ARE NOT GOING TO DO THIS AFTER TODAY, THAT CRAWFORD IS SHUT DOWN. FRANKLY, YOUR HONOR, I DON'T KNOW IF I'VE BEEN SOMEWHAT THE SACRIFICIAL LAMB SUCH THAT, YOU KNOW, THIS WAS WHERE THIS WAS LEADING OR WHATEVER, BUT ALL I'M SUGGESTING IS THAT IF THIS CAN BE -- IF WE CAN WALK OUT OF HERE TODAY AND I WILL TELL THE CLIENT THIS HAS TO BE DONE, IT'S MY STRONG RECOMMENDATION, AND I CAN REPORT TO YOU AND ALL THE FINE PLAINTIFF'S COUNSELS HERE TOMORROW THAT IT IS SHUT DOWN AND CRAWFORD IS NO LONGER OPERATING AND WE OBVIATE ALL OF THIS DISCUSSION, AS I INDICATED BEFORE IS A FINE AND INTELLECTUAL DISCUSSION, I WOULD BE PREPARED TO DO ALL OF THAT.

04:03PM

04:04PM

THE COURT: WELL, IT'S AN INSTRUCTIVE SUGGESTION. I MADE IT CLEAR LAST TIME, AND I'LL MAKE IT CLEAR NOW, I WILL DO NOTHING TO INTERFERE WITH YOUR CLIENT'S RIGHT TO SETTLE CASES. THE CASE LAW IS ABSOLUTELY CLEAR, YOU HAVE A RIGHT TO COMMUNICATE WITH PEOPLE WHO ARE WILLING TO DO IT. BUT I HAVE AN OBLIGATION TO PROTECT THE PUTATIVE CLASS AND TO PREVENT ABUSIVE CONDUCT, AND I HAVE A RIGHT TO MANAGE AND POLICE THE CONDUCT OF LAWYERS WHO APPEAR BEFORE ME. SO --

04:04PM

04:05PM

MR. RUFF: I DON'T WANT TO --

THE COURT: -- I NEED TO BALANCE THOSE TWO THINGS, BUT I CAN TELL YOU I THINK IT WOULD BE A MUCH BETTER WORLD IF WE ALL DID WHAT I THOUGHT WE WERE DOING WHEN I ENTERED THOSE STAYS, WHICH WAS TO STAND DOWN.

04:05PM

MR. RUFF: YOUR HONOR, I --

THE COURT: I CAN'T ORDER YOU TO DO IT, BUT IT MAY VERY WELL BE A WISE THING. YOU HAVE TO TELL ME WHETHER YOUR CLIENT WANTS TO DO THAT.

04:05PM MR. RUFF: I DON'T WANT TO START A --

THE COURT: JUST SO YOU KNOW, I'M STILL GOING TO MAKE INQUIRY. I STILL WANT TO KNOW WHETHER THERE WERE LAWYERS INVOLVED IN ADVISING MENU FOODS AS TO CONTACT THE REPRESENTED PERSONS. I CAN'T LET THAT ISSUE DROP.

04:05PM MR. RUFF: WELL, YOUR HONOR, THE THING THAT I'M GETTING INTO REGARDING THAT, IT'S GOING TO INVOLVE THE DISCUSSION OF WHAT WAS TOLD TO THE CLIENT.

THE COURT: RIGHT. WELL, HERE'S THE DEAL ON THAT.

MR. RUFF: AND I'M WILLING TO SAY THAT IF I CAN REACH 04:05PM AN ACCORD WITH YOU AND THE OTHER SIDE, IF WE CAN SHUT THAT DOWN, INCLUDING THE HEARING ON THE 5TH, I'M TRYING TO REACH --

THE COURT: HERE'S MY THOUGHT ON THAT. THE RULE IS DESIGNED TO PROTECT THE CLIENT ULTIMATELY FROM NOT HAVING THE FULL ADVICE OF THEIR LAWYER. IT'S DESIGNED TO PROTECT THE 04:06PM CLIENT. IF THOSE LAWYERS SAY WE DROP IT, JUDGE, THERE'S NO NEED FOR YOU TO MAKE FURTHER INQUIRY INTO THAT, I'VE SPOKEN TO MY CLIENT, THEY'RE GOING TO GIVE ME ALL THE INFORMATION. YOU'RE GOING TO HAVE TO TURN OVER ALL THE INFORMATION THAT YOU GOT FROM REPRESENTED PERSONS. IT SEEMS TO ME THAT THAT'S AN 04:06PM ABSOLUTE OBLIGATION. YOU CAN'T VIOLATE THE RULE AND GAIN THE

BENEFIT FROM IT.

MR. RUFF: I AGREE 100 PERCENT.

THE COURT: I'M NOT GOING TO PURSUE IT IF THE LAWYERS SAY MY CLIENT'S FINE, I'M FINE, WE WERE -- YOU'LL HAVE TO 04:07PM DISCUSS IT WITH THEM LATER.

MR. WEXLER: IS THE CLIENT FINE WITH THAT?

MR. RUFF: I CAN'T HEAR MR. WEXLER.

MR. WEXLER: IS THE CLIENT FINE WITH THAT?

MR. RUFF: WELL, I HAVE TO GO OUT IN THE HALL RIGHT 04:07PM NOW. I'M PREPARE TO -- I SEE WHERE THIS IS GOING. IF YOU'RE THE TRANSFEREE JUDGE AND I'M GOING TO BE BEFORE YOU, I DON'T WANT TO START OFF ON THE WRONG FOOT AND THAT'S BEEN PART OF MY COMMENTS AS WELL. YOUR HONOR, I'VE ALWAYS PRIDED MYSELF ON BEING STRAIGHT UP AND I'VE TALKED TO COUNSEL STRAIGHT UP ON 04:07PM ALL OF THESE THINGS, AND WHAT I'M SUGGESTING IS IF I CAN AVOID, INCLUDING THAT HEARING ON THE 5TH, AND I WILL TREM IT'S DONE TODAY BY OUR CONSENT AND THAT MEANS CRAWFORD IS SHUT DOWN TOMORROW, I'M GOING TO WALK OUT OF HERE RECOMMENDING THAT. IN FACT, I WAS EVEN GOING TO TRY TO GET TO MY BLACKBERRY AND JUST 04:08PM SAY ARRANGE A CONFERENCE CALL THIS MINUTE.

THE COURT: LET ME HEAR FROM THE PLAINTIFFS. IT SEEMS TO ME IT WOULD BE APPROPRIATE TO ADJOURN THIS MATTER UNTIL TOMORROW SO THOSE DISCUSSIONS COULD BE HAD. BUT I WANT TO ARE CLEAR THAT IF A LAWYER BELIEVES THERE'S BEEN SOME 04:08PM HANKY-PANKY WITH ONE OF THEIR CLIENTS AND INTERFERENCE IN

THEIR ATTORNEY/CLIENT RELATIONSHIP, I CAN'T ABANDON THAT. THOSE AFFIDAVITS HAVE BEEN FILED WITH ME AND THOSE COMPLAINTS HAVE BEEN MADE. I NEED THOSE LAWYERS TO RELEASE ME FROM MY OBLIGATION NOT TO PURSUE THAT. I'M HAPPY FOR THAT EVENT. AGAIN, IT'S THE CLIENT'S INTERESTS THAT NEED TO BE PROTECTED. IF THE LAWYER SAYS I'VE SPOKEN TO MR. RUFF AND ANYTHING THAT WAS GLEANED IS BEING TURNED OVER OR I UNDERSTAND HOW IT COULD HAVE BEEN DONE BY MISTAKE. I ACCEPT THE FACT THAT THEY'RE SHUTTING THIS THING DOWN, MY CLIENT IS VERY HAPPY NOT TO GET ANY MORE AUTOMATED TELEPHONE CALLS, THEN I DON'T FEEL I HAVE A NEED TO PURSUE IT ANY FURTHER. BUT NOW THAT IT'S BEEN RAISED TO ME, I CAN'T LET IT DROP, I DON'T THINK I CAN UNLESS THEY TELL ME TO. SO YOU NEED TO WORK THAT OUT.

THE SECOND THING IS TO THE EXTENT THAT THIS EFFORT DID GLEAN INFORMATION THAT COULD BE USED FOR LITIGATION PURPOSES LATER, IT MUST BE PRESERVED BY YOUR CLIENT AND TURNED OVER WHEN ORDERED TO DO SO BY THE APPROPRIATE JUDGE AT THE APPROPRIATE TIME. IF YOU HAVE INFORMATION FROM SOMEONE WHO IS REPRESENTED, THAT SHOULD GO NOW. IF IT'S SOMEONE WHO BECOMES REPRESENTED LATER OR IT BECOMES AN ISSUE IN THE MULTIDISTRICT LITIGATION OR BEFORE THE JUDGE WHO GETS THE CASES, THAT SHOULD BE TURNED OVER.

MR. RUFF: I WILL DO THAT, YOUR HONOR. AND I'M NOT TRYING TO TAKE ISSUE, BUT IN JUST LOOKING AT THE AFFIDAVITS, IT APPEARS THAT THERE WAS NO INFORMATION THAT WAS TURNED OVER.

IN ANY CASE THAT I GET FROM MR. PAUL OR MR. WEXLER OR MR. KAMBER THAT, YOU KNOW, WE GET A LIST OF WHO THOSE PEOPLE ARE, BELIEVE ME, IT'S GOING -- I WILL TELL THEM TO TURN IT OVER IMMEDIATELY.

THE COURT: ALL RIGHT. LET ME HEAR FROM MR. PAUL. AND THEN I'LL INVITE THEN ANYONE WHO IS ALSO HERE ON BEHALF OF PUTATIVE CLASS MEMBERS TO IDENTIFY THEMSELVES, TO INDICATE ON THE RECORD WHETHER THEY'RE COUNSEL IN ANY CASE PENDING BEFORE ME AND THEN TO MAKE ANY APPLICATION THEY WANT TO MAKE.

MR. PAUL, PLEASE GO FIRST.

MR. PAUL: YOUR HONOR, I JUST WANTED TO GET SOME FURTHER CLARIFICATION, I'M NOT EXACTLY SURE WHAT MR. RUFF IS PROPOSING. THERE WILL BE ABSOLUTELY NO COMMUNICATIONS GOING FORWARD, THERE WILL BE NO SETTLEMENTS. INDEED, HE HAS STATED ON THE RECORD THAT THERE HAVE BEEN NO SETTLEMENTS THUS FAR. BUT IS HE SAYING THAT MENU FOODS WILL NOT, UNTIL SOME POINT IN THE FUTURE OR NOT AT ALL, COMMUNICATE WITH PUTATIVE CLASS MEMBERS AND THEY WILL NOT SETTLE DIRECTLY WITH PET OWNERS WHOSE PETS HAVE BEEN HARMED?

THE COURT: WELL, I THINK HE'S MADE A -- I THINK SOME OF THIS IS OFF THE CUFF, BUT I THINK HE WANTS TO DISCUSS WHAT THE PARAMETERS OF THAT AGREEMENT WOULD BE. I DON'T KNOW THAT I NEED TO HEAR THE DETAILS OF IT.

MR. RUFF: I THINK I COULD SAY THAT MY INTENT, AND I MADE THIS COMMENT TO MR. WEXLER AND MR. PAUL WHEN WE WERE IN

OUR FIRST MEETING, MY INTENT WAS IF THERE WAS GOING TO BE COMMUNICATION, WAS THE COMMUNICATION WOULD BE THROUGH THE

APPROVAL OF THE COURT. I WOULD SEEK TO HAVE, ONCE WE GET A TRANSFEREE COURT, AND THAT IS STILL THE WISH OF MENU TO DO

04:11PM THAT, MY AGREEMENT WITH COUNSEL WOULD BE SUBJECT TO APPROVAL BY THE CLIENT, BUT IT WOULD BE MY STRONG RECOMMENDATION TO DO SO, TO INFORM COUNSEL HERE'S WHAT IS GOING TO BE -- HERE'S WHAT WE'RE GOING TO DO SO THAT THERE WON'T BE ANY COMMUNICATIONS UNTIL THEY WERE KNOWN AND A TIME PERIOD WITHIN

04:12PM WHICH THE MOTIONS HAD TO BE MADE, MOTIONS WOULD BE ADDRESSED.

THE COURT: HE'S RESERVING THE RIGHT FOR HIS CLIENT TO CRANK CRAWFORD UP AFTER THEY GET RID OF THAT CRANKY JUDGE IN CAMDEN.

MR. RUFF: NO. NO. NO. THAT'S NOT IT. I'M SAYING

04:12PM THAT IF IT WAS YOU THAT WAS THE TRANSFEREE JUDGE, THAT WE BRING THE MOTION SAYING, YOU KNOW, HERE'S WHAT WE PLANNED ON COMMUNICATION, WHATEVER.

THE COURT: THAT'S FINE. BUT ISN'T IT BETTER TO RESOLVE ONCE AND FOR ALL THE ISSUE OF --

04:12PM MR. RUFF: I DON'T KNOW IF AT SOME POINT IN THE FUTURE THEY WANT TO SETTLE. BUT IF THIS INVOLVES STOPPING SETTLEMENTS, ANY COMMUNICATION UNTIL WE GET THE TRANSFEREE JUDGE, UNTIL WE'RE BEFORE -- ALL THE CASES ARE BEFORE THERE AND THAT PROPER NOTICE IS GIVEN TO THE OTHER SIDE, THAT'S

04:13PM WHAT --

THE COURT: I'VE SAID AND STARTED OUT HERE SAYING I'M CONCERNED ABOUT THAT. I JUST GOT THESE 40 CASES, I HAVE NO IDEA WHETHER I'M GOING TO BE THE ONE AT THE END OF THE DAY. AND I'M RELUCTANT TO PUSH THINGS TOO FAR ALONG IF I'M NOT IF

04:13PM JUDGE, THE OTHER JUDGE MAY FEEL VERY DIFFERENTLY ABOUT SOME OF THESE THINGS. SO I WOULDN'T BE TOO CONCERNED ABOUT RESERVING THE RIGHT TO RAISE THIS LATER. I THINK WHAT HE'S SAYING NOW UNTIL THE MULTIDISTRICT PANEL RULES, CRAWFORD WILL CEASE ALL COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS AND WILL NOT ENGAGE

04:13PM IN ANY SETTLEMENT DISCUSSIONS, WHICH IS A SMALLER SUBSET OF THOSE DISCUSSIONS.

MR. DEPALMA: YOUR HONOR, I DON'T THINK HE SAID THAT -- JOSEPH DEPALMA, I'M APPEARING TODAY ON THE NUNEZ CASE.

THE COURT: OKAY.

04:13PM MR. DEPALMA: I THINK WHAT I UNDERSTOOD HIM TO SAY IT'S NOT UNTIL THE MDL PANEL RULES, IT'S UNTIL HE IS ABLE TO SEEK A FURTHER ORDER OF A COURT THAT THE MDL PANEL SENDS THESE CASES TO. RIGHT?

MR. RUFF: I'M SAYING TILL WE GET TO A TRANSFEREE

04:14PM JUDGE.

THE COURT: AND THEN AT THAT POINT WOULD YOU -- YOU WOULD MAKE APPLICATION BEFORE COMMUNICATIONS BEGAN AGAIN.

MR. RUFF: CORRECT.

THE COURT: SEEKING THE APPROVAL OF THE COURT FOR

04:14PM THAT COMMUNICATION.

MR. RUFF: ABSOLUTELY. THAT'S WHAT I'M SUGGESTING IF THAT'S AGREEABLE TO THE OTHER SIDE.

MR. PAUL: I JUST WANT TO ASK MR. RUFF IF HE'S IMPLYING THAT THE SLATE AT THAT POINT WILL BE WIPED CLEANED,

04:14PM THAT ALL PRIOR COMMUNICATIONS WILL NOT THEN BE UTILIZED TO CONDUCT SETTLEMENTS AND THEY'LL HAVE TO START ALL OVER AGAIN?

MR. RUFF: IF YOUR THOUGHT IS THAT, I'M IN AN AGREEABLE MODE.

MR. DEPALMA: YOUR HONOR, IS THIS AN APPROPRIATE TIME

04:14PM JUST FOR A BRIEF INTERJECTION?

THE COURT: YES.

MR. DEPALMA: AGAIN, JOSEPH DEPALMA ON THE NUNEZ CASE.

THE COURT: WELCOME, SIR.

04:14PM MR. DEPALMA: I THINK GIVEN THE HYPOTHETICAL THAT WE'RE ALL FACED WITH, WHICH IS THAT MENU FOODS MAY, AFTER COUNSEL SPEAKS WITH HIS CLIENT, COME BACK AND TELL EVERYBODY HERE TODAY THAT THERE'S GOING TO BE A TOTAL STAND DOWN FROM FURTHER COMMUNICATIONS. THAT HYPOTHETICAL, IF IT'S ANSWERED

04:15PM IN THE WAY WE ALL HOPE IT WILL BE ANSWERED, ALLEVIATES EVERYTHING THAT I REALLY NEED TO SAY TODAY ABOUT THE LETTER, THE CONTENTS AND HOW IT CAME ABOUT. IT WOULD SEEM TO ME BEST, AT LEAST FROM MY POINT OF VIEW, THAT AS YOUR HONOR SUGGESTED, IT MAY BE WISE TO ADJOURN THIS HEARING FOR ANOTHER DAY, TO

04:15PM GIVE MENU FOODS THE ABILITY TO ANSWER THE HYPOTHETICAL

QUESTION. AND IF IT COMES BACK AND IT'S GOING TO STAND DOWN FROM ALL COMMUNICATIONS AND THIS LETTER ISN'T EVEN GOING TO GO OUT --

THE COURT: RIGHT.

04:15PM MR. DEPALMA: -- YOU DON'T EVEN NEED TO HEAR FROM ME. THAT'S MY INITIAL COMMENT.

THE COURT: OKAY. I AGREE WITH THAT.

MR. RUFF: NOT TO SAY I WOULDN'T LIKE TO STAY IN CAMDEN OVERNIGHT, YOUR HONOR, BUT I DIDN'T BRING A CHANGE OF

04:16PM CLOTHES. SO IF YOU'LL ALLOW ME TO GO OUT NOW AND MAKE A CALL WHILE ALL COUNSEL ARE HERE, I'D PREFER TO GET YOU AN ANSWER. I'M A GUY THAT GIVES -- TRY TO GET THINGS DONE SOONER THAN LATER. SO IF I CAN -- IT'S 4:20 NOW, IF I CAN GET THE PEOPLE BEFORE 4:30, SOME ON TORONTO TIME, SO IS THE SAME AS EASTERN

04:16PM TIME IN NEW JERSEY, I WOULD LIKE TO BE ABLE TO REPORT TO --

THE COURT: LET ME GIVE THESE TWO GENTLEMEN AN OPPORTUNITY TO ENTER THEIR APPEARANCES. AND THEN I WANT TO GIVE MR. PAUL ANOTHER OPPORTUNITY TO SPEAK HERE BECAUSE THIS IS HIS APPLICATION AND HE HAS TO BE COMFORTABLE WITH

04:16PM ADJOURNING THIS AND COMFORTABLE WITH PROCEEDING THIS WAY. I AM, BUT I WANT TO MAKE SURE HE HAS AN OPPORTUNITY TO RAISE ANY QUESTIONS HE WANTS TO RAISE.

YES, SIR.

MR. FERRARA: GOOD AFTERNOON, YOUR HONOR.

THE COURT: GOOD AFTERNOON.

MR. FERRARA: IF IT PLEASE THE COURT, MICHAEL FERRARA. I HAVE TWO CASES OF THE 40 PENDING, JUDGE. ONE IS BONIER. JUDGE, I WAS THE ONE WHO HAND DELIVERED THIS LETTER FROM MR. EDELSON TO YOUR HONOR TODAY.

04:17PM THE COURT: THANK YOU, SIR.

MR. FERRARA: HE COULDN'T BE HERE, BUT SCOTT KAMBER

FROM THE NEW YORK BAR CAME DOWN. HE'S NOT ADMITTED HERE BUT WITH YOUR HONOR'S PERMISSION I WOULD LIKE FOR HIM TO SPEAK.

THE COURT: OKAY. AND IS HE FROM?

04:17PM MR. FERRARA: NEW YORK.

MR. KAMBER: KAMBER & ASSOCIATES IN NEW YORK, YOUR HONOR.

THE COURT: STEP UP, SIR, PLEASE.

MR. KAMBER: MR. EDELSON COULDN'T BE HERE TODAY, HE

04:17PM HAD JUST GOTTEN A COPY OF THE LETTER, PROPOSED PLAINTIFF'S LETTER YESTERDAY, AND I'VE BEEN WORKING WITH MR. EDELSON AND WAS ASKED TO APPEAR BEFORE THE COURT BY MR. EDELSON. AND I'M APPEARING ON BEHALF OF MY OWN CLIENTS AS WELL AS ON BEHALF OF MR. EDELSON'S CLIENTS.

04:17PM I WANT TO --

THE COURT: OKAY. WELL, LET ME JUST -- LET ME BE CLEAR ABOUT SOMETHING, MR. FERRARA REPRESENTS PLAINTIFFS IN ACTIONS PENDING BEFORE ME.

MR. FERRARA: THAT'S CORRECT, YOUR HONOR.

04:18PM THE COURT: AND CERTAINLY MR. DEPALMA DOES. DO YOU?

MR. KAMBER: I DO NOT, YOUR HONOR.

THE COURT: OKAY. FINE. LET ME HEAR WHAT YOU HAVE TO SAY.

MR. KAMBER: FIRST I WANTED TO SAY, SINCE MR.

04:18PM EDELSON'S LETTER WAS OF THE MOMENT AND NOT TOPICAL TODAY, I WANTED TO MAKE SURE THAT IF THE COURT HAD ANY QUESTIONS REGARDING THE AFFIDAVITS OR THE CONTENTS OF THE LETTER, THAT I COULD ANSWER ANY OF THOSE QUESTIONS. AND SINCE IT SEEMS THAT ONE OF THE ISSUES, THE PROPOSAL MADE BY MR. RUFF IS GOING TO

04:18PM BE ACCEPTED BY PLAINTIFF, IT SEEMS FROM WHAT THE COURT HAD SAID, IF I'M CLEAR, IS MR. EDELSON AND HIS CLIENTS, OUR CLIENTS WILL HAVE TO AGREE NOT TO PROCEED WITH RESPECT TO THEIR COMPLAINTS AND THE TERMS SET FORTH IN THEIR AFFIDAVIT.

THE COURT: YES.

04:18PM MR. KAMBER: THAT PRESENTS -- ONE OF THE PROBLEMS AND ISSUES IS TO PROCEED TODAY, I DON'T KNOW THAT WE WILL ACTUALLY BE ABLE TO SUCCEED IN REACHING THE CLIENTS THEMSELVES BECAUSE THEY WOULD HAVE TO WAIVE THEIR RIGHTS TO PROCEED BECAUSE, YOU KNOW, PERCEPTION WISE THIS IS AN AFFIRMATIVE ETHICAL

04:19PM OBLIGATION, ET CETERA. AND I'M NOT SAYING THAT WHAT MR. RUFF PROPOSES IS NOT DESIRABLE, IT CERTAINLY DOES GET US WHERE WE WANT TO GO AT THE END OF THE DAY. I'M SAYING I COULDN'T DO SO, MAKE THOSE REPRESENTATIONS WITHOUT CONTACT TO MY CLIENTS. I HOPE THE COURT UNDERSTANDS THAT.

04:19PM THE COURT: I DO AND THAT'S VERY REASONABLE. AND

THAT'S PRECISELY WHO I WANT TO HAVE CONSULTED, IT'S THEIR RIGHTS, SO I UNDERSTAND THAT AND APPRECIATE THAT. AND I REALIZE THAT MAY NOT BE EASY TO DO, BUT AS LONG AS WE'RE MAKING PROGRESS, WE CAN ADJOURN WHATEVER THE NEXT TIME IS TO

04:19PM GIVE OPPORTUNITY TO DO THAT.

MR. KAMBER: I BELIEVE, AND I'M HOPEFUL, YOUR HONOR, AND WE WERE ABLE TO -- FROM FINDING OUT ABOUT THE LETTER, THE PROPOSED PLAINTIFF'S LETTER YESTERDAY, WE WERE ABLE TO GET THE

04:19PM AFFIDAVITS TOGETHER AND SIGNED BY THE END OF THE DAY YESTERDAY AND GET THEM TO YOUR HONOR THIS MORNING. IT WOULD BE MY HOPE THAT THESE CLIENTS, WE WOULD BE ABLE TO REACH OUT FAIRLY QUICKLY TO, PROBABLY NOT BEFORE THE END OF THE DAY TODAY. BUT, OBVIOUSLY, IF THAT WAS POSSIBLE, BUT I THINK THEY DO WORK.

04:20PM THE COURT: RIGHT. MY THOUGHT WAS TO CARRY THIS. I WANT TO HEAR FROM MR. PAUL, AGAIN IT'S HIS APPLICATION. BUT I THINK I WOULD SET THIS DOWN FOR TOMORROW AFTERNOON AND THEN WE WOULD HEAR WHAT MR. RUFF HAD BEEN ABLE TO LEARN FROM HIS CLIENT, WHAT THINGS HE WAS WILLING TO DO. AND THEN THAT WOULD 04:20PM GENDER SOME CONVERSATION WITH YOU AND OTHERS AND MR. PAUL CERTAINLY AND THERE WOULD BE, PERHAPS, AN AGREEMENT, WHICH WOULD BE GREAT. IF NOT, THEN WE COULD STRIVE FOR MORE TIME, WHATEVER MIGHT BE NECESSARY.

MR. KAMBER: I UNDERSTAND, YOUR HONOR. AND WE WILL 04:20PM DO THAT.

I ALSO DIDN'T WANT TO LEAVE THE IMPRESSION WITH THE COURT, IT WAS REPRESENTED THAT MR. EDELSON'S FIRM AND MYSELF, WE REPRESENT SEVERAL HUNDRED CLIENTS OF DECEASED AND ILL PETS IN THIS CASE. WE DIDN'T WANT TO MAKE IT APPEAR THAT OUT OF 04:21PM ALL OF THOSE PEOPLE, THERE'S ONLY FOUR PEOPLE WHO HAD AN ISSUE. THERE'S ONLY FOUR PEOPLE WE WERE ABLE TO GET AFFIDAVITS FROM IN THE LAST 24 HOURS. WE ANTICIPATE THAT THAT IS -- IT'S PROBABLY SOMETHING THAT OCCURRED BEYOND THAT. HOPEFULLY THAT ISN'T SOMETHING WE HAVE TO PROVIDE MORE 04:21PM INFORMATION TO THE COURT, HOPEFULLY WE WILL ALL BE ABLE TO REACH AN AGREEMENT AND ACCOMODATION THAT WILL SERVE THE INTERESTS OF THE PUTATIVE CLASS AND THOSE INDIVIDUALS WHO WANT TO PROCEED INDIVIDUALLY RATHER THAN AS A CLASS ACTION.

THE COURT: IT WILL BE A DAUNTING TASK. IT MAY BE 04:21PM SIMPLY MR. RUFF MAY FEEL, CORRECTLY SO, IT'S EASIER TO SAY WE'RE NOT GOING TO TALK UNTIL WE CAN FIGURE OUT WHO WE CAN TALK TO WITHOUT CREATING A PROBLEM. AND THEY'VE ALREADY MADE ONE COMMUNICATION. IF THE TELEPHONE IS ABUSIVE AND HARASSING AND IT'S CONTACTING REPRESENTED PERSONS, THE REASONABLE THING 04:21PM TO DO IS NOT DO IT. THERE MAY BE MORE THAN FIVE. I SUSPECT THERE ARE, WHICH IS PART OF MY CONCERN.

MR. KAMBER: YES, YOUR HONOR. SO WE WILL ENDEAVOR TO CONTACT OUR CLIENTS THIS EVENING AND CONSULT WITH THEM AND CONSULT WITH MR. RUFF AND THE OTHER PLAINTIFF'S COUNSEL SO 04:22PM THAT BY TOMORROW AFTERNOON WE WILL BE ABLE TO HAVE A

RESOLUTION. IF FOR SOME REASON WE HAVE A PROBLEM CONNECTING WITH ALL FOUR OF THE CLIENTS, WOULD IT PLEASE THE COURT IF WE CONTACT THE COURT MAYBE BY NOONTIME TOMORROW JUST TO MAKE SURE THAT --

04:22PM THE COURT: YOU CAN CERTAINLY SEND ANY INFORMATION THAT YOU WANT TO ME AND COPY ALL COUNSEL WHO HAVE AN INTEREST. MY MAIN CONCERN IS TO ENCOURAGE CONVERSATION AND COOPERATION ON THIS SIDE BECAUSE I THINK THE LAWYERS WHO HAVE SUBMITTED THINGS HAVE ALL PROVIDED HELPFUL INFORMATION AND HAVE RAISED 04:22PM LEGAL ISSUES, WHICH I THINK ARE IMPORTANT TO FOCUS IN ON WHAT

THE PUTATIVE CLASS MEMBERS SHOULD KNOW. SO I ENCOURAGE COMMUNICATION HERE. AND I THINK MR. RUFF'S MADE A GOOD PROPOSAL AND I THINK IT OUGHT TO BE SERIOUSLY CONSIDERED AND I THINK THERE OUGHT TO BE GOOD COMMUNICATION THAT WAY. SO I'M MORE CONCERNED ABOUT YOU ALL TALKING BOTH AMONGST YOURSELVES ON THIS SIDE AND WITH COUNSEL FOR MENU FOODS AS I AM BRINGING STUFF TO MY ATTENTION. BUT I CERTAINLY WILL TAKE IN WHAT YOU SAY AND WE'LL ADDRESS IT IF WE HAVE TO.

MR. KAMBER: THANK YOU, YOUR HONOR. AND IT'S CERTAINLY OUR DESIRE TO HAVE CONSTRUCTIVE DIALOGUE ON THIS SIDE OF THE AISLE, YOUR HONOR. I MEAN, SOMETIMES IT'S THE INHERENT DIFFICULTIES IN THIS PERIOD OF TIME PRIOR TO AN MDL. BUT CERTAINLY IT IS OUR BELIEF THAT THERE'S A LOT OF DIFFERENT PLAINTIFF'S COUNSEL OUT THERE.

THE COURT: WHERE IS RODNEY KING WHEN WE NEED HIM.

MR. KAMBER: I THINK WE ARE ALL GOING TO GET ALONG, YOUR HONOR. I THINK THAT IN THESE CIRCUMSTANCES PEOPLE APPRECIATE THAT THERE IS SOMETHING TO BE ADDED HERE.

IT ALSO SHOULD BE KNOWN THAT SINCE THESE PAPERS CAME TO OUR ATTENTION YESTERDAY, WE'VE ALSO BEEN IN CONSULTATION WITH ANOTHER 10 FIRMS, SO IT ISN'T JUST REALLY THE FIRMS IN THE COURTROOM, I THINK THERE'S A FAIR NUMBER BEYOND THE FEW OF US WHO ARE HERE WHO ARE ENGAGED IN THESE CONSULTATIONS, YOUR HONOR.

THE COURT: AN ADDITIONAL REPRESENTED PARTY IT SEEMS TO ME, PERSON.

MR. KAMBER: THANK YOU VERY MUCH, YOUR HONOR.

THE COURT: THANK YOU.

MR. DEPALMA: YOUR HONOR, I'D WOULD LIKE TO URGE MAYBE A TECHNICAL CHANGE HOW THE CASES ARE SET UP TO ADDRESS THE COURT'S CONCERN THAT THE PEOPLE ON THIS SIDE OF THE COURTROOM ARE BETTER ABLE TO COOPERATE WITH EACH OTHER. AND IT WOULD BE THIS, THIS MY FIRM FILED 13 CASES IN NEW JERSEY, THEY'RE ALL BEFORE YOUR HONOR, I DIDN'T GET THESE PAPERS UNTIL 9:00 LAST NIGHT. I THINK THE PROBLEM IS THAT THE CASES AREN'T CONSOLIDATED. IF THEY WERE, THE ELECTRONIC NOTIFICATION SYSTEM WOULD HAVE AUTOMATICALLY SENT ME EVERYTHING I NEEDED TO KNOW. SO EVEN THOUGH THEY'RE STAYED, I STILL THINK THAT THEY CAN BE CONSOLIDATED. I URGE THE COURT TO DO THAT SO THAT EVERY CASE THAT IS BEFORE YOUR HONOR IS GETTING THE SAME KIND

OF NOTICE AT THE SAME TIME, IT WOULD BE VERY HELPFUL TO ME AND TO MY COLLEAGUES.

THE COURT: IT'S AN EXCELLENT SUGGESTION, AND WE WILL DO THAT PROMPTLY.

MR. DEPALMA: THANK YOU. AND I WANT TO INTRODUCE KEN WEXLER WHO WE HAVE FILED APPLICATION FOR PRO HAC VICE ADMISSION IN THE WILSON CASE.

THE COURT: IS THAT MR. TAMBLYN?

MR. WEXLER: NO, THAT'S MY PARTNER, MARK TAMBLYN.

THE COURT: THERE WAS ONE ORDER, TWO SEPARATE AFFIDAVITS.

MR. WEXLER: YES, I JUST FILED IT YESTERDAY.

04:25PM THE COURT: WHERE ARE YOU FROM.

MR. WEXLER: I'M FROM CHICAGO. MR. TAMBLYN IS FROM SACRAMENTO.

MR. DEPALMA: THE PAPERS ARE PENDING, YOUR HONOR.

MR. WEXLER: I THINK IT'S SET FOR THE 15TH OF JUNE.

THE COURT: HOLD ON.

MR. WEXLER: JUNE 15TH.

04:26PM THE COURT: DID I SIGN THAT?

MR. DEPALMA: THEY WERE SUBMITTED ON THE 22ND.

THE COURT: I THINK I SIGNED IT.

MR. DEPALMA: VERY GOOD.

THE COURT: WELCOME TO YOU ALL.

04:26PM MR. DEPALMA: YOUR HONOR, I ALSO WANTED -- IF THIS IS

CONTINUED UNTIL TOMORROW, SOMEONE OTHER THAN MYSELF FROM MY FIRM WILL HAVE TO APPEAL BECAUSE I WILL NOT BE HERE.

THE COURT: ALL RIGHT.

MR. DEPALMA: THANK YOU.

04:26PM THE COURT: THANKS FOR LETTING ME KNOW, BUT WE'LL LOOK FORWARD TO SEEING WHO ELSE IS SENT. I SIGNED FOR MR. TALLY, MR. DEPALMA, FOR YOU AND MR. TAMBLYN?

MR. WEXLER: RIGHT. AT THE LAST HEARING, YOUR HONOR, MR. TAMBLYN AND MR. TALLY WERE HERE FROM SACRAMENTO.

04:27PM THE COURT: OKAY. BUT I SIGNED THESE TODAY. BUT I HAVE NOT YET SEEN YOUR APPLICATION.

MR. WEXLER: I HAVE A COPY OF IT, YOUR HONOR.

THE COURT: WHY DON'T YOU GIVE IT TO ME NOW, I MIGHT AS WELL JUST DO IT.

04:27PM ALL RIGHT. MR. PAUL, YOU WANT THE FINAL WORD?

MR. FERRARA: JUDGE, I JUST HAD ONE MORE SUGGESTION. I FOUND IT MAY BE HELPFUL THAT IF, ONTARIO IS JUST A COUPLE HOUR FLIGHT, THAT IT MIGHT BE BETTER TO HAVE THE CLIENT HERE TOMORROW SO YOUR HONOR CAN PUT THE CLIENT UNDER OATH AND WE

04:27PM CAN PUT THAT ISSUE TO REST SO COUNSEL ISN'T CAUGHT IN A BIND THAT HE MIGHT WELL BE IN. IT'S JUST A SUGGESTION.

THE COURT: I DON'T THINK THAT'S NECESSARY. I THINK MR. RUFF'S WORD CAN BE COUNTED ON, UNLESS PROVEN OTHERWISE, AND THAT HASN'T HAPPENED YET. WE MAY HAVE TO HAVE THAT IF

04:28PM THIS DOESN'T GET RESOLVED. AND I WAS PREPARED TO TAKE THAT TO

THE NEXT STEP, BUT I DON'T KNOW THAT WE NEED TO GO THERE NOW.

IF IT HELPS YOU, MR. RUFF, I'LL ORDER THAT.

MR. RUFF: IT WOULD.

THE COURT: IT WOULD?

04:28PM MR. RUFF: WELL, CAN I JUST TALK TO THESE INDIVIDUALS FOR 15 MINUTES AND MAYBE WE CAN COME BACK TO YOUR HONOR?

THE COURT: DO YOU WANT TO TAKE A SHORT ADJOURNMENT WHILE I CONSIDER THIS HEAVY PRO HAC VICE APPLICATION?

MR. WEXLER: IF YOU HAVE TO CONSIDER IT FOR

04:28PM 15 MINUTES, I WITHDRAW IT.

THE COURT: OKAY. I'LL DO THAT, I'LL CONSIDER THIS APPLICATION.

(BRIEF RECESS.)

DEPUTY CLERK: ALL RISE.

THE COURT: PLEASE BE SEATED. WE CHASED MR. RUFF AWAY? HE HAD TO MAKE THE LAST FLIGHT TO CHICAGO?

MR. KAMBER: SPONTANEOUS COMBUSTION, YOUR HONOR.

THE COURT: I'M PREPARED TO HEAR WHATEVER PROGRESS HAS BEEN MADE.

MR. HANSON: JUDGE, MR. RUFF IS CONTINUING A CONFERENCE AT THIS MOMENT WITH THE CLIENTS. THE CLIENTS ARE NOT PREPARED TO ENTER INTO ANY STIPULATIONS AT THIS POINT IN TIME ON SUCH SHORT NOTICE. ISSUES HAVE BEEN RAISED AS TO WHETHER THE ATTORNEYS WHO MAY POTENTIALLY BE FACING ETHICS ISSUE ARE IN A POSITION TO EVEN ADVISE THE CLIENT AT THIS

JUNCTURE.

THE COURT: RIGHT.

MR. HANSON: SO AT THIS POINT IN TIME, WE WOULD HAVE TO ASK THAT THE COURT CONTINUE TILL TOMORROW.

THE COURT: THAT'S FINE. BUT IS IT FAIR TO SAY THAT -- WELL, LET ME ASK YOU, I HAD INDICATED THAT I WAS GOING TO ENTER AN INJUNCTION, I'M CONCERNED ABOUT THESE CONTINUING --

MR. HANSON: IT'S MY UNDERSTANDING THE VOICE COMMUNICATIONS HAVE ALREADY BEEN SHUT DOWN. SO IF THE COURT ENTERS AN INJUNCTION, THAT'S A SEPARATE AND DISTINCT ISSUE THAN ANYTHING ELSE THAT WE MAY BE TALKING ABOUT IN TERMS OF THE GLOBAL STIPULATION. SO IF IN FACT THAT IS THE STANDING ORDER OF THE COURT, AND I APOLOGIZE BECAUSE I'M TRYING TO KEEP THIS CALL ALIVE IN MY POCKET, I CAN HEAR PEOPLE ACTUALLY TALKING. I WILL GET BACK ON AND SAY THAT THE COURT HAS ORDERED THAT ALL VOICE COMMUNICATIONS CEASE AS OF TODAY.

THE COURT: PLEASE DO SO.

MR. HANSON: THAT'S THE ORDER OF THE COURT.

THE COURT: AND WE'LL ENTER AN ORDER TO THAT EFFECT. AND THEN WE'LL ADJOURN THEN UNTIL TOMORROW AT 2:00?

MR. HANSON: COULD THE COURT DO IT EARLIER? I'M AVAILABLE, JUDGE, BUT I KNOW I HAVE AN APPOINTMENT WITH THE SURGEON WITH MY DAUGHTER TOMORROW LATE AFTERNOON THAT I'D REALLY LIKE TO BE AT.

THE COURT: OKAY. WHY DON'T WE -- I WANTED TO GIVE TIME TO, DEPENDING ON HOW --

MR. HANSON: WHATEVER WORKS FOR THE COURT.

THE COURT: IS 11:00 GOOD?

MR. HANSON: 11:00 WOULD, CERTAINLY, YES. I DON'T KNOW IF I JUST COMMITTED MR. RUFF TO SOMETHING HE CAN'T LIVE WITH. IF I CAN RUN OUT OF THE COURTROOM?

THE COURT: YES. IS THAT --

MR. PAUL: 11:00 IS FINE WITH US, YOUR HONOR.

(BRIEF RECESS.)

MR. HANSON: MR. RUFF HAS SUGGESTED IF THE COURT CAN ACCOMMODATE HIM BY NOONTIME, HE HASN'T CHECKED ANY FLIGHT ARRANGEMENTS, HE JUST WANTS TO MAKE SURE THAT HE CAN GET HERE.

THE COURT: THAT'S FINE. BUT YOU HAVE PLACES TO GO AS WELL.

MR. HANSON: IF WE START AT NOON, THAT'S A THREE HOUR

GAP FOR 2:00.

THE COURT: OKAY. NOON?

MR. PAUL: NOON'S FINE, YOUR HONOR.

THE COURT: WE'LL RECONVENE TOMORROW. IS IT FAIR TO SAY THAT PROGRESS IS BEING MADE?

MR. HANSON: WE'RE TALKING, JUDGE.

THE COURT: OKAY. THAT'S BETTER THAN NOT TALKING.

MR. HANSON: YES.

THE COURT: OKAY.

MR. HANSON: I DON'T WANT TO CHARACTERIZE IT AT THE RISK OF INVADING ATTORNEY/CLIENT COMMUNICATIONS AT THIS POINT.

THE COURT: ALL RIGHT. VERY GOOD. WE'LL SEE YOU TOMORROW AT NOON.

MR. FERRARA: JUST FOR HOUSEKEEPING, I INTEND TO FILE A MOTION TO HAVE MR. CALM ADMITTED. WE CAN TAKE CARE OF THAT IN SHORT ORDER IF THAT'S OKAY.

THE COURT: OKAY. ADMITTED IN THE CASE YOU HAVE BEFORE ME?

MR. FERRARA: BONIER.

THE COURT: OKAY.

MR. FERRARA: AS FAR AS THE INJUNCTION, I MISSED IT. IS IT IN EFFECT AS OF RIGHT NOW?

THE COURT: IT IS.

MR. FERRARA: OKAY. THANK YOU, JUDGE.

THE COURT: NO MORE PHONE CALLS.

MR. HANSON: THE COURT WILL PREPARE AN ORDER?

THE COURT: I WILL.

MR. WEXLER: YOUR HONOR DID I PASS? AM I IN?

THE COURT: YES, MR. WEXLER. WELCOME.

MR. WEXLER: THANK YOU.

THE COURT: WE PUT IT UP ON THE WEBSITE.

MR. WEXLER: ALL RIGHT.

(PROCEEDINGS CONCLUDED.)

C E R T I F I C A T E

I, LISA MARCUS, OFFICIAL COURT REPORTER FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, CERTIFIED SHORTHAND REPORTER, RPR, AND NOTARY PUBLIC OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPTION OF MY ORIGINAL STENOGRAPHIC NOTES TO THE BEST OF MY ABILITY OF THE MATTER HEREINBEFORE SET FORTH.

____________________________
LISA MARCUS
OFFICIAL U. S. REPORTER
N.J. CERTIFICATE NO. IX01492

DATE: MAY 25, 2007