**EXHIBIT F**

**Page 1**

```
            UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY

JARED WORKMAN AND MARKAND
MONA COHEN, ON BEHALF OF
THEMSELVES AND ALL OTHERS        CIVIL ACTION NUMBER:
SIMILARLY SITUATED,
                                 07-1338 (NLH)
     PLAINTIFFS,

     -vs-

MENU FOODS LIMITED, MENU
FOODS, INC., AND MENU
FOODS MIDWEST CORPORATION,

     DEFENDANTS.

              MOTION TO SHOW CAUSE

              DATE: MAY 18, 2007


         MITCHELL H. COHEN UNITED STATES COURTHOUSE
         ONE JOHN F. GERRY PLAZA,
         CAMDEN, NEW JERSEY, 08608

B E F O R E:

     THE HONORABLE NOEL L. HILLMAN, UNITED STATES
     DISTRICT JUDGE, DISTRICT OF NEW JERSEY, SITTING
     AT CAMDEN, NEW JERSEY.




(APPEARANCES ON PAGE 2)



              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY
```

**Page 2**

```
A P P E A R A N C E S:


TRUJILLO, RODRIGUEZ AND RICHARDS, LLC,
BY: LISA J. RODRIGUEZ, ESQUIRE,
AND
BERGER & MONTAGUE, P.C.,
BY: RUSSELL D. PAUL, ESQUIRE,
ATTORNEYS FOR THE PLAINTIFFS


HILL, WALLACK, LLP
BY: GERARD H. HANSON, ESQUIRE,
AND
PRETZEL & STOUFFER, CHARTERED,
BY: EDWARD B. RUFF, III, ESQUIRE,
AND
MICHAEL P. TURIELLO, ESQUIRE,
ATTORNEY FOR THE DEFENDANTS


ALSO IN ATTENDANCE:

KERSHAW, CUTTER & RAINOFF, LLP,
BY: STUART C. TALLEY, ESQUIRE

KAPLAN, FOX & KILSHEIMER, LLP,
BY: CHRISTINE FOX, ESQUIRE

WEXLER, TORISEVA, WALLACE,
BY: MARK J. TAMBLYN, ESQUIRE




              STEPHEN J. DANER,
      CERTIFIED COURT REPORTER OF NEW JERSEY
         REGISTERED PROFESSIONAL REPORTER
      OFFICIAL COURT REPORTER, U.S. DISTRICT COURT


              U.S. DISTRICT COURT - CAMDEN - NEW JERSEY
```

**Page 3**

1 (The following takes place in open court before the
2 Honorable Noel L. Hillman, United States District
3 Court Judge, District of New Jersey, sitting at
4 Camden, New Jersey, on Friday, May 18, 2007)
5         THE COURT: It's morning, right?
6         Good morning, everyone.
7         Please be seated.
8         Give me a minute to get settled in and then
9 we'll have appearances.
10        MS. RODRIGUEZ: Lisa Rodriguez, from the
11 firm of Trujillo, Rodriguez and Richards.
12        With me, today is Russell Paul from the
13 firm of Berger and Montague.
14        His motion, pro hac vice motion, has been
15 filed, not ruled on, however, and he will be
16 speaking this morning.
17        THE COURT: All right.
18        MS. RODRIGUEZ: If it please Your Honor --
19        THE COURT: Welcome to both of you.
20        MR. PAUL: Good morning, Your Honor.
21        THE COURT: Who else do we have?
22        MR. HANSON: Sir, Gerard Hanson on behalf of
23 Hill Wallack, counsel for the defendants, Menu Foods
24 Limited, Menu Foods, Inc., and Menu Foods Midwest
25 Corporation.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**Page 4**

1         Present at counsel table with me is Edward
2 Ruff, III, of the Chicago firm of Pretzel and
3 Stouffer, as well as Michael Turiello.
4         Mr. Ruff would like to address the Court.
5 Consistent with Mr. Paul, my office has filed a
6 Pro hac vice application which is returnable
7 June 1st. Certainly we would consent to Mr. Paul
8 addressing the Court as pro hac vice.
9         THE COURT: That's very kind of you.
10        We'll move up those applications and why
11 don't I look at those and consider them now.
12        MR. RUFF: Good morning, Your Honor.
13        THE COURT: Welcome to you all.
14        MR. RUFF: Thank you.
15        THE COURT: Mr. Paul is here to, from
16 across the river.
17        MR. PAUL: Yes.
18        THE COURT: You are in good standing and
19 admitted in various places. No disciplinary
20 matters, you've associated yourself with a local
21 firm.
22        Do you agree to comply with all the local
23 rules including the all important fee.
24        MR. PAUL: Yes, Your Honor.
25        THE COURT: And I take it there's no

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

Exhibit F

9

1  which sets out those sentences we feel must be
2  added.
3       I would also say, Your Honor, that the list
4  of attorneys that they are including with their
5  communication is incomplete, and we would be happy
6  to supply the Court or the defendants with a very
7  complete list of all the lawyers involved.
8       I would also say, Your Honor, we have
9  attached a red line to our reply brief that attempts
10 to rectify other aspects of the letter that we feel
11 are also misleading. And I would like to just point
12 out a couple of those, Your Honor, if I might.
13      The letter sets a tone, Your Honor, that we
14 feel casts plaintiff's attorneys and plaintiff's
15 cases in a negative light. And that can have the
16 effect of motivating people to settle directly with
17 defendants. It says things like more than 50 class
18 actions have been filed, a number of attorneys, each
19 seek to represent the interests of pet owners, when
20 in fact consumers are the ones bringing the cases
21 and attorneys are doing so on behalf of the
22 consumers.
23      It's minor, not the main thrust of the
24 brief, but we wanted to point at out to you.
25      We also added language about the case being

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

10

1  consolidated.
2       As a letter currently stands, it appears
3  there's numerous class actions all around the
4  country.
5       THE COURT: He needs you to slow down.
6       MR. PAUL: Which can be befuddling to pet
7  owners who may not be experienced in these type
8  matters.
9       It is very informative to know that there
10 will in the end one class action that will be a
11 consolidation of all the current class actions out
12 there.
13      Those are the main thrusts of our argument
14 with respect to the letter, Your Honor.
15      We also feel that the revised communication
16 has to be sent, once Your Honor determines what is
17 the appropriate communication to be sent, it has to
18 be sent to everyone who has previously received that
19 communication from the defendants because that
20 communication was in fact in our view misleading,
21 and that would mean sending the letter to everyone
22 who has contacted Menu Foods.
23      We stated in our brief that about -- we
24 don't know exactly how many people contacted Menu
25 Foods, and not actually sent the claim form. We do

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

11

1  know about 12.1 million people have gone to their
2  website, and that website specifically refers them
3  to an 800 number to call a hotline. The hotline was
4  manned by Crawford and Company, a settlement claims
5  company hired by defendants, and Crawford and
6  Company then either sent them the claim form which
7  they say is, has been to under 50 people, but also
8  directs ever other caller to a different website, a
9  claim alert website, to download the form. So we
10 don't know how many people downloaded the form and
11 sent it back in. But for every person. A pet owner
12 that defendants can know their address, or calls in
13 the future, we feel they have to resend the
14 appropriate communication.
15      Your Honor, in the new proposed
16 communication there's a declaration proposed at the
17 bottom for any claimant who signs the claim form to
18 sign. The declaration we feel is highly misleading.
19      I'm just going to turn to the declaration.
20      Which first has them certify under penalty
21 of perjury that the information is correct that
22 they're providing in the claim form. But then says,
23 that, acknowledge receipt and review the letter from
24 Menu Foods which explains the effects of settling,
25 and lists other available avenues to pursue my

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

12

1  claim, including the pending class actions. Despite
2  these other avenues, I would like to proceed with
3  settling my claim with Menu Foods.
4       Your Honor, that likely effect of this
5  language is to mislead pet owners into believing
6  once they sign and send back this claim form they
7  have officially opted out, and that they are now
8  stuck with proceeding in the settlement claims
9  process.
10      And in addition, defendants might argue in
11 the future that these pet owners who signed the
12 declaration have in fact opted out, when it is not
13 been clear all they are doing so.
14      Lastly, Your Honor, we don't know the
15 extent of information or materials that defendants
16 have received as a result of the prior misleading
17 communication. The prior claim form asks them to
18 send in all their Vet bills, their receipts, their
19 veterinary records, even food that they still have
20 that was manufactured by defendants.
21      We don't know what they received. But in
22 essence we don't feel that they should have the
23 benefit of, so to speak, the fruit of the poisonous
24 tree. They had a misleading communication in our
25 view and received information back. We believe that

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

5-21-07; 8:41AM;US DIST COURT                              ;18567575070              # 5/ 36

**13**

1  at the very least the information must be
2  disregarded by defendants and not used for any
3  litigation purposes. We also believe it should be
4  shared with plaintiffs at this time.
5          THE COURT: Can I ask you just one question
6  about that, because I read that in your initial
7  papers, but I read the Data Collection Form to,
8  direct only to send clean cans and to merely
9  preserve actual food, so I'm curious as to why you
10 take the position that they requested and received
11 actual samples.
12         Do you believe they actually asked for, and
13 received samples of food?
14         MR. PAUL: It says, please send all relevant
15 documents and material, including the following:
16 cans and/or pouches of the pet food in question --
17         THE COURT: Then read on.
18         MR. PAUL: Please insure that they are fully
19 cleaned prior to sending to avoid delays in the post
20 office.
21         THE COURT: Doesn't that mean -- you mean
22 -- you're saying complete cans, unopened cans.
23         MR. PAUL: Yes.
24         THE COURT: They could -- okay.
25         MR. PAUL: Yes.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**14**

1          THE COURT: It goes on to say, doesn't it,
2  keep any of the actual food in your freezer, double
3  bag it and put it in the freezer?
4          MR. PAUL: Right. That's true. It would be
5  unopened cans that may have been sent and may have
6  been subject to testing by defendants, and we don't
7  have access to that food or the results of those
8  tests.
9          THE COURT: All right.
10         MR. PAUL: Thank you, Your Honor.
11         THE COURT: I didn't mean to cut you off.
12 Are you done?
13         MR. PAUL: That's our argument, and I would
14 like to reserve some time.
15 Thank you.
16         THE COURT: All right.
17 Well, the, it's interesting to see how the
18 positions change as the briefing occurs and
19 encouraging for someone in my position to see what
20 appears to be some voluntary progress made for
21 narrowing the issues, or working with one another to
22 resolve some of these difficult issues.
23         So I'm curious how the defendants reacts to
24 the proposals made by the plaintiffs to modify the
25 letter that you want to send out as a matter of

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**15**

1  future communications and the related question of
2  your reaction to the notion that this proposed
3  letter, or some version of it be sent to those where
4  previously communications have been established
5  through the putative class members.
6          MR. RUFF: May I respond, Your Honor?
7          THE COURT: Sure.
8  In other words, are we entering near to
9  reaching an agreement on this, or will I have to
10 start from scratch on the legal issues?
11         MR. RUFF: Your Honor, again Ed Ruff, and
12 thank you for admitting me pro hac vice, and a
13 pleasure to be before Your Honor and counsel.
14 I have met with Mr. Paul before, and I have
15 met with some of the other counsel. They were
16 actually in my office, and we have been attempting
17 to work out, you know, various things going forward.
18 I should point out that the recent letter
19 and the package that went out was not necessarily
20 prompted -- was not prompted by anything that the
21 plaintiffs had filed. It was actually, if they were
22 going to do this, my client was going to do this,
23 and there's a large pressure that's placed upon him.
24 This is a company that's never been faced
25 with this type of situation before. They aren't a

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**16**

1  big company. Their Board of Directors and their
2  Chief Officers, and all that probably could fit at
3  this table (indicating). We're not dealing with a
4  Nestle, Purina or anything like that. So they have
5  never been under a situation like this before, and
6  never had a bad product or anything like that
7  before. So when this happened, they were inundated
8  with calls not knowing how to handle this.
9  The first package, just so Your Honor has a
10 clear view in your mind from a date stamp point,
11 they sent this out, the initial claims that the
12 initial Data Collection Forms, I should say,
13 March 22nd. They hadn't been served in the case
14 yet, and I just want to put that in. They were
15 served the next day.
16         THE COURT: All right. I mean, they got
17 the FDA breathing down their neck and press reports,
18 and they hired Crawford. They have to know the
19 suits are coming.
20         MR. RUFF: Absolutely. Absolutely.
21 I just wanted to address your question
22 there is then no settlement until we hear what Your
23 Honor has to say. There's no settlements, and I
24 represented that to counsel when we met with them on
25 April 11th, and we did discuss some of the issues

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**Page 49**

1  detail was known.
2       What I understand is that there's a
3  voicecom message that will accompany this that
4  they're going to receive so they have a number from
5  that, I have told you from Menu. What I understand,
6  Crawford will do is send a computerized statement.
7       THE COURT: By phone?
8       MR. RUFF: By phone. That will go to --
9       THE COURT: Some of the people.
10      Some of these people have lost their pets.
11 You wouldn't terrorize them with telemarketing
12 calls -- it's a joke. You will follow up with a
13 call.
14      MR. RUFF: They will send a voice message
15 that says, if you are -- we are calling on behalf of
16 Menu Foods. Thank you for your continued patience.
17 A claim package is being printed and will be mailed
18 to you in the near future. This package will
19 include a help desk phone number and forms for you
20 to complete and submit, if you chose to do so, and
21 instructions will be included in the package. These
22 refer to the web, to the Menu Foods website, and
23 that gives the website. For further information,
24 including a copy of the claim package.
25      THE COURT: Okay.

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**Page 50**

1       MR. RUFF: That will be -- I understand has
2  started on Tuesday.
3       THE COURT: The phone calls?
4       MR. RUFF: The phone calls. When the
5  mailing went out this call was computerized and sent
6  out.
7       THE COURT: Have you hired the Goodyear
8  blimp yet? All right.
9       What else do you intend to do for the
10 future?
11      MR. RUFF: That's what I understand is the
12 procedure.
13      THE COURT: Okay.
14      MR. RUFF: I'm not aware of any potential
15 claims of abuse or someone has been contacted that
16 was a named class individual. I don't think that
17 was anybody's intent. There are a number of things
18 the plaintiffs must show that are real or obstructed
19 abuse. This could have been done on day one.
20 There's no showing at all by the plaintiffs that
21 this letter affects the rights of the putative class
22 members, and I don't think they're claiming that,
23 now. They just want to change the language.
24      If the pet owners wish to settle and
25 received money, we have the right to seek and claim

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**Page 51**

1  and get information. I think to make it clear, in
2  order to identify who you are going to settle with,
3  these are pretty basic information to in order to
4  make that decision.
5       I don't think we can take their word for it
6  that in fact this was our product. In fact, there
7  was a consumption of the product or there wasn't,
8  and one of the key questions I think is different
9  from the first claim form to this one is that the,
10 we don't know, and Menu didn't know at the time the
11 wheat glutin potentially affected other
12 manufacturers. So I think one of the questions here
13 from a causation standpoint, was there consumption
14 of another product that was affecting, because there
15 are now a number of manufacturers who have the same
16 problem.
17      THE COURT: Right. Well, don't
18 misunderstand my attempt at levity that I understand
19 and read the cases, and of course will follow those
20 that make clear you have a right to communicate with
21 those who desire to settle. And I think, I think
22 plaintiffs were right in commending your client for
23 doing a better job of communicating with the full
24 scope and breath of this particular recall and the
25 legal ramifications that flow and communicated to

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY

**Page 52**

1  them what their rights and/or might be. Up to
2  including exercising their right to, fully informed
3  to settle independently.
4       But the posture here is different than what
5  I believe it was when I first read the papers. Now
6  that there has been more communication, as helpful
7  as that is, it raises a, continues to raise some of
8  the issues whether or not there is a complete
9  picture and whether an attempt to say one thing
10 intentionally or otherwise created an additional or
11 a new misapprehension.
12      Would your client object to supplying
13 plaintiffs with the list of people who received the
14 letter?
15      MR. RUFF: Yes. Just like I'm sure they
16 would object -- what we're doing, and I would think
17 in that regard would be conducting discovery in this
18 particular case in advance of all the others. Just
19 like, you know, what, who comprises the class. If
20 we look at 26 New Jersey cases, 23 of them, the
21 named plaintiff is not from New Jersey.
22      THE COURT: Right.
23      Let me ask you this, would you object to
24 the plaintiffs preparing a supplemental
25 communication to be delivered blindly to Crawford,

U.S. DISTRICT COURT - CAMDEN - NEW JERSEY